United States District Court
Southern District of Texas
FILED

NOV 1 4 2003

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| LEONEL LOPEZ and ELIA C. LOPEZ<br>Plaintiffs | } } } } | |
| VS. | } } | CIVIL CAUSE B-03-209 |
| MEL MARTINEZ, Secretary of Housing and Urban Development<br>Defendant | } } } } } | |

**ORIGINAL COMPLAINT**

TO THE HONORABLE COURT:

COME NOW LEONEL LOPEZ and ELIA C. LOPEZ and for cause of action would show as follows:

1- JURISDICTION: This court has jurisdiction pursuant to 28 U.S.C. Sec. 1331, 28 U.S.C. Sec. 2410, 12 U.S.C. Sec. 1702, and 5 U.S.C. Sec. 702.

2- FACTUAL ALLEGATIONS: Plaintiffs say that they invested significant funds and time in participating in a Housing and Urban Development ("HUD") auction of Section 8 property located in San Benito, Cameron County, Texas called Lasby Park Terrace Apartments. Such participation involved, in part, paying a $50,000.00 auction registration fee, obtaining appraisals and surveys as prerequisites for obtaining required loans to finance the balance of the purchase price and required property repairs, and preparing for several auction sales which scheduled but subsequently cancelled.

3- Plaintiffs say that they participated in the HUD auction sale of the said property which ultimately materialized. Plaintiffs say that they placed the high bid of $105,000.00 at such

sale, however, such high bid was then purportedly superceded by the bid of a late bidder who was improperly allowed to place a bid of $450,000.00. While protesting such late bid, and not waiving any right to assert its non-binding nature, Plaintiffs then placed a bid of $451,000.00 which was the final and highest bid made.

4- Plaintiffs say that thereafter HUD later confirmed the sale to Plaintiffs and Plaintiffs immediately, as reasonable diligence and HUD regulations required, proceeded with the requisite loan steps with the bank from whom the balance of sale funds would be obtained. Shortly thereafter Plaintiffs were given a standard loan commitment by such bank. (Exhibit "A") In that regard Plaintiffs would also show that Plaintiffs had pre-sale lender approval. Plaintiffs also sought, after their successful bid, the assistance of their local Congressional representative to investigate the propriety of having to pay the much higher price caused by the participation of the late bidder.

5- Almost immediately following the herein described auction, an article appeared in a local newspaper which revealed two facts not disclosed to bidders, first that HUD had unsuccessfully offered to sell the property to the City of San Benito for $100.00 and, second, that the property routinely flooded.

6- At all relevant times Plaintiffs were in direct contact with regional HUD officials who were aware of the congressional inquiry and who represented to Plaintiffs that in light of the purported auction irregularities that additional time in closing would be given.

7- Thereafter, however, without advance notice of any kind, HUD informed Plaintiffs that HUD was purportedly cancelling the sale to Plaintiffs because of alleged loan commitment deficiencies. That cancellation came notwithstanding a prior bank letter approving the financing and subsequent formal commitment letter, and notwithstanding the oral

representations made by HUD that because of the auction sale irregularities that closing would be delayed. Irrefutable proof of HUD's oral representation's existence is shown by Exhibit "B" wherein HUD specifically acknowledges " . . . you were led to expect an extension".

8- Plaintiffs say that their loan commitment was a standard commitment as is customarily used in the banking trade and was tendered in a timely fashion and that, accordingly, Defendant's actions in purporting to cancel the sale transaction because of alleged commitment deficiencies were arbitrary, capricious, in bad faith, and unlawful.

9- Plaintiffs further say that had the sale been conducted in an appropriate fashion and their bid of $105,000.00 been properly deemed the high bid, that Plaintiff's would have been able to pay cash for virtually all of the purchase price and would also have been immediately able to close the loan for the improvements which were required to be made to the said Section 8 property as a condition of sale.

10- Plaintiffs additionally say that the non-disclosure to bidders, and subsequent newspaper disclosure to the public, of the habitual flooding of the property and a prior unsuccessful offer to sell the property for $100.00 to the City of San Benito, resulted in Plaintiffs' having to pledge other property owned by Plaintiffs as additional security for the loan needed to fund the $451,000.00 sale price and to fund the required improvements. In that regard Plaintiffs say that the public disclosure of such negative facts would understandably and predictably make lenders more cautious.

11- CAUSES OF ACTION: Plaintiffs say that the wrongful conduct of Defendant constituted common law fraud, a violation of Sec. 27.01 of the Texas Business and Commerce Code, a breach of contract, a breach of the covenant of good faith and fair dealing, and/or negligence,

and also violated the Plaintiffs' Fifth Amendment due process rights.

12- DAMAGES: Plaintiffs say that they will suffer losses in the total amount of $5.60 million unless their purchase agreement is honored and Plaintiffs therefore request a declaration by the court that they are entitled to close their real estate sale and to ownership of the property in question. Plaintiffs also say that the immediate filing of this lawsuit is required in order to place a lis pendens in Cameron County deed records so as to protect Plaintiffs' interests in the aforesaid real property.

WHEREFORE, premises considered, Plaintiffs demand that:

(1) The court issue appropriate writs, orders or decrees requiring Defendant to close the sale in question of the Lasby Park Terrace Apartments, San Benito, Texas and convey good title to Plaintiffs, or, in the alternative, that the court award Plaintiffs the sum of $5.60 million.

(2) The court order Defendant pay all costs and attorneys fees associated with this lawsuit, including costs of court and pre and post judgment interest;

Respectfully Submitted,

_____
DENIS A. DOWNEY
State Bar No. 06085500
Federal No. 1186
1185 F.M. 802, Suite 3
Brownsville, Texas 78526-1538
956-544-0561 / 956-544-0562 (FAX)

ATTORNEY FOR PLAINTIFFS
(Attorney in charge)

# TEXAS STATE BANK



## COMMITMENT LETTER

November 3, 2003

Dr. Leonel Lopez and Judge Elia Cornejo-Lopez
Brownsville, Texas 78521

VIA FAX # (956) 978-5855

Dear Dr. Lopez and Judge Lopez:

Texas State Bank is pleased to have had the opportunity to consider your loan request. We have preliminarily and conditionally approved your loan under the following general terms and conditions for the purchase of Lasby Park Terrace Apts located on 120 Terrace Drive, San Benito, Cameron County, Texas. The loan amount requested by you and approved by Texas State Bank is $401,000.00. This commitment is subject to the following conditions:

1. Title insurance acceptable to Texas State Bank.
2. Appraisal at $785,000.00 or better.
3. Survey acceptable to Texas State Bank.
4. Repairs to be completed as per Alvear's Construction, Inc. proposal of 10/30/03.
5. 1st lien deed of trust on 120 Terrace Drive, San Benito, Texas.
6. 1st lien deed of trust on property known as 4418 McKenzie, Brownsville, TX.
7. 59 payments in the amount of $3,605.64 plus 1 payment due at maturity with an amortization of 15 years at the rate of 7.00% - ½% origination fee ($2,005.00).

Every effort will be in place to close this transaction by November 25, 2003 holding Texas State Bank and its employees free and clear of legal action should this date be surpassed.

Subject to the above loan, Texas State Bank will issue a letter of credit in the amount of $225,000 for a period of one year. Beneficiary on the letter of credit will be U.S. Department of Housing and Urban Development secured with a 2nd lien deed of trust on 120 Terrace Drive for a fee of 1.5% ($3,375.00).

Borrower will pay all professionals, regulatory and lien perfection fees and all other closing costs associated with this transaction.

P.O. Box 2159 • Brownsville, Texas 78522
629 E. Elizabeth • 3255 Boca Chica Boulevard • 3201 Central Boulevard • 2000 FM 802

EXHIBIT A

COMMITMENT LETTER
Dr. Leonel Lopez and Judge Elia Cornejo Lopez
November 3, 2003


The proposed loan shall be evidenced and secured by security and related agreements (including definitive loan agreement), a note, collateral documents and other documents in form and substance satisfactory to Bank and its legal counsel (collectively, the "Loan Documents"). Texas State Bank shall fund any approved commitment only after execution, delivery and receipt of all documentation required by Bank, in form and substance acceptable to Texas State Bank and its legal counsel in every respect. In the event there is any material adverse change in the Borrower's financial condition or obligations prior to closing, Texas State Bank at its sole and complete discretion, will not close or fund the proposed loan.

Should you have any questions, please do not hesitate to contact me at (956) 982-2131.

Sincerely,

Margarita Gonzlaez
Vice President


ACCEPTED BY: _____      _____
               LEONEL LOPEZ               ELIA CORNEJO LOPEZ



U.S. Department of Housing and Urban Development
Fort Worth Regional Office, Region VI
Fort Worth Multifamily PD Center
801 Cherry Street, PO Box 2905
Fort Worth, TX 76113-2905
www.hud.gov

NOV 0 4 2003

Mrs. Elia Cornejo Lopez
235 Sunset Drive
Brownsville, TX  78520

Dear Mrs. Lopez:

    We have received a letter addressed to you from Texas State Bank for a conditional commitment representing the balance of the purchase price for the Lasby Park Terrace Apartments and the Letter of Credit to assure the completion of the required repairs that are part of the purchase agreement.

    The Department regrets to inform you, the closing cannot be delayed beyond the original closing date based upon a commitment letter contingent upon factors other than the terms of sale as required by HUD.

    Because you were led to expect an extension of the closing date without the payment of extension fees, your earnest money deposit of $50,000.00 will be refunded.

    If you have any questions, please contact Ruth Pompa, Chief, Sales Team, at (817) 978-5557.

                              Sincerely,

                              Alvin E. Braggs
                              Director
                              Ft. Worth Multifamily PD Center

EXHIBIT B