UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

MAR 1 2 2004

Michael N. Milby
Clerk of Court

LEONEL LOPEZ AND           §
   ELIA C. LOPEZ,          §
              §
   Plaintiffs,              §
              §
vs.                        §
              §     CIVIL ACTION NO. B-03-209
              §
              §
MEL MARITNEZ, Secretary of §
   Housing and Urban Development, §
              §
   Defendant                §

## DEFENDANT'S MOTION TO DISMISS
## AND/OR ALTERNATIVELY
## MOTION FOR SUMMARY JUDGMENT
## AND ANSWER TO PLAINTIFFS' COMPLAINT

Defendant Mel Martinez, Secretary of the United States Department of Housing and Urban

Development, respectfully files this Motion to Dismiss and/or Alternatively Motion for Summary

Judgment, pursuant to Rules 12(b)(1), 12(b)(6), and 56 of the Federal Rules of Civil Procedure, and

Answer to Plaintiffs' Complaint, and in support would show as follows:

### I. MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT

### A. Introduction

Plaintiffs bring this action against Mel Martinez, in his official capacity as Secretary

(hereinafter "the Secretary") of the United States Department of Housing and Urban

Development (hereinafter "HUD"). Plaintiffs' complaints arise out of their participation in a

June 25, 2003 foreclosure sale and auction, conducted on behalf of HUD, of the Lasby Park

Terrace Apartments, located at 120 Terrace Dr., San Benito, Texas, and out of Plaintiffs'

subsequent efforts to close the sale of that property. Plaintiffs allege HUD, in the course of its

dealings with Plaintiffs over the sale of the property, committed common law fraud, a violation of §27.01 of the Texas Business and Commerce Code (the Texas Deceptive Trade Practices Act), a breach of contract, a breach of the implied covenant of good faith and fair dealing, negligence, and a violation of Plaintiffs' Fifth Amendment due process rights.

Plaintiffs allege jurisdiction in this Court over their claims arises under 28 U.S.C. § 1331, 28 U.S.C. § 2410, 12 U.S.C. § 1702 and 5 U.S.C. §702. For the reasons set forth below, Defendant Secretary denies jurisdiction over Plaintiffs' claims exists in this Court, and respectfully requests that the case be dismissed or, alternatively, transferred to the United States Court of Federal Claims.

**B. Legal and Factual Background**

**1. The Multifamily Mortgage Foreclosure Act**

The foreclosure and auction of Lasby Park Terrace Apartments by HUD was conducted pursuant to the Multifamily Mortgage Foreclosure Act ("MMFA"), 12 U.S.C. §3701 et seq. The MMFA was enacted by Congress to create a uniform foreclosure remedy for multifamily mortgages. 12 U.S.C. §3701(b). The auction process itself is codified at 12 U.S.C. §3710 as part of the MMFA.

Under the MMFA, a foreclosure sale of a property such as the Lasby Park Terrace Apartments must be a public auction that takes place between 9 a.m. and 4 p.m. on a date no sooner than 30 days after the due date of the earliest installment wholly unpaid by the owner of the property. The auction must take place at a location where real estate auctions are customarily held in the county where the property is located, or at a courthouse therein, or at or on the property to be sold. 12 U.S.C. §3710(a).

The foreclosure commissioner, who conducts the sale and auction, must do so in

accordance with the provisions of the MMFA, and in a manner that is fair to both the mortgagor and the Secretary. 12 U.S.C. §3710(b). The foreclosure commissioner and his family or related business entity may not participate in the sale. The Foreclosure Commissioner may hire an auctioneer, and must accept one-price bids. 12 U.S.C. §3710(b). The foreclosure commissioner may cancel the sale at his discretion if he concludes that circumstances are not conducive to a fair sale, and he may adjourn the sale for specified times. 12 U.S.C. §3710(c).

The foreclosure sale is also governed by the regulations, set forth at 24 C.F.R. §27.20, which were promulgated by the Secretary pursuant to the MMFA. Specifically 24 C.F.R. §27.20 (e) allows the Secretary to include any terms or conditions concerning the sale to be included in a "Use Agreement".

### 2. The Foreclosure and Auction of the Lasby Park Terrace Apartments

As acknowledged in Plaintiffs' Complaint, Plaintiffs were interested in purchasing the Lasby Park Terrace Apartments at a HUD foreclosure sale and agreed to participate in an auction for the complex. As part of the process, Plaintiffs were provided a Foreclosure Bid Package. See Exhibit A, attached hereto and incorporated herein for all purposes, which is a true and correct copy of the Bid Package for the Lasby Park Terrace Apartments. The Bid Package contained all the terms of the foreclosure sale and auction, as well as the obligations and responsibilities of the winning bidder with regard to the closing of the sale.

In order to qualify to participate, Plaintiffs were required to execute an Acknowledgment of the Bid Package, thereby demonstrating their full knowledge of all the terms, conditions and requirements contained in the Invitation for Bid and any Addendum thereof. See Exhibit B, attached hereto and incorporated herein for all purposes. Pursuant to the Bid package, Plaintiffs paid a refundable $50,000 in earnest money. Significantly (in light of Plaintiffs' allegations of

HUD's failure to disclose certain facts), the Bid Package materials expressly provided in several different locations that the sale of the Lasby Park Terrace Apartments was an "as is" sale, that no warranties or representations were being made by HUD regarding the property, and that bidders were expected to acquaint themselves with the property and arrive at their own conclusions regarding the value and physical condition and all other aspects of the property.

At the foreclosure auction, Plaintiffs became involved in a bidding war with another party interested in purchasing the property. This second party apparently arrived at the auction site a few minutes late, but was allowed to participate pursuant to the Foreclosure Commissioner's discretion granted at 12 U.S.C. §3710(b). Plaintiffs prevailed and won the auction with a winning bid of $451,000. See Plaintiffs' Complaint, paragraph 3.

Plaintiffs began to arrange financing for the purchase of the property. On or about November 3, 2003, Plaintiffs were conditionally approved for a loan of $401,000 from Texas State Bank. See Exhibit A to Plaintiffs' Complaint. The bank's conditions for this loan included an appraisal of the property at more than $785,000, the completion of certain repairs, title insurance, a survey of the property acceptable by Texas State Bank, as well as first leans against two properties and a payment schedule.

The HUD "User Agreement", which contains the terms of the agreement, requires that the purchase price, less the earnest money deposit, be presented at closing in the form of money order, certified, or cashier's check. In this case, Plaintiffs needed to provide $401,000 at closing (the bid price of $451,000, less the $50,000 deposit already tendered). See Exhibit C, attached hereto and incorporated herein for all purposes, which is a letter from HUD to Plaintiffs, advising them of the closing date, of the need for Plaintiffs to tender a cashier's check for $401,000, and stating that any extension of the closing date would require payment of a fee, as

provided in the Bid Package and the Acknowledment.

Plaintiffs sought an extension of the closing deadline from HUD and submitted the commitment letter from their lender in support of their request. See Exhibit A to Plaintiffs' Complaint. Pursuant, however, to the written terms of the Bid Package and Acknowledgment, and the letter attached hereto as Exhibit C, Plaintiffs were required to pay an Extension Fee if they wished to receive an extension of the closing date. Plaintiffs sought a waiver of that fee, and apparently claimed that some unknown person at some point in time led them to expect an extension of the closing date would be given free of charge. The "Use Agreement" clearly states, however, that extensions must 1) be applied for in writing no later than five days before the closing date, 2) and will be at a cost of $2,665.00 per day. See also Exhibit C, attached hereto and incorporated herein for all purposes.

Plaintiffs refused, or were unable, to pay the required fee. Consequently, HUD cancelled the sale, and indicated it would return the $50,000 of earnest money that Plaintiffs had deposited. See Exhibit B to Plaintiffs' Complaint. In response to HUD's action, Plaintiffs have brought this present action, wherein they seek either title to the Lasby Park Terrace Apartments or $5.6 million in damages.

## C. Argument and Authorities

### 1. Absence of Jurisdiction and Sovereign Immunity

This is an action seeking monetary damages against HUD, an agency of the United States, arising out of the Multifamily Mortgage Foreclosure Act and, specifically, the foreclosure sale as described in the MMFA. Consequently, it is a suit against the sovereign and, absent a waiver of sovereign immunity, is not maintainable because of the absence of subject matter jurisdiction. Land v. Dollar, 330 U.S. 731 (1947).

It is a well settled principle of the sovereign immunity defense that the United States, as sovereign, is immune from suit, except to the extent that Congress otherwise consents. United States v. Mitchell, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980); United States v. Testan, 424 U.S. 392, 399, 96 S.Ct. 948, 953 47 L.Ed.2d 114 (1976); United States v. Sherwood, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed.2d 1058 (1941). A waiver of sovereign immunity "cannot be implied but must be unequivocally expressed". United States v. King, 395 U.S. 1, 4, 89 S.Ct. 1501, 1503, 23 L.Ed.2d 52 (1969). Also, "limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." Soriano v. United States, 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d 306 (1957). As a result, the claims by Plaintiffs are barred unless they fall within some applicable congressional waiver of the sovereign immunity defense.

For the reasons which follow, Plaintiffs have not properly alleged a waiver of sovereign immunity in support of their claims that would allow Plaintiffs to proceed in this Court.

### a. Contract Claim (Applicability of the Tucker Act)

Plaintiffs' complaint alleges a breach of contract action with damages of $5.6 million. It is well established that a cause of action against the United States arising out of a contract is within the exclusive jurisdiction of the Court of Federal Claims to the extent those damages exceed $10,000. Wood v. United States, 961 F. 2d 195, 198 (Fed. Cir. 1992) (upholding a transfer of the petitioner's claims from the district court to the United States Claims Court, now the Court of Federal Claims). This is also codified at 28 U.S.C. §1491 (a)(1) as part of the Tucker Act. The district court therefore lacks subject matter jurisdiction and dismissal is proper pursuant to Fed. R. Civ. P. 12 (b) (1). Alternatively, the Court should transfer this case to the Court of Federal Claims.

### b. **Administrative Procedures Act Review**

Plaintiffs assert jurisdiction under, *inter alia*, 5 U.S.C. Sec. 702, and further state, in paragraph 8 of their Complaint, that HUD's decision to cancel the sale of the subject property to them was arbitrary, capricious, in bad faith, and unlawful. Such allegations are review able, if at all, only under the Administrative Procedures Act (hereinafter APA) for a determination of whether the actions of HUD were arbitrary or capricious. The APA does **not**, however, waive sovereign immunity for (a) claims for money damages; (b) claims for which an adequate remedy is available elsewhere; or (c) claims seeking relief expressly or impliedly forbidden by another statute. 28 U.S.C. § 702, 704. Lulac East Park Place v. HUD, 32 F.Supp.2d 418 (W.D. Tex. 1998).

Here Plaintiffs clearly seek monetary relief and purport to allege breach of contract, breach of state law, negligence and a violation of Petitioner's 5th Amendment due process rights. In contract actions against the government, courts have held that the APA does not waive sovereign immunity. Transohio Savings Bank v. Director, OTS, 967 F.2d 598, 608 (D.C. Cir. 1992); Sharp v. Weinberger, 798 F.2d 1521, 1523 (D.C. Cir. 1986); see also, North Star Alaska v. United States, 14 F.3d 36, 38 (9th Cir. 1994); Amoco Production Co. v. Hodel, 815 F.2d 353, 363 (5th Cir.) cert. denied, 487 U.S. 1234, 108 S.Ct. 2898, 101 L.Ed.2d 932 (1988). In addition, Petitioner's own allegations reflect claims for which adequate remedies are available outside the APA. See: Lulac East Park Village, supra. Therefore, the APA has no application to the allegations before this Court, unless Plaintiffs abandon their claims for monetary relief.

### c. **Tort Claims**

Plaintiffs allege the torts of common law fraud, deceptive trade practices under §27.01 of the Texas Business and Commerce Code, breach of the covenant of good faith and fair dealing,

and negligence.   Congress has waived sovereign immunity for certain torts through the Federal

Tort Claims Act (hereinafter FTCA).   These waivers are codified at 28 U.S.C. §1346 (b) and

§2671 et seq.   The FTCA is the exclusive remedy for tort claims against the United States and its

agencies. Kirkland v. United States, 789 F.Supp 3 (D.D.C. 1992); Nadler v. Mann, 731 F. Supp.

493 (S.D. Fla. 1990), aff'd in part, rev. on other grounds, 951 F. 2d 301; Armor Elevator Co.,

Inc. v. Phoenix Urban Corp., 493 F. Supp. 876 (D.C. Mass. 1980), aff'd, 655 F. 2d 19; FDIC v.

Manatt, 723 F. Supp. 99 (E.D. Ark. 1989).   Plaintiffs have failed to allege the FTCA as grounds

for jurisdiction in this case.   More importantly, they have also failed to demonstrate that they

have exhausted their administrative requirements, the showing of which is a jurisdictional

prerequisite to suit under the FTCA. Rise v. United States, 630 F. 2d 1068, 1071 (5th Cir. 1980).

Such failure subjects Plaintiffs' Complaint to summary dismissal. Gillespie v. Civiletti, 629

F.2d 637 (9th Cir. 1980); Campbell v. Untied States, 496 F. Supp. 36 (D.C. Tenn. 1980).

Finally, Plaintiffs allegations of misrepresentation and fraud are specifically barred by

section 2680(h) of the FTCA.[1]

### d. HUD's Sue and Be Sued Clause

Plaintiffs assert the National Housing Act of 1937, as amended, 12 U.S.C. § 1701, et

seq., ("NHA" or "the Act") in support of this Court's jurisdiction to hear this matter.   However,

the "sue and be sued" clause (12 U.S.C. § 1702) of the NHA is *not* an independent grant of

jurisdiction, but serves only as a limited waiver of sovereign immunity.   See: Mundo Developers

---

[1]   In addition to being barred by the FTCA, Plaintiffs' cause of action under § 27.01 of the Texas Business
and Commerce Code is preempted by the Multifamily Mortgage Foreclosure Act, 12 U.S.C. § 3701, et seq.
which governs the foreclosure process for multifamily mortgages held or insured by HUD. See, 12 U.S.C §
3701(a); Chicago Title Ins. Co. v. Sherred Villages Associates, 708 F.2d 804, 809 (1st Cir. 1983; United
States v. Victory Highway Village, Inc., 662 F.2d 488, 497-98 (8th Cir. 1981); see also, United States v.
Landmark Park & Associates, 795 F.2d 683, 683 (8th Cir. 1986); United States v. OCCI, Co., 758 F.2d
1160, 1163 (7th Cir. 1985); United States v. Scholnick, 606 F.2d 160, 164 (6th Cir. 1979).

Ltd. V. Wicklow Assocs., 585 F.Supp. 1324 (S.D.N.Y. 1984); See also: Ames-Ennis, Inc. v. Midlothian Ltd. Partnership, 469 F.Supp. 939 (D.C.Md. 1979); Harms v. FHA, 256 F.Supp. 757 (D.C. Md. 1979). Moreover, § 1702 operates as a waiver of the sovereign immunity of HUD only for claims brought against HUD for violating substantive provisions of the National Housing Act. See, e.g., Selden Apartments v. U.S. Dept. of Housing and Urban Development, 785 F.2d 152, 156 (6th Cir. 1986).

In the case at bar, Plaintiffs have not asserted, either expressly or by implication, that HUD has violated any substantive provisions of the National Housing Act. In this regard, allegations that HUD officials allegedly entered into an oral modification of the Bid Package Agreement, does *not* constitute "carrying out the provisions" of the NHA within the meaning of the waiver of sovereign immunity under the Act. See: Village Square Ltd. Partnership v. Dept. of HUD, 235 F.3d 1109 (8th Cir. 2000). Nor does the NHA constitute a waiver of sovereign immunity for tort claims under the Federal Tort Claims Act. United States v. Berk & Berk, 767 F.Supp. 593 (D.N.J. 1991).

Thus, Plaintiff's claims seeking monetary damages are still barred by sovereign immunity. Moreover, where as here, this case also involves allegations of breaches of contractual duties, the provisions of 12 U.S.C. § 1702 are plainly inapplicable. See, e.g., United States v. Adams, 634 F.2d 1261 (10th Cir. 1980) (addressing the provisions of § 1702, the Third Circuit squarely held that an action against HUD for alleged breach of contractual duties was vested solely in the Federal Claims Court).

Finally, Section 1702 does not waive the immunity of the United States. Industrial Indemnity v. Landrieu, 615 F.2d 644, 646 (5th Cir. 1980). If the judgment sought would expend itself on the public treasury or domain, then the suit is against the United States and immunity is

not waived. Dugan v. Rank, 372 U.S. 609, 621 (1963); Van-Tex, Inc. v. Pierce, 703 F.2d 891,

896 (5th Cir. 1983); See also, Selden Apartments, 785 F.2d at 157 (6th Cir. 1986); Johnson v.

Secretary, Dept. of Housing and Urban Dev., 710 F.2d 1130, 1138 (5th Cir. 1983); Lomas &

Nettleson v. Pierce, 636 F.2d 971 (5th Cir. 1981); Trans-Bay Engineers and Builders, Inc. v.

U.S. Dept. of Housing and Urban Dev., 551 F.2d 370 (D.C. Cir. 1976). Here, Plaintiff has not

alleged or shown that the judgment sought would constitute an administrative expense payable

from a fund subject to the discretion and control of HUD, as opposed to the public treasury.

Thus, the limited waiver of § 1702 does not apply.

### e. 28 U.S.C. § 1331

Plaintiff also invokes federal question jurisdiction under 28 U.S.C. § 1331, as an action

arising under the constitution or laws of the United States. Arguably, Plaintiffs invoke the

provisions of the National Housing Act, 12 U.S.C. § 1701. *et seq.* to support jurisdiction under

Section 1331. Defendant Secretary submits that Plaintiffs' failure to plead any substantive

provisions of that Act, or any violation thereof, deprives this Court of jurisdiction under § 1331.

Section 1331 is merely a general grant of power to the district court to hear controversies

arising under federal law and Plaintiffs may not base federal subject-matter jurisdiction on that

statute, standing alone. Collins v. Trustees of Local 478 Trucking & Allied, 487 F.Supp. 520

(U.S. D.Ct. NJ 1980). Before an action can be viewed as having arisen under a federal

enactment, it must be clear from the face of the complaint that, as to the claim stated, the

Plaintiff's right to a remedy is one either founded upon or the product of federal law. Home S &

L Ass'n v. Samuel T. Isaac & Assoc., Inc., 496 F.Supp. 831 (N.D. Ill. 1980). To establish such a

right to relief under the National Housing Act, a plaintiff must allege either that the defendant

violated a relevant provision of the Act, or that said provision was in some way unconstitutional.

Id.; Ames-Ennis, Inc. v. Midlothian, Ltd., 496 F.Supp. 939 (D.Md. 1979). In this regard, the

Fifth Circuit has stated:

> [A] suit to enforce a right which takes its origin in the laws of the United States is not
> necessarily, or for that reason alone, one "arising under" those laws, for a suit does *not* so
> arise unless it *really* and *substantially* involves a dispute or controversy respecting the
> *validity, construction,* or *effect* of such a law, upon the determination of which the result
> depends." Westland Oil Dev. Corp. v. Summit Trans., supra., 481 F.Supp. at   , quoting
> Hines v. Cenla Commun. Action Committee, Inc., 474 F.2d 1052, 1055 (5th Cir. 1973),
> quoting, Shulthis v. McDougal, 225 U.S. 561, 569, 32 S.Ct. 704, 56 L.Ed. 1205 (1912).
> (emphasis added).

Dismissal is appropriate where federal law was an ingredient of plaintiff's claim but

provided simply the impetus for the contract upon which the suit was brought. Johnston v. Byrd,

354 F.2d 982 (5th Cir. 1965). Even the fact federal regulations applied to a particular transaction

- and indeed mandated inclusion of the very contractual language at issue - would not convert a

contract claim into a federal cause of action. Burgess v. Charlottesville Sav. & Loan Assoc., 477

F.2d 40, 43-45 (4th Cir. 1973).

In Plaintiffs' Complaint, no such allegations are made. Nowhere in the Complaint is it

alleged that HUD violated any provision of the National Housing Act, nor that any provision of

that Act is unconstitutional. Rather, Plaintiffs allege HUD's breach of an alleged oral contract

that had the effect of reforming the preexisting Bid Package Agreements. Whether or not such

an oral contract existed, has been breached, or is enforceable, will be determined under

principles of contract law, such as the elements of a contract, and does not really and

substantially involve a dispute or controversy over the validity, construction or effect of the

National Housing Act. Nor do Plaintiffs' other allegations of breach of the bid contract

agreement, fraud, negligence, breach of covenant of fair dealing, violation of State law and

denial of due process involve a dispute or controversy over the validity, constitutionality, or effect of the NHA.

In sum, where, as here, it is not alleged that HUD violated any particular provision of the National Housing Act, nor is it alleged that the Act, or any portion of it, is unconstitutional, there is no jurisdiction under Section1331.  See, gen'lly, Home S&L Assn. v. Samuel T. Isaac & Assoc., Inc., 496 F.Supp. 831 (N.D. Ill. 1980)(no section 1337(a) jurisdiction in suit for equitable relief seeking reformation of participation Agreements involving FHA-insured loan and alleging fraud and breaches of contract); Ames-Ennis, Inc. v. Midlothian, Ltd., 496 F.Supp. 939 (D.Md. 1979)(no Section 1337(a) jurisdiction over action by building contractor to recover damages against HUD and owner of Section 236 project).[2]

### f. 28 U.S.C. Sec. 2410

Plaintiffs also cite 28 U.S.C. § 2410 as a basis for jurisdiction in this case.  However, as the following analysis shows, this statute is inapplicable to the facts and circumstances of the subject Complaint.  28 U.S.C. § 2410 states, in pertinent part:

> (a)    Under the circumstances prescribed in this section and section 1444 (Foreclosure Action Against the United States) of this title *for the protection of the United States*, the United States may be named as a party in any civil action or suit in any district court, or any State court *having jurisdiction of the subject matter* –
>
> (1)  to quiet title to,
>
> (2)  to foreclose a mortgage or other lien upon,
>
> (3)  to partition,
>
> (4)  to condemn, or
>
> (5)  of interpleader or in the nature of interpleader with respect to,

---

[2] The existence of jurisdiction under 28 U.S.C. § 1337(a) is determined by the same standard as federal question jurisdiction. Western Oil Development Corp. v. Summit Trans., 481 F.Supp. 15 (S.D. TX. 1979).

real or personal property on which the United States has or claims a mortgage or other lien. (emphasis added).

The law is well-settled that 28 U.S.C. § 2410, like 12 U.S.C. § 1702 and 28 U.S.C. § 1331, merely waives sovereign immunity but does not authorize a suit unless there are jurisdictional grounds independent of § 2410. Macklin v. United States, 300 F.3d 814, 819 (7th Cir. 2002); Harrell v. United States, 13 F.3d 232, 234 (7th Cir, 1993) Moreover, Section 2410 is limited in purpose and application to those situations involving quieting of title or foreclosing of mortgages or liens and clearing real estate titles of questionable or valueless government liens. See, e.g., Juniper Development Group v. United States, 774 F.Supp. 56 (D.Mass 1990); American Fidelity Fire Ins. Co. v. Construcciones Werl, Inc., 407 F.Supp. 164 (D.C. Virgin Islands 1975); General Electric Credit Corp v. Grubbs, 447 F2d 286, 287 (5th Cir. 1971), rev'd on other grnds, 405 U.S. 699, 92 S.Ct. 1344, 31 L.Ed.2d 612 (1971); Schmitz v. Societe Internationale, 249 F.Supp. 757 (D.C.D.C. 1966), cert. den., 87 S.Ct. 1684, 387 U.S. 908, 18 L.Ed2d 626; See Also, United States v. Brosnan, 363 U.S. 237, 80 S.Ct. 1108, 4 L.Ed.2d 1192 (1960); Thompkins v. United States, 172 F.Supp. 204 (D.C. Tex. 1959).

In other words, § 2410 contemplates litigation commenced by a private party against another private party seeking to foreclose or quiet title. The statute seeks to protect the interests of the United States in its valid liens while, at the same time, providing an avenue for private parties to clear up all title-related issues by removing the sovereign immunity barrier. The statute also contemplates that suit would be against the United States, not its agencies.

Thus, once again, Plaintiffs have failed to allege any source of subject matter jurisdiction independent of 28 U.S.C. § 2410. Moreover, Plaintiffs' allegations of negligence, fraud, breach

of contract, breach of covenant of fair dealing, violation of State law and denial of due process

do not allege a quiet title, foreclosure, partition, condemnation, or interpleader action, by

Plaintiff seeking to clear title of a questionable or valueless government lien.  Under these

circumstances, 28 U.S.C. § 2410 does not support subject matter jurisdiction and the complaint

fails to state a claim under 28 U.S.C.§ 2410.  To the extent Plaintiffs seek money damages, §

2410 also does not waive sovereign immunity.  Ringer v. Basile, 645 F.Supp. 1517 (D.Colo.

1986).

### 2. **Failure to State a Claim for Which Relief Can be Granted**

#### a. **Procedural Due Process**

In purporting to challenge HUD's cancellation of the sale in this case, Plaintiffs contends

that HUD violated her 5th Amendment due process rights.  However, nowhere in their complaint

do Plaintiffs plead any specific facts alleging what process they believe they were entitled to and

what acts or omissions of HUD denied her that process.  Likewise,  Plaintiffs do not allege the

existence of any actionable property interest under the 5th Amendment.  Rather, the Plaintiffs

simply assert in a general and conclusory fashion that HUD failed to afford them due process

rights. See, Complaint, para. 11.  Therefore, based on the factual allegations of the Complaint,

the Federal Defendant submits that Plaintiffs have failed to state a claim for which relief may be

granted for any violation of due process.

The Due Process clause of the Fifth Amendment confers both substantive and procedural

rights.  Albright v. Oliver, 510 U.S. 266, 114 S.Ct. 807, 812, 127 L.Ed.2d 114 (1994).  In order

to state a due process claim, Petitioner must show liberty or property interests that are substantial

enough to invoke the protection of federal law.  Kentucky Dept. of Corrections v. Thompson,

490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989); <u>A. Auidi & Sons v. Town of Plainville</u>, 862 F.Supp. 737 (D.Conn. 1994). The claims before this court arise from a contract-related dispute and not for a deprivation of rights secured by the United States Constitution. Although a contract may serve as an independent source of the required liberty or property interest, the circumstances in which a contract will give rise to a constitutionally protected interest are drastically limited. <u>A. Auidi & Sons</u>, 862 F.Supp. <u>supra</u>. at 741.

This is not such a case. Nowhere do Plaintiffs allege that HUD's actions were based on race, religion, sex or national origin. Nor do Petitioner assert that HUD took any of its actions because Petitioner exercised any freedom granted or liberty protected by the Constitution. Rather, the due process allegation in the complaint is merely conclusory, unsupported by specific factual allegations. Under these circumstances, Plaintiffs have not properly alleged any due process violation and the complaint should be dismissed. <u>See</u>, <u>Stewert V. Hunt</u> , 598 F.Supp. 1342 (D.C.N.C. 1984).

Finally, Plaintiffs have failed to allege, and cannot establish, a property interest that is substantial enough to invoke the protection of the 5th Amendment. Plaintiffs, as high bidders at a real estate auction, were required to close on the sale within 30 days of the auction. Plaintiffs were unable to arrange financing by the scheduled closing date and inquired about an extension. Plaintiffs refused, however, to comply with the express written terms of their agreement with HUD, which required them to pay a fee in exchange for the extension of the closing date. Rather, they sought to substitute a conditional commitment in lieu of the required fee.[3] At any

---

[3]  Since the sale was an "All Cash-As Is" sale, and not contingent on financing, the terms of the purchasers' financing would normally be irrelevant to HUD. However, the commitment letter submitted by Plaintiffs in this case was made contingent upon factors other than the terms of the sale. In effect, the commitment letter sought to modify the terms of the sale.

time up to the date the sale was cancelled, Plaintiffs could have paid the fee and obtained an extension. Under these circumstances the complaint fails to state a claim for which relief may be granted and should be summarily dismissed.

### b. Alleged Representations Of Any Unnamed Employee(s)

HUD submits that to the extent Plaintiffs' causes of action are based upon the alleged oral representations or assurances of any HUD employee or official, that reliance is misplaced and cannot, as a matter of law, give rise to a cause of action against HUD. It is well settled, as a general rule, that the government is not bound by the statements or assurances of its officers, agents or representative, where the actual authority to make such statements or assurances is lacking. ATC Petroleum, Inc. v. Sanders, 860 F.2d 1104 (D.C. Cir. 1988)(quoting Fed. Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947). Moreover, parties dealing with the Government are expected to know the law and may not rely on the conduct of Government agents contrary to the law. ATC Petroleum, Inc., supra., 860 F.2d at 1111; Heckler v. Comm. Health Service, 467 U.S. 51, 63, 104 S.Ct. 2218, 2225, 81 L.Ed.2d 42 (1984).

In this case, Plaintiffs allege that certain unnamed HUD officials told them that, in light of the purported auction irregularities, the date of the closing would be extended, presumably at no cost to her. However, Plaintiffs fail to allege that these individuals had actual authority to bind HUD, Additionally, Plaintiffs cannot reference any HUD regulation, handbook provision, or statute, that authorizes these unnamed individuals to make any representations to successful bidders/purchasers concerning any waivers of the contractual provisions of the Bid Package Agreement or terms of the sale. Plaintiffs also find no support in the contract documents. Rather, those documents reflect the clear and unambiguous understanding of the parties that *if*

HUD were to agree to an extension of the closing date, the Purchasers must pay a fee which is the greater of 1.5% of the purchase price, or HUD's holding costs of $41 per unit per day, which is $2665 daily, for each 30-day period. (See, Bid Package, Attachment B, Terms of Sale, Part II, para. 8, EXTENSION FEES).

Moreover, it was expressly understood by the parties that any oral statement or representation by any representative of HUD changing or supplementing the Invitation for Bid or Addendum, is unauthorized and shall confer no rights upon the Bidder/Purchaser, (See, Bid Package, Section 5 –DISCLAIMERS, para. 2. UNAUTHORIZED ORAL STATEMENTS OR MODIFICATIONS). Consequently, HUD is not bound by these alleged representations as a matter of law. Jayson Investments, Inc. v. Kemp, 746 F.Supp. 807 (N.D. Ill. 1990) (representation by HUD officials that HUD would allow conversion of coop project to rental project if coop failed, not binding on HUD); Manaday Shores Co-op Hous. Assoc. v. Pierce, 667 F.2d 1195 (5th Cir. 1982)(HUD Dep. Asst. Sec. assurances that HUD would negotiate exclusively with petitioner for sale of project not binding on HUD and does not give rise to cause of action); United States v. Victory Highway Village, Inc., 662 F.2d 488 (8th Cir. 1981) (reliance upon statements of HUD officials that Petitioner should make payments as best he could under provisions of work-out agreement that HUD would "take no action because of existing default prior to January 1977" did not support cause of action against HUD); Modular Technic Corp. v. South Haven Houses, Etc., 403 F.Supp. 204 (E.D. N.Y. 1975) (contractor's relied on unauthorized representations and warranties by HUD that it could perform construction a certain way and receive certain additional compensation; HUD agents not authorized and Congress did not waive sovereign immunity for unauthorized acts); see also, United States v.

Woodland Terrace, 293 F.2d 505, cert. den., 82 S.Ct. 381, 368 U.S. 940, 7 L.Ed.2d 338 (oral statements and written representations of government officials relating to modification of mortgage terms did not deprive HUD of right to foreclose).

### c. **Tucker Act (revisited)**

As previously noted, inasmuch as Plaintiffs have alleged breach of contract and seek damages for that breach in excess of $10,000, their claim falls within the exclusive jurisdiction of the Federal Claims Court. Consequently, this Court may either dismiss the complaint or transfer Plaintiffs claims to the Federal Claims Court. However, HUD submits that Plaintiff's complaint, on its face, fails to state a claim for which relief may be granted, and should, therefore, be dismissed rather than transferred. Through the Tucker Act, supra., the United States has consented to be sued for money damages in certain restricted circumstances, the only relevant one in this case being the basis of a contract (either express or implied-in-fact) between the United States and the Claimant. In the absence of a direct contractual undertaking, no enforceable contractual right against the United States exists.

In this case, Plaintiffs summarily assert the existence of an oral express or implied contract with HUD through the alleged oral representations regarding a waiver of an extension fee. Based on these alleged oral representations, Plaintiffs seek to reinstate the sales contract with HUD and reschedule closing and/or obtain monetary damages. Nowhere in the Complaint, however, do Plaintiffs allege facts which set forth the requisite elements of a contract or the breach thereof (i.e., consideration, mutuality of intent, definiteness of terms). In fact, from the allegations in the complaint, it appears Plaintiffs seek to rely solely on the alleged oral

representations of certain HUD employees at the exclusion of the unambiguous written terms of the Bid Package.

Consequently, Plaintiffs, in substance, seek to allege a breach of an implied contract with HUD. Under the Tucker Act, however, jurisdiction extends only to actual contracts, express or implied, and not to contracts implied at law. Girling Health Systems, Inc. v. United States, 949 F.2d 1145 (fed. Cir. 1991); Pasco Enterprises, Inc. v. United States, 13 Cl. Ct. 302 (1987); Chavez v. United States, 18 Cl. Ct. 540 (1989).

Generally, an implied-in-law, or constructive or quasi, contract is a contract where, by fiction of law, a promise is imputed to perform a legal duty. An implied-in-fact contract, on the other hand, is founded upon a meeting of the minds, which, although not embodied in an express contract, is inferred as a fact from the conduct of the parties showing their tacit understanding. Algonac Mfrg. Co. v. United States, 428 F.2d 1241, 1255 (1970).

Preliminarily, the United States notes that Plaintiffs seek to establish an implied contract in addition to the written terms of existing express contracts (i.e., the Bid Package Acknowledgement and Attachments thereto). However, an implied-in-fact contract cannot exist where an express contract already defines the parties' rights and obligations on the identical subject matter. Durant v. United States, 16 Cl.Ct. 447 (1988); Blue Cross-Blue Shield v. United States, 13 Cl.Ct. 710, 716 (1987), aff'd 852 F.2d 1294, cert. den., 109 S.Ct. 557, 488 U.S. 993, 102 L.Ed.2d 583, reh. den., 109 S.Ct. 887, 488 U.S. 1051, 102 L.Ed.2d 1009. Thus, to the extent Plaintiffs seek to reinstate the Bid Agreement and Sales Contract, Plaintiffs' complaint fails to state claims for which relief may be granted, as a matter of law, and those contract claims should be summarily dismissed.

In any case, in order to establish a cause of action based on an implied-in-fact contract, Plaintiffs must establish the elements of an express contract, including consideration, mutuality of intent, and definiteness of terms (i.e., lack of ambiguity in offer and acceptance). <u>Girling Health Systems, Inc</u>, <u>supra.</u>, 945 F.2d at 1146 (Fed. Cir. 1991); <u>Pasco Enterprises, Inc. v. United States</u>, 13 Cl.Ct. 302 (1987). In addition, Plaintiffs must show authority to bind the Government residing in the offeror whose conduct was relied on. <u>Id</u>. Moreover, it is essential that acceptance of the offer be manifested by conduct that indicates assent to the proposed bargain. <u>Id</u>. In other words, there must be a meeting of the minds.

In contrast, Plaintiff's complaint falls woefully short of the above standards. Indeed, the complaint doesn't even attempt to meet those standards. First, the complaint contains no allegations whatsoever of any actual consideration flowing to HUD for any alleged agreement to permit an extension of the closing date without payment of the required extension fees. Regarding mutuality of intent, both the terms of the written agreement and the conduct of the parties, deny the existence of an enforceable agreement. The Use Agreement attached to the Bid package, clearly states that if HUD were to agree to an extension, that extension must be applied for, in writing, no later than five days before the closing date *and* will cost Plaintiffs $2,665 per day. (See Exhibit A, Bid Package, Att. B, Terms of Sale, Part II, Para. 8) Moreover, the contract clearly and unambiguously states that *any* oral statement or representation by any representative of HUD is unauthorized and shall confer no right on the purchaser. <u>Id.,</u> DISCLAIMERS, para. 2 entitled "UNAUTHORIZED ORAL STATEMENTS OR MODIFICATIONS".[1]

---

[1] In any case, the contract also limits HUD's ultimate liability to the refund of the purchase price or such portion thereof as HUD may have received. Bid Package, Sec. 5, DISCLAIMERS, para. 3.

Clearly, under these circumstances, Plaintiffs cannot establish a meeting of the minds between authorized representatives of HUD and Plaintiffs on any of the matters now asserted by Plaintiffs. In sum, Plaintiffs have failed to state a claim upon which relief may be granted.[2]

## II. DEFENDANT MEL MARTINEZ' ANSWER

.    For his answer to Plaintiffs' original complaint, Defendant Secretary Mel Martinez admits, denies and alleges as follows:

### FIRST DEFENSE

The Court lacks jurisdiction over the subject matter of the action against the Federal Defendants.

### SECOND DEFENSE

The Complaint fails to state a claim against the Federal Defendants upon which relief may be granted.

### THIRD DEFENSE

The Complaint is barred by the doctrine of sovereign immunity.

### FOURTH DEFENSE

The Complaint is barred by the Plaintiffs failure to exhaust administrative remedies under the Federal Torts Claims Act, 28 U.S.C. § 2671, et seq.

---

[2] Plaintiffs allegations concerning undisclosed evidence of habitual flooding and a prior unsuccessful offer to sell the property to the City of San Benito (Complaint para. 15), similarly fail to provide Plaintiffs an avenue of relief. First, the express terms of the Bid Package and Acknowledgement specifically disclaim any representations or warranties by HUD as to the condition of the property and impose on plaintiffs the affirmative obligation to exercise due diligence so as to be fully informed as to the condition of the property. See, Bid Package, Sec. 1, para.8; Sec. 5, para. 1(a) Moreover, the Plaintiffs, by executing the Acknowledgement, acknowledged that their purchase price is based on their own evaluation of the project and not upon any representations by HUD. Bid package, Att. B, para. 10. Finally, the simple answer to the "unsuccessful" sale to the City, 12 U.S.C. § 1715Z-11a (b), requires that HUD offer qualified HUD properties to units of local government for a nominal fee, prior to disposing of the property through a sale.

## FIFTH DEFENSE

The allegations of fraud and misrepresentation are barred under the FTCA, 28 U.S.C. § 2680(h).

## SIXTH DEFENSE

To the extent the Complaint alleges breach of contract, the Tucker Act, 28 U.S.C. §§ 1346(a)(2) and 1491(a)(1), vests exclusive jurisdiction over the Complaint in the United States Court of Federal Claims.

## SEVENTH DEFENSE

Neither Mel Martinez nor HUD is not a proper party to this action under the FTCA, 28 U.S.C. § 2679(a), or the Tucker Act and they should be dismissed.

## EIGHTH DEFENSE

Under the Administrative Procedures Act ("APA"), 5 U.S.C. §702, et seq., HUD's actions were not arbitrary, capricious or an abuse of discretion, nor was HUD's reasoning so irrational as to be a clear error of judgment.

## NINTH DEFENSE

Under the Administrative Procedures Act ("APA"), 5 U.S.C. §702, et seq.,plaintiffs claims for monetary relief are barred.

## TENTH DEFENSE

HUD is not bound by the alleged oral representations of any HUD employees as a matter of law.

**ELEVENTH DEFENSE**

Without waiving any of the defenses and/or objections herein asserted, and with respect to the specific allegations of the Complaint, the Federal Defendant avers:

1. The allegations contained in paragraph 1 are assertions of jurisdiction to which no answer is required. However, to the extent that they may be deemed allegations of fact, they are denied.

2. The allegations contained in paragraph 2 of the Complaint are denied for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted. However, Federal defendants admit that Plaintiffs paid a $50,000 escrow deposit and aver that the escrow deposit has been returned in full to Plaintiffs.

3. The allegations contained in paragraph 3 are admitted only to the extent that Plaintiffs aver they participated in the public auction sale of the subject property and that they successfully placed the high bid in the amount of $451,000. The balance of the allegations contained in paragraph 3 are denied. Federal Defendants specifically aver that the foreclosure commissioner properly exercised his discretion in permitting a bidder who arrived a few minutes after the bidding began to participate in the bidding. Federal Defendants further aver that the Foreclosure commissioner polled the participants to determine if there were any objections to his decision and no objections were raised by any bidder, including plaintiffs.

4. The allegations contained in paragraph 4 of the Complaint are denied for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted.

5. The allegations contained in paragraph 5 of the complaint are denied for lack of knowledge or information sufficient to form a belief as to the truth of the matters asserted.

6. The allegations contained in paragraph 5 are admitted only to the extent they allege that Plaintiffs communicated with HUD concerning the sale and closing date. The balance of the allegations are denied.

7. The allegations contained in paragraph 7 of the Complaint are denied because the writing speaks for itself. Federal defendants specifically deny that any oral representations were made to Plaintiffs that the closing would be delayed without the payment of an extension fee. Federal defendants aver that Plaintiffs had full advanced knowledge of the terms and conditions of the sale, including the obligation to pay an extension fee and, among other things, that HUD would not be bound by any unauthorized oral representations and Plaintiff acknowledged these facts in writing.

8. The allegations contained in paragraph 8 of the complaint are denied.

9. The allegations contained in paragraph 9 of the Complaint are denied.

10. The allegations contained in paragraph 10 of the complaint are denied.

11. The allegations contained in paragraph 11 of the Complaint are conclusions of law and constitute Plaintiffs characterization of the Complaint, to which no answer is required. However, federal defendants specifically aver that Plaintiffs have failed to state any claim for relief whatsoever and expressly deny that Plaintiffs are entitled to any judgment in its favor for monetary or other relief whatsoever, or at all.

12. The allegations contained in paragraph 12 of the Complaint are denied.

With regard to the prayers for relief contained in the Complaint, Defendant expressly denies that Plaintiffs are entitled to the relief requested or to any relief whatsoever, or at all.

Each and every allegation not previously admitted or otherwise qualified is denied.

## III. <u>PRAYER</u>

WHEREFORE, Defendant Mel Martinez, Secretary of the United States Department of

Housing and Urban Development, prays that the Court grant his Motion to Dismiss and/or

Alternatively Motion for Summary Judgment; that if said Motion is not granted, then after due

proceedings there be judgment in his favor and against Plaintiffs, dismissing the Complaint at

Plaintiff's cost, and for all general and equitable relief as may be appropriate.

<div style="margin-left:40%;">

Respectfully submitted,

MICHAEL T. SHELBY
UNITED STATES ATTORNEY

_David Guerra_

STEVEN SCHAMMEL
DAVID L. GUERRA
Assistant United States Attorneys
1701 W. Hwy. 83, Ste. 600
McAllen, TX 78501
Telephone: (956) 618-8010
(956) 618-8016 (fax)
State Bar No. 24007990

</div>

OF COUNSEL:

William V. Cerbone, Jr.
Associate Regional Counsel
U.S. Department of Housing
& Urban Development
801 Cherry Street,
28th Floor
Ft. Worth, Tx. 76113-2905
(817) 978-5993

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the true and foregoing Defendant's Motion to Dismiss and/or Alternatively Motion for Summary Judgment was sent by First-Class Mail to the following:

Mr. Dennis A. Downey
Attorney at Law
1185 FM 802
Ste. 3
Brownsville, TX 78521

on this the 12nd day of March, 2004.

DAVID L. GUERRA
Assistant U. S. Attorney

Exhibit A

**DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT AUTHENTICATION**

    **I, Bill Daley**, Regional Counsel, Office of General Counsel for the Southwest, do hereby certify that I am authorized to cause the seal of the Department of Housing and Urban Development to be affixed to such documents as may require its application and to certify that a copy of any book, record or paper or other document is a true copy of that in the files or records of the Department.

    I do hereby certify and attest that the following documents, attached hereto, are true and correct copies of the documents contained in the files of the Department:

        Bid Package, Foreclosure Sale held June 25, 2003, Lasby Park Terrace Apartments, San Benito, Texas, which includes Attachments A through G.

    In witness whereof, I have signed my name and caused the seal of the Department of Housing and Urban Development to be affixed this 10th day of March, 2004.

_____                _____
Date                                                    Attesting Officer

Authority delegated by the Secretary of the Department of Housing and Urban Development and published in the Federal Register on July 15, 2003, Vol. 68, No. 135, at page 41840.



# FORECLOSURE SALE
## 65 UNIT APARTMENT COMPLEX
## IN San Benito, Texas

## Lasby Park Terrace Apartments

Is offered for sale at foreclosure.



Bids will be accepted orally at:
3:00 pm local time on
June 25, 2003

at: Cameron County Courthouse
974 E. Harrison Street
Brownsville, TX  78520
(Sale on the front door steps)

 **U. S. Department of Housing and Urban Development**













# TABLE OF CONTENTS
## SECTION 1 - INTRODUCTION AND GENERAL INFORMATION

| PAR | | PG | PAR | | PG |
|---|---|---|---|---|---|
| 1. | Definition of Invitation for Bid | 1 | 6. | Cancellation of Sale | 1 |
| 2. | Bid Responsiveness | 1 | 7. | Bidder's Due Diligence | 1 |
| 3. | Sale to Highest Qualified Bidder | 1 | 8. | Post-Closing Required Repairs | 1 |
| 4. | No Redemption Period | 1 | 9. | Recordation of Certain Documents | 1 |
| 5. | Bid Acceptance or Rejection | 1 | 10. | Source for Additional Information | 1 |

## SECTION 2 - FORECLOSURE SALE PROCEDURES AND SUBMISSION OF BIDS

| 1. | General | 1 | 5. | Telegraphic or Facsimile Bids | 2 |
|---|---|---|---|---|---|
| 2. | Bidding at the Foreclosure Sale | 1 | 6. | Verbal Notification to the High and | |
| 3. | Items That Must Be Submitted at the | | | Second High Bidder | 2 |
| | Foreclosure Sale | 2 | 7. | Rejection of Lower Bids | 2 |
| 4. | Corrections | 2 | | | |

## SECTION 3 - POST FORECLOSURE SALE PROCEDURES

| 1. | Continuance of Offers | 2 | 5. | Submission of Post-Bid Documents Ten | |
|---|---|---|---|---|---|
| 2. | Submission of Post-Bid Documents Two | | | (10) Days After Foreclosure Sale | 3 |
| | (2) Days After Foreclosure Sale | 2 | 6. | Review of Project Management | 3 |
| 3. | Qualification, Acceptance, Rejection of | 2 | 7. | Closing Date Requirement | 3 |
| | Bid | | | | |
| 4. | Handling of the Earnest Money Deposit | 3 | 8. | Extension of Closing | 3 |

## SECTION 4 - CLOSING

| 1. | Execution of Use Agreement | 3 | 6. | Method of Payment | 4 |
|---|---|---|---|---|---|
| 2. | Closing Date and Place | 3 | 7. | Letter of Credit | 4 |
| 3. | Cash Due at Closing | 4 | 8. | Conveyance | 4 |
| 4. | Prorations | 4 | 9. | Recordation of Deed | 4 |
| 5. | Closing Expenses | 4 | 10. | Documents to be Furnished or Executed at | |
| | | | | Closing | 4 |

## SECTION 5 - DISCLAIMERS

| 1. | Disclaimer | 4 | 3. | HUD Liability | 4 |
|---|---|---|---|---|---|
| 2. | Unauthorized Oral Statement | | | | |
| | Modifications | 4 | | | |

## ATTACHMENTS

☒ **ATTACHMENT A** - Property at a Glance
☒ **ATTACHMENT B** - Terms and Requirements of Foreclosure Sale - Acknowledgment by Bidder
☒ **ATTACHMENT C** - Foreclosure Use Agreement

☒ **ATTACHMENT D** - Letter of Credit (LoC) Sample
☒ **ATTACHMENT E** – Repair Summary and narrative
☒ **ATTACHMENT F** – Environmental Information
☐ **ATTACHMENT G** – Additional property information

## FORMS REQUIRED TO COMPLETE BID AND PURCHASE
### THESE FORMS ARE AVAILABLE AT http://www.hudclips.org/sub_nonhud/html/forms.htm

☒ Previous Participation Certificate (Form HUD-2530) for proposed owner
☒ Personal Financial and Credit Statement (Form HUD-92417) for each proposed principal and/or general Partner
☒ Affirmative Fair Housing Marketing Plan (Form HUD-935.2)

☒ Management Entity Profile (Form HUD-9832)
☒ Management Certification for Multifamily Housing Projects (Form HUD-9839 A & B)
☐ Project Owner's/Borrower's Certification (Form HUD-9839 C) - For elderly housing projects managed by Administrators only

## SECTION 1 - INTRODUCTION AND GENERAL INFORMATION

1. **DEFINITION OF INVITATION FOR BID** - This document, including attachments, exhibits, and any amendment thereto, constitute the Invitation for Bid (Invitation) for **LASBY PARK TERRACE APARTMENTS**, FHA Number; **115-35205**.   PROPERTY AT A GLANCE, Attachment A to this Invitation, contains a summary of facts, figures, and most terms of the sale.  This Invitation also includes a list of the forms necessary to complete a responsive bid.

2. **BID RESPONSIVENESS** - A bid must be responsive to the terms of the sale.  To be considered for award, a bid must comply in all material respects with this Invitation.  Each bid on its face shall be firm, unconditional, responsive, fixed in one amount certain, and not in the alternative.  Special conditions, alterations, or deletions will render a bid non-responsive.  The terms of the foreclosure sale are those set out in the Invitation for Bid, especially the Terms and Requirements of Foreclosure Sale - Acknowledgment by Bidder (Acknowledgment) and Foreclosure Sale Use Agreement.  Lack of earnest money deposit, as required by this Invitation, will be cause for bid rejection.

3. **SALE TO HIGHEST QUALIFIED BIDDER** - Sale of this project will be made to the highest responsive, qualified Bidder.

4. **NO REDEMPTION PERIOD** - This sale is not subject to redemption by the previous owner.

5. **BID ACCEPTANCE OR REJECTION** - HUD reserves the right to reject any and all bids, to waive any informality in any bid received, and to reject the bid of any Bidder HUD determines lacks the experience, ability or financial responsibility needed to own and manage the project.

6. **CANCELLATION OF SALE** - HUD reserves the right to cancel this Invitation for Bid and/or reject any and all bids.

7. **BIDDER'S DUE DILIGENCE** - Bidders are encouraged to perform their own due diligence to gain a full understanding of the project and the conditions of sale before submitting a bid.

8. **POST-CLOSING REQUIRED REPAIRS** - Repair requirements that must be completed after closing, if applicable to this sale, are included in the Form HUD-9552, Post-Closing Repair Requirements, and Exhibits, Attachment E, to this Invitation.  The repair requirements listed in Attachment E survive the sale and will be recorded with the Deed.  **NOTE**: the Form HUD-9552 and exhibits reflect **cost estimates** of the required repairs.

**While care has been exercised to assure accuracy, all information provided is solely for the purpose of permitting parties to determine whether or not the property is of such type and general character as might interest them in its purchase, and HUD makes no warranty as to the accuracy of such information.  The failure of any Bidder to inspect, or be fully informed as to the condition of all or any portion of the property being offered, or condition of sale, will not constitute grounds for any claim, demand, adjustment, or withdrawal of a bid.**

9. **RECORDATION OF CERTAIN DOCUMENTS** - Attachment E, Post Closing Repair Requirements (Form HUD-9552) and attachments, if provided herein, and Attachment C, with riders, if provided herein, will be recorded with the Deed.

10. **SOURCE FOR ADDITIONAL INFORMATION** - Should you need further information, please call the contact person indicated in the Property at a Glance.

## SECTION 2 - FORECLOSURE SALE PROCEDURES AND SUBMISSION OF BIDS

1. **GENERAL** - In order to submit a responsive bid to this Invitation, a Bidder must submit the items indicated in this Section.  All the required forms are listed.

2. **BIDDING AT THE FORECLOSURE SALE** -
   (a) The foreclosure sale is an oral, open bid sale that takes place at the date, time and place indicated in the attached Property at a Glance.

(b) The Bidder must either:
- (i) State a bid price orally at the sale, **or**
- (ii) Submit a written bid to the person that conducts the sale two (2) business days before the date of sale. Written bids, if received, will be read aloud at the sale before oral bids are accepted. Only the person that submitted the written bid, or an agent thereof may raise a written bid price. Please call the contact person indicated in the Property at a Glance for details regarding submitting a written bid.

3. **ITEMS THAT MUST BE SUBMITTED AT THE FORECLOSURE SALE**
   (a) Acknowledgment - Immediately after the foreclosure sale has been completed, the high Bidder must submit **ONE** signed copy of the Terms and Requirements of Foreclosure Sale - Acknowledgment by Bidder to the person that conducts the foreclosure sale.
   (b) Earnest Money Deposit
   - (i) The earnest money deposit, for not less than the amount specified in the Property at a Glance, must be submitted prior to presenting an oral or written bid.
   - (ii) The deposit must be in the form of a money order, certified, cashier's or other banker's check payable to: **THE SECRETARY, U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
   - (iii) No other method of payment for the earnest money deposit is acceptable
   - (iv) A financial organization submitting a bid on its own behalf must have the earnest money deposit drawn on a separate financial organization.
   - (v) Lack of proper deposit will be cause for rejection of the bid by HUD.
   - (vi) Immediately following the sale, earnest money will be returned to those whose bids have been rejected.

4. **CORRECTIONS** - Any changes or erasures made to a written bid may be made by the Bidder only and must be initialed.

5. **TELEGRAPHIC OR FACSIMILE BIDS** - Telegraphic or facsimile bids and/or bid modifications will not be considered for award.

6. **VERBAL NOTIFICATION TO THE HIGH AND SECOND HIGH BIDDER** - The high and second high Bidder will be notified verbally of their bidding positions by the person that conducts the foreclosure sale immediately after the foreclosure sale is completed.

7. **REJECTION OF LOWER BIDS** - All bids other than the high bid will be rejected verbally at the foreclosure sale by the person that conducts the foreclosure sale.

### SECTION 3 - POST FORECLOSURE SALE PROCEDURES

1. **CONTINUATION OF OFFERS** - The high bid shall be deemed to be a continuing offer from the time of the foreclosure sale until closing or bid rejection by HUD. The second high bid shall be deemed to be a continuing offer until execution of the Foreclosure Sale Use Agreement or until thirty (30) days after the foreclosure sale, whichever occurs first, unless HUD and the second high Bidder mutually agree to extend the offer. After the above activities have occurred, or the extension agreement has ended, the bid will be deemed to have expired.

2. **SUBMISSION OF POST-BID DOCUMENTS TWO (2) DAYS AFTER FORECLOSURE SALE** - Not later than two (2) Federal Government working days after being verbally notified at the foreclosure sale of being the high Bidder, the Bidder **must** submit the Previous Participation Certificate (Form HUD-2530) - for the proposed owner to the contact person identified in the Property at a Glance. **Failure to submit the required documents within the indicated time frame may be grounds for rejection of the bid.**

3. **QUALIFICATION, ACCEPTANCE, REJECTION OF BID**
   (a) HUD will review the high Bidder to determine if qualified to purchase the project.
   - (i) If HUD approves the high Bidder as being qualified, the high Bidder will be confirmed as and identified as the Purchaser.

2

(ii) If the high bid is rejected due to HUD's determination that the high Bidder is not qualified to purchase the project, HUD will notify the high Bidder in writing.

(b) If HUD rejects the high Bidder, and the second high Bidder will be given twenty-four (24) hours to submit the earnest money deposit and will be reviewed to determine if qualified to purchase the project.

  (i) If HUD approves the second high Bidder as being qualified, second high Bidder will be confirmed as and identified as the Purchaser.

  (ii) If the second high bid is rejected due to HUD's determination that the second high Bidder is not    qualified to purchase the project, HUD will notify the second high Bidder in writing.

(c) HUD's notification of rejection due to lack of qualifications, if applicable, shall be deemed to be given when mailed to the individual indicated in the Terms and Requirements of Foreclosure Sale - Acknowledgment by Bidder.

(d) The written rejection of the bid will be made as promptly as possible and generally within thirty (30) days after the date of the foreclosure sale.

## 4. HANDLING OF THE EARNEST MONEY DEPOSIT

(a) The earnest money deposit of the high Bidder will be held until HUD determines the high bid/Bidder to be acceptable.  If HUD does not accept the high bid, the high Bidder's earnest money will be refunded.

(b) Interest will not be paid on earnest money deposits.

## 5. SUBMISSION OF POST-BID DOCUMENTS TEN (10) DAYS AFTER FORECLOSURE SALE - Not later than ten (10) Federal Government working days after being verbally notified at the foreclosure sale of being the high Bidder, the Bidder must, if checked below, submit additional information to the contact person listed in the Property at a Glance.

☒ Affirmative Fair Housing Marketing Plan (HUD Form 935.2)

☒ Form HUD- 2530 for Purchasing Entity, if different from bidding entity

☒ Form HUD- 2530 for the Managing Agent, if Applicable

☒ Personal Financial and Credit Statement (HUD Form 92417) - For each proposed and/or  principal general partner

☒ Management Entity Profile (Form HUD- 9832)

☒ Management Certification (Form HUD- 9839 A & B)

☐ Project Owner's/Borrower's Certification (HUD Form 9839 C) - For elderly housing projects managed by Administrators only

☒ Bidders Property Management Statement The Bidder must complete and submit written statements of how the purchaser will:

  (i)  Satisfy the condition of the disposition;

  (ii) Implement a sound financial and physical management program;

  (iii) Respond to the needs of the tenants and work cooperatively with resident

  (iv) Provide adequate organizational staff and resources to the project.

☒ Statement of the services, maintenance  and utilities that the bidder proposed to provide.

### *FAILURE TO SUBMIT THE REQUIRED DOCUMENTS WITHIN THE INDICATED TIME FRAME MAY BE GROUNDS FOR REJECTION OF THE BID.*

## 6. REVIEW OF PROJECT MANAGEMENT - HUD may elect to discuss project management plans after submission of the post-bid documents by the high Bidder.

## 7. CLOSING DATE REQUIREMENT - The closing date will take place within the time period specified, in accordance with the Acknowledgment, Attachment B.

## 8. EXTENSION OF CLOSING    - The right to extend the sales closing is expressly reserved by HUD as set forth in the Acknowledgment, Attachment B.

## SECTION 4 - CLOSING

## 1. EXECUTION OF USE AGREEMENT - The Bidder must execute Attachment C, "Foreclosure Sale Use Agreement," at closing.  HUD will then execute the Agreement.

## 2. CLOSING DATE AND PLACE - The closing date and place shall be as determined by the person that conducts   the foreclosure sale and/or HUD.  The Bidder will be notified of said date and place by the person conducting the foreclosure sale.

3. **CASH DUE AT CLOSING** -     sh due at closing is the remainder of  e purchase price less the earnest money deposit received, plus or minus any prorations.  Cash due at closing includes all initial deposits to reserve accounts, if applicable.

4. **PRORATIONS** – There will be no prorations except for the proration of property taxes prepaid by HUD, if any.

5. **CLOSING EXPENSES** - Irrespective of local custom, the Bidder shall pay all closing expenses, including, but not limited to, all documentary stamp taxes, all recording fees, and any costs in connection with a review of title or title insurance as may be requested by the Bidder.

6. **METHOD OF PAYMENT** - Cash due at closing shall be paid in the form of a money order, certified, cashier's or other bank check made payable to:  **THE SECRETARY, U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**, in accordance with the Acknowledgment, Attachment B.

7.  **LETTER OF CREDIT** - If Post-Closing Repair Requirements described in Attachment E are included in this sale, the Bidder, at closing,  shall  provide HUD with an unconditional, irrevocable, and nondocumentary Letter of Credit (LoC), or a group of no more than five (5) LoCs, in the amount stated in the Property at a Glance.  Such LoCs shall expire no earlier than six (6) months after completion of the stated required repairs.  HUD will release the undrawn balance in the LoCs  six (6) months after completion of repairs.  Such undrawn balance shall be of an amount equal to ten percent (10%) of the original total amount of the LoCs.

8. **CONVEYANCE** - Conveyance of the project shall be by Special Warranty Deed from the person that conducts the foreclosure sale.  The deed will not contain any warranty of title.

9.  **RECORDATION OF DEED** - Either HUD or the Bidder (Purchaser) may record the Deed, at the discretion of the HUD Counsel.  HUD shall record all other recordable documents.  All recordation costs shall be at the expense of the Bidder (Purchaser).

10. **DOCUMENTS TO BE FURNISHED OR EXECUTED AT CLOSING**
   ☒ **Foreclosure Sale Use Agreement**      ☒  **Letter(s) of Credit**      ☒   **Closing Statement**
   ☐ **Other:**

<div align="center"><strong>SECTION 5 - DISCLAIMERS</strong></div>

1. **DISCLAIMER**
   (a) Bidders interested in purchasing this project are expected to acquaint themselves with the property, and to arrive at their own conclusions as to; physical condition, number and occupancy of revenue producing units, estimates of operating costs, repair costs (where applicable), and any other factors bearing upon valuation of the property.  Any bid submitted shall be deemed to have been made with full knowledge of all the terms, conditions and requirements contained in this Invitation for Bid and in any Addendum hereof.
   (b) While care has been exercised to assure accuracy, all information provided is solely for the purpose of permitting parties to determine whether or not the property is of such type and general character as might interest them in its purchase, and HUD makes no warranty as to the accuracy of such information.  The failure of any Bidder to inspect, or be fully informed as to the condition of all or any portion of the property being offered, or condition of sale, will not constitute ground for any claim or demand or adjustment or withdrawal of a bid.

2. **UNAUTHORIZED ORAL STATEMENT OR MODIFICATIONS** - Any oral statement or representation by any representative of HUD changing or supplementing this Invitation for Bid or Addendum hereof, or any condition hereof, is unauthorized and shall confer no right upon the Bidder (Purchaser).

3. **HUD LIABILITY** - In any case, with respect to any claim against HUD, the extreme measure of HUD's liability shall not, in any event, exceed refund of the purchase price, or such portion thereof as HUD may have received.





## *Property at a Glance*

# LASBY PARK TERRACE APTS. - 115-35205

| | | |
|---|---|---|
| ADDRESS: **120 Terrace Drive** | EARNEST MONEY: **$50,000** | SALES PRICE: **UNSTATED** |
| **San Benito, TX 78586** | | TERMS: **ALL CASH** |
| COUNTY: **Cameron** | LETTER Of CREDIT: **$225,000** | SALE TYPE: **Foreclosure** |

## PROPERTY INFORMATION

| | | |
|---|---|---|
| Foundation: | **Concrete slab** |
| Roof: | **Pitched - asphalt shingle** |
| Exterior: | **Brick** |
| Floors/Finish: | **Vinyl tile** |

| Total Units | Residential | Commercial |
|---|---|---|
| **65** | Revenue **65** | |
| | Non-Revenue | |

| Elevator | Garden | Walk-up | Townhouse | Scattered Sites | Service Center | Mobile Home Park | Nursing Home | Vacant Land | Other: |
|---|---|---|---|---|---|---|---|---|---|
| | X | | | | | | | | |

| Number of Buildings | Stories | Year Built | Rehab Year | Site Acreage | Approximate Net Rentable Area |
|---|---|---|---|---|---|
| 32 | 1 | 1980 | | | +/-23,295 |

### Mechanical Systems

| Heating: | | Air Conditioning | **NONE** |
|---|---|---|---|
| Fuel | **Gas** | Windows | |
| System | **Individual** | | |
| Hot Water: | | | |
| Fuel | **Gas** | | |
| System | **Individual** | | |

### Utilities

| | |
|---|---|
| Public Water | X |
| Gas Main | X |
| Electric | X |
| Sanitary Sewer | X |
| Storm Sewer | |
| Septic Tank | |

### Parking

| | |
|---|---|
| Street | **Asphalt** |
| Curb | **Concrete** |
| Sidewalk | **Concrete** |
| Parking Lot | |
| Parking Spaces | **145** |

### Apartment Features

| | |
|---|---|
| | Air Conditioning |
| | Dishwasher |
| | Microwave |
| | Garbage Disposal |
| X | Refrigerator |
| Gas | Range/Oven |
| X | Drapes/Blinds |

### Community Features

| | |
|---|---|
| | Garage |
| | Covered Parking |
| X | Laundry Facility |
| | Cable/Sat Hookup |
| | Playground |
| | Pool |
| X | Community Space |

### Owner Expense

| |
|---|
| **Water** |
| **Parking** |
| **Refuse Removal** |
| |
| |

### Tenant Expense

| |
|---|
| **Electric** |
| **Gas** |
| |
| |

## OCCUPANCY

| Year | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2002 | 94% | 97% | 94% | 94% | 97% | 98% | 95% | 94% | 94% | 91% | 95% | 94% |
| 2003 | 91% | 88% | 94% | 94% | | | | | | | | |

## ESTIMATED ANNUAL RENTAL INCOME:

| Number of Units | Type | Approx Square Feet | Current Rent | Estimated /Possible After Sale Rent | Estimated /Possible Total After Sale Rent |
|---|---|---|---|---|---|
| 8 | 1 BD | 712 | $398 | $343 | $2,744 |
| 28 | 2 BD | 866 | 469 | 436 | 12,208 |
| 21 | 3 BD | 1166 | 527 | 500 | 10,500 |
| 8 | 4 BD | 1258 | 540 | 540 | 4,320 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | TOTAL MONTHLY | | | $29,772 |

| Total Estimated/ Possible Annual Income | |
|---|---|
| Rent | $357,264 |
| Commercial | 5,000 |
| Parking | |
| **TOTAL** | **$362,264** |

| Estimated Annual Expenses | |
|---|---|
| Administrative | $70,000 |
| Utilities | 57,500 |
| Operating | 32,000 |
| Taxes/Insurance | 45,000 |
| Reserve/Replace | 19,800 |
| **TOTAL** | **$224,300** |

### COMMENTS CONCERNING PROPERTY INFORMATION:

Laundry & coke machines are the source of the estimated commercial income. The laundry facility is under a lease. Tenants furnish their own window air conditioning units.
The property has one handicap accessible unit. The range for that unit is electric. The rest of the ranges are gas.

Due diligence should be performed in advance of submitting a bid. While care has been exercised to ensure accuracy, all information provided is solely for the purpose of permitting parties to determine whether or not the property is of such type and general character as to interest them in its purchase. HUD makes no warranty as to the accuracy of such information.

# USE RESTRICTIONS

**20** Years affordable housing.    _____ Years rent cap protection for _____ residents.

### TENANT BASED SECTION 8

Housing choice vouchers will be issued to eligible residents of the complex by the public housing agency (PHA), <u>San Benito Housing Authority</u>, selected to administer the voucher assistance by HUD. Housing choice vouchers are tenant-based assistance. Tenant-based assistance means that the subsidy follows the program participant and is not attached or connected to a specific project or unit. Therefore, the voucher assistance should never be considered a form of guaranteed rental subsidy for the property. The families are not obligated to use the housing choice vouchers at the property. <u>Therefore, there will be no project-based subsidy at this property.</u>

In addition, the processing of the voucher funding and the determination of family eligibility by the PHA may take several months following the closing of the sale. The PHA must also determine the owner's rent is reasonable and the unit meets the housing quality standards of the housing choice voucher program. If the rent is determined not to be reasonable in comparison to similar unassisted units in the market area, the family will have to move to receive voucher assistance. Voucher housing assistance payments for a unit may not under any circumstances cover any period before the date the PHA determines the unit meets the housing quality standards. Since the owner will not receive voucher housing assistance payments or increase the tenant's share of the rent during this period, bidders should take into consideration the time that may be necessary for voucher funding to become available, the PHA to determine family and unit eligibility, and the owner to complete any needed repairs when making an offer.

## TERMS OF SALE

The purchaser must complete the repairs to HUD's satisfaction within <u>12</u> months after closing. The repairs are estimated to cost <u>$1,097,187.</u>
The purchaser must complete demolition to HUD's satisfaction within <u>N/A</u> months after closing. The demolition is estimated to cost <u>$0.</u>
*Closing is to be held <u>30</u> days after HUD accepts the bid. If HUD authorizes an extension of the closing, the purchaser must pay a fee which is the greater of 1.5% of the purchase price or HUD's holding costs of <u>$41.00</u> per unit per day for each 30 day period.*

Property must be maintained as Affordable Housing for a period of 20 years.

Purchaser must complete the required repairs within 12 monts. A Letter of Credit in the amount of $225,000 will be required at closing to assure the completion of repairs. Units must be maintained in a manner that complies with the physical inspection requirements of local housing authorities for the use of vouchers at the property.
Investors must present an earnest money deposit of $50,000 before bidding  Lack of proper deposit will be cause for rejection of the bid. Please check the Bid Kit for complete details.

**PROSPECTIVE BIDDERS  SHOULD READ AND THOROUGHLY UNDERSTAND ALL INFORMATION PROVIDED HEREIN AND IN THE BID KIT <u>PRIOR</u> TO SUBMITTING A BID.**
**This is an "All Cash – As Is" sale.** HUD is providing no financing for this sale. The purchaser must provide for payment of the full purchase price in cash at closing.
**Submission of Bids:** Bids for this property can only be considered for acceptance if submitted on the specific forms listed in the Bid Kit for this property, along with required earnest money. A Bid Kit may be obtained as indicated below.
**Suspended or Debarred Parties:** No consideration will be given to a bid submitted by any party currently suspended or debarred from participating in HUD programs. AS PROVIDED FOR IN 24 CFR, SEC. 27, THE DEFAULTING MORTGAGOR, OR ANY PRINCIPAL, SUCCESSOR, AFFILIATE, OR ASSIGNEE ON THE MORTGAGE AT THE TIME OF DEFAULT SHALL NOT BE ELIGIBLE TO BID ON OR OTHERWISE PURCHASE THIS PROPERTY. (Principal and Affiliate are defined at 24 CFR 24.105.)

### INSPECTION OF PROPERTY AND BIDDING INSTRUCTIONS

Prospective bidders are urged and invited to inspect the property prior to submitting a bid. Note:  If this is a foreclosure sale, HUD may not have access to the property. Bids for this property can only be considered if properly submitted by following the bidding instructions provided in the FREE INFORMATION and BID KIT.

The FREE INFORMATION and BID KIT may be viewed or printed at www.hud.gov/offices/hsg/mfh/pd/multifam.cfm. You may also sign up for our electronic mailing list at this web address. If you do not have access to the internet or can not download a PDF file, you may obtain a bid kit by calling (715) 273-2130, or faxing (715) 273-4769, or by email to bkit@helmerprinting.com.

| **BIDS for LASBY PARK TERRACE APTS.** **MUST BE PRESENTED ON:** | **HUD OFFICE:** | **REALTY SPECIALIST:** |
|---|---|---|
| June 25, 2003 | HUD/Texas State Office | Margaret Laakso |
| at:  3 PM  local time at: | Ft. Worth MF PD Center | Phone : (817) 978-5821 |
| Cameron County Courthouse | 801 Cherry Street | margaret_laakso@hud.gov |
| 974 E. Harrison Street | Ft. Worth, TX  76102 | |
| Brownsville, TX  78520 | | |
| (Sale on the front door steps) | | |

**ATTACHMENT B**
TERMS AND REQUIREMENTS OF FORECLOSURE SALE - ACKNOWLEDGMENT BY BIDDER

PART I
BID PRICE - The Undersigned, _____,(the "Bidder")
submits   a bid of _____dollars ($          ) at the
foreclosure sale of **LASBY PARK TERRACE APARTMENTS** (the "Project", the legal description of which
is included as Exhibit A, to be paid as follows:

1. **$ 50,000** in the form of a money order, cashier's or other bank check, as earnest  money, which  has
   been    paid at the foreclosure sale to the person that conducts the foreclosure sale, and which shall
   not earn    interest (the "Deposit"), **and**

2. $_____the balance, to be paid by the Bidder at Closing, in
   the form of a cashier's or other bank check in accordance with this Acknowledgment.  The Closing will
   be held    at a place, date and time established in accordance with Section 4 below (the "Closing").

3. In addition to the above, the Bidder will be required to pay at Closing all closing costs, regardless of
   local custom, and, where applicable, other deposits to reserve and/or letters of credit as described in
   Riders incorporated herein, the Invitation for Bid (Invitation), and the Foreclosure Sale Use Agreement
   (Use Agreement).

PART II
If selected as the high Bidder at or after the foreclosure sale, the Bidder, by executing this document (the
"Acknowledgment"), acknowledges that the Bidder must comply with the following requirements as a
condition to purchasing the Project:

1. ACKNOWLEDGMENT OF TERMS - Bidder affirms to have full knowledge of the all terms, conditions and
   requirements contained in this Acknowledgment and documents referred to herein, the invitation and
   Attachments, and the Notice of Default and Foreclosure Sale.  Bidder must execute this document.

2. EXECUTION OF USE AGREEMENT  - At Closing, Bidder will, in addition to any other documents,
   execute the Foreclosure Sale Use Agreement and all of the Exhibits to the Use Agreement as contained
   in the Invitation to Bid.  Such documents will control the use of the Project for a specified period and
   will be recorded with the Deed and run with the land.

3. PREVIOUS PARTICIPATION CERTIFICATION - The high Bidder **must** submit within two (2) business
   days of  the foreclosure sale, a completed and executed Previous Participation Certification (Form
   HUD-2530)for the proposed owner to the HUD Field Office contact stated in the Property at a
   Glance, Attachment A to the Invitation to Bid.

4. ESTABLISHMENT OF CLOSING DATE, TIME AND PLACE
   (a) Time is of the essence.
   (b) HUD will notify the Bidder and the person conducting the foreclosure sale (the "Foreclosure
       Official") after HUD determines that the Bidder has been approved to purchase this project under
       the Previous Participation Certification procedure.  The Foreclosure Official will establish a time and
       date for the Closing.  The Closing shall **be within thirty (30) days of such notification**, unless
       extended pursuant to Section 8.
   (c) The Closing will take place at the HUD office stated in the Invitation or at such other place as may
       be agreed upon between HUD and the Foreclosure Official.

5. CLOSING, CLOSING EXPENSES AND TRANSFER OF POSSESSION
   (a) The sale shall be effective upon Closing.
   (b) Bidder (Purchaser) shall pay all closing costs and expenses irrespective of local custom.
   (c) Transfer of title to and possession of the Property shall become effective as of the Closing.

6. PAYMENT OF PURCHASE PRICE AT CLOSING - The Bidder (Purchaser) shall pay the balance at Closing
   in the form of a cashier's or other bank check made out to:
   **THE SECRETARY, U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
   The Closing will be held at a place, date and time established in accordance with Section 4 above.

7. LIQUIDATED DAMAGES - *Should Bidder fail or refuse to perform all obligations under this Acknowledgement* for any reason including, but not limited to, failure to establish the legal entity that is to take title in a timely manner that permits Closing within the deadline set forth in Section 4, the earnest money deposit and any extension fees, paid under Section 8, shall be remitted to and retained by HUD as liquidated damages.

8. EXTENSION FEES – Extensions of time to close the sale are within HUD's sole and absolute discretion. Any extensions, if granted, will be on the following conditions:
   (a) A written request for an extension must be received at the HUD office located at: Department of Housing and Urban Development, 801 Cherry Street, Ft. Worth, TX  76102 within **five (5)** days prior to the prescribed closing date, or within any extension period and **must be accompanied by the payment** of the required extension fee.  The request must state the reason for Bidder's inability to close the sale within the initial period or any extended period.
   (b) Extensions shall be for thirty (30) days.
   (c) For each thirty (30) day period requested by Bidder and approved by HUD, extension fees shall be equal to **$ 41.00**, per unit, per day, which is **$2,665.00** daily (the holding cost for such period) or one   and one- half percent (1.5%) of the purchase price, whichever is greater.
   (d) These fees shall be retained by HUD and shall not be credited to the amount due from Bidder at Closing.  However, if Bidder closes prior to the expiration of an extension period, the prorated amount of the extension fee, for the unused portion of the extension period, shall be credited toward the amount due from Bidder at Closing.
   (e) The granting of one or more extensions shall not obligate HUD to grant additional extensions.
   (f) If any form or instrument required by HUD is not submitted within sufficient and reasonable time for HUD's review or processing and such delay necessitates an extension of the Closing deadline, an extension fee must be paid for this period.
   (g) Extension Fees must be submitted by money order, certified, cashier's or other bank check acceptable to HUD.

9. BIDDER RESTRICTIONS
   (a) No Member of/or Delegate to Congress, resident commissioner, or local elected official, shall be admitted to any share or part of this sale, or to any benefit arising from it.  However, this provision does not apply to this sale to the extent that this sale is made with a corporation for the corporation's general benefit.
   (b) If Bidder is, or becomes suspended, debarred, or temporarily denied from participating in HUD programs prior to closing, this sale shall be terminated.  In addition, if such suspension, debarment or temporary denial of participation occurs either before or after Bidder's execution of this Acknowledgment, any extension fees paid under Section 8 shall be retained by HUD as liquidated damages.
   (c) Pursuant to 24 CFR Part 27 Section 20(f), the defaulting mortgagor, or any principal, successor, affiliate, or assignee thereof, on the multifamily mortgage being foreclosed, shall not be eligible to bid on, or otherwise acquire, the property being foreclosed by the Department under this subpart or any other provision of law.  A "principal" and an "affiliate" are defined as provided at 24 CFR 24.105.

10. AS-IS SALE; NO REPRESENTATIONS
   (a) Bidder shall accept the Property "as is."  HUD makes no representations or warranties concerning the physical condition of the Property.  In addition, HUD does not represent or warrant the number and occupancy of revenue producing units, or any factor bearing upon the value of the Property.
   (b) Bidder acknowledges that the purchase price set forth in this Acknowledgment is based on Bidder's evaluation of the project and not upon any representations by HUD. Bidder's failure to inspect, or to be fully informed as to any factor bearing upon the valuation of the Property, shall not affect the liabilities, obligations or duties of HUD, nor be a basis for termination of this sale or for the return of any extension fees paid pursuant to Section 8.

11. RISK OF LOSS AND RIGHTS OF RESCISSION - *In the event of any substantial damage to the Project prior to closing by any cause including, but not limited to, fire, flood, earthquake, tornado and significant vandalism other than willful acts or neglect, HUD, in its sole discretion, may negotiate with the Bidder for a reduction in*

the sales price corresponding to the estimated amount of damages. Such damages shall be added to the Post-Closing repair requirements, HUD Form - 9552 included in the Invitation. If HUD and the Bidder are unable to agree on the amount by which the purchase price should be reduced or on the amendment to the repair requirements, Bidder may withdraw the bid, in which case HUD will direct the return of the earnest money deposit and any extension fee(s) will be returned.

12. PRORATIONS
    (a) Except as set forth in paragraph (b) below, there will be no prorations at Closing. The Bidder will be responsible only for those expenses incurred at the Project after Closing.
    (b) At Closing, the Bidder will pay the Foreclosure Official a prorata share of any property taxes on the Project which have been paid for a period of time ending after the date of Closing. The Bidder will be responsible for paying in full, all taxes, that come due after Closing. Taxes paid by the Bidder after Closing will not be prorated, even if those taxes are for a period which began prior to Closing.
    (c) No later than fifteen (15) days before Closing, HUD will notify the Bidder of the amount the Bidder is to pay the Foreclosure Official as the prorata share of taxes.

13. SECURITY DEPOSITS - APPLICATION AS CHECKED:
    ☒  Notwithstanding State or local law, the Bidder will receive only those security deposits which are on hand at the Project on the date of Closing. The Bidder will assume all liability under State and local law with respect to security deposits.
    ☐  Any security deposits collected from tenants and paid over to HUD prior to the Closing shall transferred and assigned to Bidder within fifteen (15) days after the closing, with the of security deposits which have been forfeited by the tenant in accordance with the terms of tenant's lease. Notwithstanding State and local law, no other security deposits collected from will be transferred by HUD to Bidder and HUD has no other liability under State and local law respect to security deposits. Bidder agrees to assume all responsibility and liability under local law with respect to the collection, application and return of security deposits.

14. LIMITATION OF LIABILITY - Notwithstanding any other provisions of this sale, HUD's liability shall not exceed the amount of funds paid by Bidder to HUD and/or the Foreclosure Official hereunder.

15. ANTI-COLLUSION CERTIFICATION
    (a) The Bidder certifies:
        (i) The bid price in this offer has been arrived at independently, without (for the purposes of restricting competition) any consultation, communication, or agreement with any other Bidder relating to:
            a. the bid price;
            b. the intention to submit a bid price; **or**
            c. the methods or factors used in calculating the bid price offered;
        (ii) The bid price in this offer has not been and will not be knowingly disclosed by the Bidder, directly or indirectly, to any other Bidder or competitor before or during the actual time of the bid event, unless otherwise required by law; **and**
        (iii) No attempt has been made or will be made by the Bidder to induce any other Bidder to submit or not to submit a bid price for the purpose of restricting competition.
    (b) If the bid procedure requires or permits written bids, each signature on the offer is considered to be certification by the signatory that the signatory:
        (i) Is the person in the Bidder's organization responsible for determining the bid price being offered in this bid and that the signatory has not participated and will not participate in any action contrary to paragraph (a) above; **or**
        (ii) Has been authorized, in writing, to act as agent for the following principals in certifying that those principals have not participated, and will not participate in any action contrary to paragraph (a), above;

Name_____

Title_____
Organization responsible for
determining bid price_____

a. As an authorized agent, does certify that the principals named in the above have not participated, and will not participate, in any action contrary to paragraph (a) above; **and**

b. As agent, has not personally participated, and will not participate, in any action contrary to paragraph (a) above.

16. FAILURE TO COMPLY - Upon the failure or refusal of the Bidder to comply with any of the requirements listed above, HUD may declare the Bidder ineligible to purchase the Project, in which case Bidder shall forfeit the earnest money deposit and any extension fees paid.

17. SEVERABILITY - If for any reason one or more of the provisions contained in the Invitation, including this Acknowledgment, the Use Agreement, or any other attachments or exhibits thereto, shall be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision(s) of the Invitation, but the Invitation shall be construed as if such invalid, illegal or unenforceable provision(s) had never been included therein.

18. FORMS - All forms and instruments referred to in this Acknowledgment are the standard Form HUD and instruments prepared by HUD and used by HUD in the jurisdiction in which the Property is located and shall contain such additional covenants and conditions required by the Invitation for Bid or Request for Proposals.

19. EXECUTION
    (a) By signature below, Bidder indicates acknowledgment of and agreement to the terms and requirements of this foreclosure sale.
    (b) In the case of a bid submitted by an agent or representative of the Bidder, the signatory attests to be duly authorized to submit the bid on behalf of the Bidder and to execute this Acknowledgment.

WARNING: It is a crime to knowingly make false statements to the United States in this document or any other document related to this sale. Penalties upon conviction can include a fine or imprisonment. For details see: Title 18 U.S. Code, Section 1001 and Section 1010.

Executed by the Bidder on the _____ day of _____, 20____.

Witness:_____          By:_____

Typed Name:_____          Typed Name:_____


_____

Address:

_____

City, State, Zip

_____

Phone No. with Area Code

RIDER 1 OF 2
**SUBMISSION OF DOCUMENTS PRIOR TO CLOSING**

1. Not later than two (2) Federal Government working days after being verbally notified at the foreclosure sale of being the high Bidder, the Bidder must submit the documents checked below to the contact person identified in the Property at a Glance, Attachment A.

☒    Previous Participation Certificate (Form HUD-2530) - For the Proposed Owner

2. To demonstrate ability to meet these requirements, the Bidder must submit to the HUD Office contact identified in the Property at a Glance, Attachment A to the Invitation, the executed documents and information checked below no later than ten (10) days after the Bidder has been verbally notified, with follow-up written confirmation, of the selection as high-Bidder and may be selected to purchase the Project:

☒    Affirmative Fair Housing Marketing Plan (HUD-935.2)
☒    New Previous Participation Certification (HUD-2530) for purchasing entity if different from bidding entity/individual (i.e., partnership, corporation, etc.).
☒    Form HUD-2530 for the Managing Agent, if applicable
☒    Personal Financial and Credit Statement (HUD-92417) for each principal and general partner.
☒    Management Entity Profile (HUD-9832)
☒    Management Certification (HUD-9839 a and b)
☐    Project Owner's/Borrower's Certification (HUD-9839 c) - For elderly housing projects managed by Administrator only
☒    Bidder's Property Management Statement
  - ➢ The Bidder must complete and submit written statements of how the Bidder will:
  - ➢ Satisfy the conditions of the disposition;
  - ➢ Implement a sound financial and physical management program;
  - ➢ Respond to the needs of the tenants and work cooperatively with resident organizations; and
  - ➢ Provide adequate organizational staff and resources to the project.

☒    Statement of the services, maintenance and utilities that the Bidder proposes to provide.

3. If applicable, within a reasonable time prior to closing, the Bidder must also meet at the HUD office listed in the Invitation with officials designated by HUD to discuss the Bidder's plans for managing the project. If HUD determines that the Bidder is unqualified to self-manage the Project, HUD may require the Bidder to obtain the services of a qualified property management firm. The Bidder must then provide HUD with evidence that it has retained a qualified property management firm prior to Closing. If the Bidder does not meet this obligation, HUD may reject the bid and retain the Bidder's earnest money deposit.

RIDER 2 OF 2
**POST-CLOSING REPAIR REQUIREMENTS**

REPAIR ESCROW

At Closing, Bidder shall provide to HUD an unconditional, irrevocable and non-documentary Letter of Credit (LoC), satisfactory to HUD, in the amount of **$225,000**, with an expiration date at least six (6) months beyond HUD's estimated date for completion of repairs, to assure completion of the repairs required by the Invitation for Bid. In the event an extension for completion of repairs is granted, the LoC will be extended accordingly.

Significant repair/rehabilitation programs may be staged upon HUD approval. If repair/rehabilitation is staged, as agreed upon between the Bidder and HUD prior to Closing, up to five (5) LoCs, which represent the full LoC requirement, may be permitted. The LoCs must have an expiration date that extends beyond HUD's repair completion date by at least six (6) months. LoCs may be returned as the Bidder completes repairs and HUD has inspected and accepted the repairs. The final LoC must represent at least ten percent (10%) of HUD's total estimated repair costs and must have an expiration date that extends six (6) months beyond the completion of repair date. HUD may cash this LoC and apply the funds to correct latent defects in the completed repairs.

**ATTACHMENT C**
FORECLOSURE SALE USE AGREEMENT

This Agreement is entered into by _____ ("Purchaser") and the Secretary of Housing and Urban Development ("Secretary" or "HUD").

WHEREAS, pursuant to the provisions of the Multifamily Mortgage Foreclosure Act, 12 U.S.C. Sections 3701 et seq. (the "Act"), and the Department of Housing and Urban Development's regulations thereunder at   24 C.F.R. Part 27, the Secretary has elected to exercise the nonjudicial power of sale provided under the Act, or pursuant to a judicial foreclosure the Secretary has elected to apply Section 367(b) of the Act, with respect to **LASBY PARK TERRACE APARTMENTS**, HUD Project No. **115-35205**, (the "Project" or the "Property") a legal description of which is attached as   Exhibit "A"; **and**

WHEREAS, pursuant to the Act and to provisions of 12 U.S.C.  Section 1701z-11 et seq, Management   and Preservation of HUD-Owned Multifamily Housing Projects, and the Department of Housing and Urban Development regulations thereunder at 24 CFR Part 290, the Secretary has authority to impose certain use restrictions, as set forth in this Agreement, on the property subject to a mortgage held by the Secretary that is sold at foreclosure to a purchaser other than HUD; **and**

WHEREAS, by Deed executed this _____ day of _____, 20____, by _____, the Project has been conveyed to the Purchaser; **and**

NOW THEREFORE, in consideration of the mutual promises set forth herein and in further consideration   of the sale of the Project to the Purchaser, the parties agree as follows:

1. **TERM OF AGREEMENT -** This Agreement shall be in effect,
   ☒ twenty years from the date of this           ☐ until
   Agreement **or**

2. **CONVEYANCE OF PROJECT**
   This paragraph   ☒ **is** ☐ **is not** applicable for this property
   During the term of this Agreement, any conveyance of the project must have prior written approval of HUD.  HUD's approval of conveyance and/or the proposed purchaser's management of the property will be based on information provided in written statements of how the purchaser, or any subsequent purchaser, in consideration of any and all existing use restrictions, will:
   (a) implement sound financial and physical management program;
   (b) respond to the needs of the tenants and work cooperatively with resident organizations;
   (c) provide adequate organizational staff and resources to manage the project.

3. **SUBJECT TO EXAMINATION -** The Project shall at all times,
   (a) be maintained in decent, safe and sanitary condition to the greatest extent possible,
   (b) maintain full occupancy to the greatest extent possible,
   (c) be maintained as rental housing for the term of this Agreement.

   At the request of the Secretary, Purchaser must supply evidence by means of occupancy reports, physical condition reports, reports on operations, or any evidence as requested to ensure that the above requirements are being met.

4. **UNIT NUMBER OR USE CHANGE -** Changes to the use, number, size, or configuration of residential units in the Project; e.g., apartment units, beds in a care facility, from the use as of the date of this Agreement, must receive the written prior approval of HUD.

5. **NON-DISCRIMINATION REQUIREMENTS -** The Purchaser will comply with the provisions of all Federal, State, or local laws prohibiting discrimination in housing.

6. **HAZARD INSURANCE -** Hazard insurance shall be maintained in an amount to ensure that the Purchaser is able to meet the rental housing requirements described in this Agreement.

7. **DESTRUCTION OF PROJECT** - In the event that any or all of the ˌ ᴜject is destroyed or damaged by fire or other casualty, the money derived from any insurance on the Project shall be applied to rebuild or replace the property destroyed or damaged, unless the Secretary gives written approval to use insurance proceeds for other purposes.

8. **DEMOLITION OF PROJECT PROPERTY** - The Purchaser will not demolish any part of the Project or withdraw any part of the Project from use (except as temporarily necessary for routine repairs), without the prior written approval of HUD.

9. **REMEDIES FOR NONCOMPLIANCE** - Upon any violation of any provision of this Agreement by the Purchaser, HUD may give written notice thereof to the Purchaser by registered or certified mail, addressed to the address stated in this Agreement, or such other address as subsequently, upon appropriate written notice thereof to the Secretary, may be designated by the Purchaser as its legal business address. If such violation is not corrected to the satisfaction of the Secretary within thirty (30) days after the date such notice is mailed or within such further time as HUD reasonably determines is necessary to correct the violation, without further notice, HUD may declare a default under this Agreement and may apply to any court, State or Federal, for specific performance of this Agreement, for an injunction against any violation of this agreement, for the appointment of a receiver to take over and operate the Project in accordance with the terms of this Agreement, and/or such other relief as may be appropriate, since the injury to the Secretary arising from a default of the terms of the Agreement would be irreparable and the amount of damage would be difficult to ascertain.

The availability of any remedy under the Agreement shall not preclude the exercise of any other remedy under any provision of the law, nor shall any action taken in the exercise of any remedy be considered a waiver of any other rights or remedies. Failure to exercise any right or remedy shall not construe a waiver of the right to exercise that or any other right or remedy at any time.

10. **SUCCESSORS AND ASSIGNS** - This Agreement is binding upon the Purchaser's heirs, successors and assigns. The Purchaser agrees that if title to the Project is conveyed during the term of this Agreement, the Purchaser will require its purchaser to assume in writing its obligations under this Agreement.

11. **RESTRICTIONS** - No Member of Congress or Delegate to Congress or Resident Commissioner shall be admitted to any share or part of the benefits of the Use Agreement, but this provision shall not be construed to extend to this Use Agreement if the Use Agreement is made with a corporation for its general benefit.

12. **CONTRADICTORY AGREEMENTS** - The Purchaser certifies that it has not, and agrees that it will not, execute any other agreement with provisions contradictory of, or in opposition to, the provisions of this agreement, and that, in any event, the requirements of this Agreement are paramount and controlling as to the rights and obligations set forth herein and supersede any other requirements in conflict with this Agreement.

13. **SEPARABILITY** - The invalidity of any provision of this Agreement shall not affect the validity of the remaining provisions hereof.

14. **AMENDMENT** - This Agreement may be amended by the mutual written consent of the parties, except those provisions required by statute.

15. **RIDERS TO THE USE AGREEMENT** - The Riders checked and initialed by the parties are attached to and incorporated into this Use Agreement and will be placed in the Deed to run with the land.

| | | |
|---|---|---|
| ☒ Affordability of Units | ☐ | Two Year Rent Protection for Pre-Existing |
| ☒ Rehabilitation and Relocation | | Very-Low Income Tenants |
| ☒ Lead-Based Paint Hazards | ☐ | Historic Preservation |
| ☒ Asbestos Hazards | ☐ | Mobile Home Park |
| ☒ Nondiscrimination Against Multifamily | ☐ | Retirement Service Center |
| Section 8 Certificate and Voucher | ☐ | Other: |
| Holders | ☐ | Other: |

IN WITNESS WHEREOF:

The Purchaser has executed this Use Agreement in triplicate this _____ day of
_____, 20_____.

WITNESS:                                   PURCHASER:

_____              _____
                                           By:  Signature

_____              _____
                                           Typed Name of Purchaser

                                           _____
                                           Street Address

                                           _____
                                           City, State, Zip Code


The U.S. Department of Housing and Urban Development (HUD) has executed this Use Agreement in
triplicate this _____ day of _____, 20_____.

WITNESS:                                   FOR:   THE SECRETARY OF HOUSING
                                                  AND URBAN DEVELOPMENT

_____              BY: _____

_____              _____
                                           Official's Typed Name

                                           _____
                                           Title

**ATTACHMENT D**
LETTER OF CREDIT (LoC) SAMPLE

(ISSUING BANK'S LETTERHEAD)


IRREVOCABLE UNCONDITIONAL LETTER OF CREDIT NO._____

_____, 20_____


U.S. Department of Housing and Urban Development
801 Cherry Street
Ft. Worth, TX  76102

Attention:  Mr. Jack Stark
6AC – 28th Floor

Dear Sir:

For the account of _____
(name of account party/customer)
we hereby authorize you to draw on us at sight up to an aggregate amount of U.S.
$_____, effective immediately and expiring on _____,
20_____.

This Letter of Credit is irrevocable and unconditional.

Funds under this Credit are available to you against your sight draft(s) on us, substantially in the form attached as Exhibit A, for all or any part of this Credit.

This Letter of Credit sets forth in full the terms of our obligations to you, and such undertaking shall not   in any way be modified or amplified by any agreement in which this letter is referred to or to which this letter of credit relates, and any such reference shall not be deemed to incorporate herein by reference any agreement.

We will promptly honor all drafts in compliance with the terms of this credit if received on or before the expiration date at

_____
(bank's address)

This Credit is governed by the laws of _____.

Sincerely,




(Issuing Bank)

By:_____

**SAMPLE SIGHT DRAFT**


(HUD LETTERHEAD)

(Name and address of bank)    _____
                                              (City, State)

                              _____, 20_____

Pay to the order of the U.S. Department of Housing and Urban Development the sum of
$_____. This draft is drawn under your Irrevocable Letter of
Credit

NO._____.

          U.S. Department of Housing and Urban Development

          By:_____

**Post Closing Repair Requirements**

Department of Housing and Urban Development
Office of Housing, Multifamily Sales Program

| Project Name | Project Number | Location |
|---|---|---|
| Casby Park Terrace Apartments | FHA # 115-36205 | San Benito, Texas |

The purchaser must repair the property to meet the following requirements within the time frame noted in the Contract of Sale or Terms and Requirements of Foreclosure Sale - Acknowledgement by Bidder.

[X] Applicable State and Local Codes     [X] Housing Quality Standards (HQS) as set forth in

[X] Additional Repairs required by HUD         24 CFR 886, Subpart G

HUD will monitor repairs to assure compliance. Repairs shall be considered completed only after (1) Purchaser provides written certification that repairs are completed; (2) Purchaser requests final inspection by HUD; and (3) HUD verifies in writing completion and compliance with the requirements stated herein.

Trade Item Cost Breakdown: HUD's estimate of repairs is broken out by trade item. Detailed descriptions of repairs are stated in this form's exhibit. Unchecked as MANDATORY on this form, repairs may begin upon conveyance. For repair items listed on this form as MANDATORY, the purchaser, prior to beginning work, must submit specifications for approval to HUD office with jurisdiction over this project.

The repairs listed herein represent HUD's estimate of the property's repair needs. These repairs may not represent all repairs needed to satisfy HUD's requirements and/or requirements other than HUD's. HUD does NOT warrant that the list is either comprehensive or sufficient. The purchaser accepts responsibility for: (1) developing independent repair cost estimate, (2) determining what, if any, repairs are needed in excess of those listed herein, and (3) providing funding for such repairs.

| Repairs to Residential Structures (including commercial areas) | | | | | |
|---|---|---|---|---|---|
| Item | Mandatory | Est. Cost | Item | Mandatory | Est. Cost |
| 1.  Concrete | | | 17.  Wood Flooring | | |
| 2.  Masonry | | | 18.  Resilient Flooring | | 73,421 |
| 3.  Metals | | | 19.  Painting and Decorating | | 117,815 |
| 4.  Rough Carpentry | | 20,800 | 20.  Specialties | | 19,935 |
| 5.  Finish Carpentry | | 5,840 | 21.  Special Equipment | | 105 |
| 6.  Waterproofing | | | 22.  Cabinets | | 146,613 |
| 7.  Insulation | | | 23.  Appliances | | |
| 8.  Roofing | | 7,960 | 24.  Blinds and Shades | | 23,430 |
| 9.  Sheet Metal | | 2,560 | 25.  Carpets | | |
| 10.  Doors | | 30,495 | 26.  Special Construction | | |
| 11.  Windows | | 13,380 | 27.  Elevator | | |
| 12.  Glass | | | 28.  Plumbing and Hot Water | | 60,055 |
| 13.  Lath & Plaster | | | 29.  Heat and Ventilation | | 59,519 |
| 14.  Drywall | | 3,062 | 30.  Air Conditioning | | 4,750 |
| 15.  Tile Work | | 8,925 | 31.  Electrical | | 48,715 |
| 16.  Acoustical | | | Residential Structures Subtotal | | $688,314 |

| Repairs to Accessory Structures (community, maintenance, mechanical, garages, carports, etc....) | | | | | |
|---|---|---|---|---|---|
| 32.  Accessory Structures | | | Accessory Structures Subtotal | | 0 |

| Site Work | | | | | |
|---|---|---|---|---|---|
| 33.  Earth Work | | 8,000 | 36.  Site Improvements | | 1,570 |
| 34.  Site Utilities | | 600 | 37.  Lawns and Planting | | 19,200 |
| 35.  Roads and Walks | | 144,557 | 38.  Unusual Site Conditions | | |
| | | | Site Work Subtotal | | 173,927 |

| Environmental Mitigation | | | Totals | |
|---|---|---|---|---|
| 39.  Lead-based Paint | | | Estimated Total Hard Cost | 877,750 |
| 40.  Asbestos | | 15,509 | Inflation - enter amount | |
| 41 | | | Contingency = Hard Cost + 10% | 87,775 |
| Environmental Mitigation Subtotal | | 15,509 | Ovhd/Gen Req = Hard Cost +15% or 18% | 131,662 |

| | | |
|---|---|---|
| | Estimated Total Repair Cost | 1,097,187 |
| Previous edition is obsolete | Computerized form HUD-9552  Web-based | |

# WORK WRITE–UP

## *General Requirements Exterior*

1. Exterior
   a) Remove and replace all damaged and deteriorated concrete sidewalks.
   b) Paint and caulk all previously painted exterior surfaces of all buildings.
   c) Replace all window screens in all apartments.
   d) Replace asphalt surface in parking lot.
   e) Repair all sunken and broken sidewalks.
   f) Replace all broke porches.
   g) Re-stripe all parking lots.
   h) Replace all missing/broken entry lights.
   i) Replace and irrigate all flowerbeds.
   j) Correct drainage problems between all buildings.
   k) Repair wall penetrations on all buildings.
   l) Replace all locks with a functional master key system.
   m) Replace all damaged fascia.
   n) Repair damaged eaves.
   o) Replace and paint all attic vents in all buildings.
   p) Replace and paint all front/rear door screens of all apartments.
   q) Rebuild all exterior storage areas.
   r) Replace all missing eave vents.
   s) Add and paint downspouts to all gutters.
   t) Replace all missing exterior door hardware (storage areas).
   u) Replace all missing sewer clean out lids.
   v) Remove all abandoned sewer clean outs.
   w) Remove all abandoned concrete trash pads.
   x) Repair all loose exterior electric plugs on all buildings.
   y) Replace all damaged exterior doorframes and thresholds of all buildings.
   z) Repair all damaged shingle roofing on all buildings.
   aa) Replace all shingle porch roofs with asphalt built up roofs on all buildings.

## *Specific Requirements Exterior*

2. Exterior
   a) Replace improper sewer clean out cover next to building five.
   b) Add dryer exhaust cover for dryer vents on office buildings.
   c) Repair swing set in playground area.
   d) Repair/replace handrails in playground area.
   e) Add cushion gravel material to play ground area.
   f) Comb office AC condenser grill.
   g) Replace missing mailbox door on office buildings.
   h) Repair damaged fire-plug protector on far west side of property.

## General Requirements ..nterior

3.Interior
   a)  Repair all damaged drywall; tape, bed and texture in all apartments and buildings.
   b)  Paint all walls, ceilings, base, doors and trim in all apartments/office/laundry room.
   c)  Remove all VAT flooring in all apartments and all buildings.
   d)  Replace vent-a-hoods in kitchens of all apartments/office in all buildings.
   e)  Replace cooking stoves in all apartments/office and all buildings.
   f)  Replace all medicine cabinets in all apartments.
   g)  Replace all aged refrigerators in all apartments/office in all buildings.
   h)  Replace all lavatory sinks, bases and linen closets in all apartments.
   i)  Replace kitchen cabinets, counter tops and sinks in all apartments.
   j)  Replace all heaters in all apartments.
   k)  Replace all thermostats in all apartments.
   l)  Replace all bathroom heaters/exhaust fans in all apartments.
   m)  Replace all stove splashguards in all apartments/office in all building.
   n)  Install new VCT in all rooms of all buildings.
   o)  Replace missing toilet accessories in all bathrooms of all apartments.
   p)  Install ground fault interrupt breakers for kitchen and bathrooms in all buildings.
   q)  Repair all leaking faucets in bathrooms and kitchens of all apartments and buildings.
   r)  Replace broken lights in all apartments.
   s)  Replace all wood and vinyl base in all buildings.
   t)  Replace all aged hot water heaters in all apartments and office buildings.
   u)  Replace all window blinds in all apartments and buildings.
   v)  Repair all in-correctly repaired bathroom tile in all apartments.
   w)  Replace all missing closet doorknobs in all apartments.

## Specific Requirements Interior

4.Interior Apartments
   a)  Repair loose rear exit exterior walls in all three-bedroom apartments.

**Lasby Park Terrace I, San Benito, Texas**

**Overall Siteworks**

| Item | Category No. | Deficiencies Description | Recommendation | Work Write Up Ref. #'s | Qty | Unit | Unit Cost | Cost |
|---|---|---|---|---|---|---|---|---|
| Rear Door Conc.Stoop | 35 | Damaged Stoop | R & R Conc.Stoop | 1f | 1,040 | sf | 5.00 | $5,200.00 |
| Asphalt Pavement | 35 | Damaged Pavement | R & R Asphalt Pavement | 1d | 8,115 | sy | 13.45 | $109,146.75 |
| Sidewalks | 35 | Damaged Sidewalks | R & R Sidewalks | 1a | 100 | sf | 5.00 | $500.00 |
| Sidewalks Along Roads | 35 | Sunken or Broken Sidewalks | R & R Sidewalks | 1e | 6,728 | sf | 4.25 | $28,594.00 |
| Parking Stalls | 35 | Needs Re-striping | Re-stripe Pavement | 1g | 1,970 | lf | 0.10 | $197.00 |
| Fire Lane | 35 | Needs Re-striping | Re-stripe Pavement | 1g | 3,590 | lf | 0.10 | $359.00 |
| Landscaping | 37 | Needs Landscaping & Irrigation | New Landscape & Irrigate | 1i | 32 | bldgs | 600.00 | $19,200.00 |
| Surface Drainage | 33 | Improper Drainage | Correct Drainage | 1j | 1 | ls | 8,000.00 | $8,000.00 |
| Sewer Cleanouts | 34 | Missing Caps | Install New Caps | 1u | 32 | ea | 10.00 | $320.00 |
| Sewer Cleanouts | 34 | Abandon Sewer Cleanouts | Remove Cleanouts | 1v | 4 | ea | 30.00 | $120.00 |
| Concrete Trash Pads | 35 | Abandon Trash Pads | Remove Trash Pads | 1w | 800 | sf | 0.70 | $560.00 |
| Sewer Cleanouts | 34 | Damaged Cleanout Near Bldg 5 | Replace Cleanout | 2a | 1 | ea | 60.00 | $60.00 |
| Swing Set | 36 | Dampaged Swing Set | Install New Swing Sets | 2c | 4 | ea | 100.00 | $400.00 |
| Playground Handrail | 36 | Damaged Handrails | Replace Handrail | 2d | 2 | ea | 85.00 | $170.00 |
| Playground Gravel | 36 | Lack of Sufficient Gravel | Add Gravel | 2e | 100 | cy | 10.00 | $1,000.00 |
| Fire Hydrant | 34 | Damaged Protection Pipe | Repair Pipe | 2h | 1 | ea | 100.00 | $100.00 |
| | | | | | | Total Overall Siteworks | | $173,926.75 |

**Building No.1 Thru 32 Exterior Repairs**

| Item | Category No. | Deficiencies Description | Recommendation Ref. #'s | Work Write Up | Qty | Unit | Unit Cost | Cost |
|---|---|---|---|---|---|---|---|---|
| Exterior Surfaces | 19 | Needs Caulking & Painting | Caulk & Paint Siding | 1b | 8,600 | sf | 0.45 | $3,870.00 |
| Exterior Surfaces | 19 | Needs Caulking & Painting | Pa. New & ExstgFascia | 1b | 7,444 | lf | 0.50 | $3,722.00 |
| Exterior Surfaces | 19 | Needs Caulking & Painting | Pa.New & Exstg Eaves | 1b | 15,250 | sf | 0.48 | $7,320.00 |
| Window Screens | 11 | Damaged & Missing Screens | Replace All Screens | 1c | 446 | ea | 30.00 | $13,380.00 |
| Entry Lights - 1ea/bldg | 31 | Damaged or Missing Lights | Relace Light Fixtures | 1h | 32 | ea | 70.00 | $2,240.00 |
| Wall Penetrations | 19 | Needs Caulking | Fill & Seal Holes | 1k | 32 | Bldgs | 65.00 | $2,080.00 |
| Exterior Doors | 10 | Damaged or Missing Hardware | Install Master Keyed Sys | 1l | 126 | ea | 65.00 | $8,190.00 |
| Fascia Board | 5 | Damaged Fascia Board | R & R Fascia | 1m | 1,000 | lf | 2.00 | $2,000.00 |
| Eaves | 5 | Damaged Eaves | R & R Eaves | 1n | 3,200 | sf | 1.20 | $3,840.00 |
| Attic Vents | 29 | Damaged or Missing Vents | Replace Attic Vents | 1o | 64 | ea | 70.00 | $4,480.00 |
| Attic Vents | 19 | Damaged or Missing Vents | Paint New Attic Vents | 1o | 64 | ea | 10.00 | $640.00 |
| Door Screens | 10 | Damaged Front & Rear Screens | R & R Door Screens | 1p | 122 | ea | 75.00 | $9,150.00 |
| Door Screens | 19 | Damaged Front & Rear Screens | Paint New Door Screens | 1p | 122 | ea | 20.00 | $2,440.00 |
| Storage Areas 1ea/bldg | 4 | Damaged Storage Areas | Rebuild Storage Areas | 1q | 32 | ea | 400.00 | $12,800.00 |
| Eave Vents 1ea/bldg | 29 | Missing Eave Vents | Install New Eave Vents | 1r | 32 | ea | 12.00 | $384.00 |
| Downspouts 1ea/bldg | 9 | Missing Downspouts | Install New Downspouts | 1s | 32 | ea | 80.00 | $2,560.00 |
| Downspouts 1ea/bldg | 19 | Missing Downspouts | Paint New Downspouts | 1s | 32 | ea | 10.00 | $320.00 |
| Storage Doors | 10 | Missing Storage Hardware | Install New Hardware | 1t | 61 | ea | 65.00 | $3,965.00 |
| Electrical Outlets 1ea/bldg | 31 | Loose Outlets | Repair Outlets | 1x | 32 | ea | 30.00 | $960.00 |
| Dr Frames & Threshold | 10 | Damaged Dr Frms/Threshold | Replace Frms /Thresholds | 1y | 61 | ea | 130.00 | $7,930.00 |
| Dr Frames & Threshold | 19 | Damaged Dr Frms/Threshold | Paint New Dr Frames | 1y | 61 | ea | 20.00 | $1,220.00 |
| Roof Shingles | 8 | Minor Damaged Rf Shingles | Repair Roof Shingles | 1z | 320 | sf | 2.00 | $640.00 |
| Porch Roof | 8 | Low Pitch on Shingle Roof | R & R Built-up Roof | 1aa | 1,525 | sf | 4.80 | $7,320.00 |
| Dryer Vent | 29 | Missing Covers | Add Dryer Vent Covers | 2b | 8 | ea | 30.00 | $240.00 |
| Office AC Compressor | 30 | Damage Condenser Grill | Comb Condenser Grill | 2f | 1 | ea | 100.00 | $100.00 |
| Mailbox Door | 21 | Missing Mailbox Door | Install New Doors | 2g | 1 | ea | 85.00 | $85.00 |
| | | | | | Total Building No.1 Thru 32 Exterior Repairs | | | | $101,876.00 |

**4ea - One Bedroom One Bath Standard Apartments**

| Item | Category | Deficiencies | Recommendation | Work Write Up | Qty | Unit | Unit Cost | Cost |
|------|----------|--------------|----------------|---------------|-----|------|-----------|------|
| | No. | Description | | Ref. #'s | | | | |
| Drywall | 14 | Damaged Drywall | Patch Drywall | 3a | 16 | sf | 2.00 | $32.00 |
| Walls | 19 | Walls Need Painting | Re-paint Walls | 3b | 8,448 | sf | 0.30 | $2,534.40 |
| Ceilings | 19 | Ceilings Need Painting | Re-paint Ceilings | 3b | 2,464 | sf | 0.32 | $788.48 |
| Doors | 19 | Drs & Frms Need Painting | Pa.Single Int.Drs & Frms | 3b | 28 | ea | 40.00 | $1,120.00 |
| Doors | 19 | Drs & Frms Need Painting | Pa.Dbl Int.Drs & Frms | 3b | 4 | ea | 60.00 | $240.00 |
| VAT Flooring | 40 | VAT Flooring | Remove VAT Flrg | 3c | 2,464 | sf | 0.30 | $739.20 |
| Vent-a Hoods | 23 | Damaged Vent-a-hoods | R & R Vent-a Hoods | 3d | 1 | ea | 115.00 | $115.00 |
| Cook Stove | 23 | Damaged or Missing Stoves | R & R Stoves | 3e | 2 | ea | 600.00 | $1,200.00 |
| Medicine Cabinets | 20 | Damaged Medicine Cabinets | R & R Med.Cabinets | 3f | 4 | ea | 85.00 | $340.00 |
| Refrigerators | 23 | Old Refrigerators | R & R Refrigerators | 3g | 3 | ea | 700.00 | $2,100.00 |
| Lavatory Sinks | 28 | Damaged Sinks | R & R Sinks | 3h | 4 | ea | 150.00 | $600.00 |
| Lavatory Sink Bases | 22 | Damaged Cabinets | R & R Cabinets | 3h | 4 | ea | 110.00 | $440.00 |
| Linen Closets | 22 | Damaged Linen Closets | R & R Linen Closets | 3h | 4 | ea | 165.00 | $660.00 |
| Kitchen Sink | 28 | Damaged Sinks | R & R Sinks | 3i | 4 | ea | 185.00 | $740.00 |
| Kitchen Cabinets & Tops | 22 | Damaged Cabinets & Tops | R & R Cabinets & Tops | 3i | 28 | lf | 165.00 | $4,620.00 |
| Heaters | 29 | Damaged Heaters | R & R Heaters | 3j | 4 | ea | 385.00 | $1,540.00 |
| Thermostats | 30 | Damaged Thermostats | R & R Thermostats | 3k | 4 | ea | 75.00 | $300.00 |
| Bathroom Heaters | 29 | Damaged Heaters | R & R Heaters | 3l | 4 | ea | 385.00 | $1,540.00 |
| Bathroom Exhaust Fans | 29 | Damaged Exhaust Fans | R & R Exhuast Fans | 3l | 4 | ea | 65.00 | $260.00 |
| Stove Splashguards | 22 | Damaged Splashguards | R & R Splashguards | 3m | 4 | ea | 80.00 | $320.00 |
| VCT Flooring | 18 | VAT Flooring | Install New VCT Flrg | 3n | 2,464 | sf | 1.00 | $2,464.00 |
| Toilet Accessories | 20 | Missing or Damaged Access | Install New Accessories | 3o | 4 | Bathrooms | 150.00 | $600.00 |
| Kitchen GFI Outlets | 31 | Code Violation | Install GFI Outlets | 3p | 4 | ea | 75.00 | $300.00 |
| Bathroom GFI Outlets | 31 | Code Violation | Install GFI Outlets | 3p | 4 | ea | 75.00 | $300.00 |
| Kitchen Faucets | 28 | Leaky Faucets | Repair Faucets | 3q | 4 | ea | 65.00 | $260.00 |
| Bathroom Faucets | 28 | Leaky Faucets | Repair Faucets | 3q | 4 | ea | 65.00 | $260.00 |
| Lights | 31 | Damaged or Missing Fixtures | Replace Light Fixtures | 3r | 4 | ea | 70.00 | $280.00 |
| Base | 18 | Damaged Base | R & R Base | 3s | 1,056 | lf | 1.00 | $1,056.00 |
| Water Heaters | 28 | Old Water Heaters | R & R Water Heaters | 3t | 2 | ea | 550.00 | $1,100.00 |
| Window Blinds | 24 | Damaged or Missing Blinds | R & R Blinds | 3u | 16 | ea | 55.00 | $880.00 |
| Ceramic Tile | 15 | Poor Tile Repair Work | R & R Ceramic Tile | 3v | 60 | sf | 7.00 | $420.00 |
| Drywall | 14 | Removing Tile | Install New Green Bd | 3v | 60 | sf | 2.00 | $120.00 |
| Closet Door Knob | 10 | Missing Door Knob | Install New Dr Knob | 3w | 4 | ea | 20.00 | $80.00 |

4ea - One Bedroom One Bath Standard Apartments          $28,349.08

**4ea - One Bedroom One Bath Handicap Apartments**

| Item | Category No. | Deficiencies Description | Recommendation | Work Write Up Ref. #'s | Qty | Unit | Unit Cost | Cost |
|---|---|---|---|---|---|---|---|---|
| Drywall | 14 | Damaged Drywall | Patch Drywall | 3a | 16 | sf | 2.00 | $32.00 |
| Walls | 19 | Walls Need Painting | Re-paint Walls | 3b | 8,448 | sf | 0.30 | $2,534.40 |
| Ceilings | 19 | Ceilings Need Painting | Re-paint Ceilings | 3b | 2,464 | sf | 0.32 | $788.48 |
| Doors | 19 | Drs & Frms Need Painting | Pa.Single Int.Drs & Frms | 3b | 28 | ea | 40.00 | $1,120.00 |
| Doors | 19 | Drs & Frms Need Painting | Pa.Dbl Int.Drs & Frms | 3b | 4 | ea | 60.00 | $240.00 |
| VAT Flooring | 40 | VAT Flooring | Remove VAT Flrg | 3c | 2,464 | sf | 0.30 | $739.20 |
| Vent-a Hoods | 23 | Damaged Vent-a-hoods | R & R Vent-a Hoods | 3d | 4 | ea | 115.00 | $460.00 |
| Cook Stove | 23 | Damaged or Missing Stoves | R & R Stoves | 3e | 4 | ea | 600.00 | $2,400.00 |
| Medicine Cabinets | 20 | Damaged Medicine Cabinets | R & R Med.Cabinets | 3f | 4 | ea | 85.00 | $340.00 |
| Refrigerators | 23 | Old Refrigerators | R & R Refrigerators | 3g | 4 | ea | 700.00 | $2,800.00 |
| Lavatory Sinks | 28 | Damaged Sinks | R & R Sinks | 3h | 4 | ea | 150.00 | $600.00 |
| Lavatory Sink Bases | 22 | Damaged Cabinets | R & R Cabinets | 3h | 4 | ea | 110.00 | $440.00 |
| Linen Closets | 22 | Damaged Linen Closets | R & R Linen Closets | 3h | 4 | ea | 165.00 | $660.00 |
| Kitchen Sink | 28 | Damaged Sinks | R & R Sinks | 3i | 4 | ea | 185.00 | $740.00 |
| Kitchen Cabinets & Tops | 22 | Damaged Cabinets & Tops | R & R Cabinets & Tops | 3i | 28 | lf | 165.00 | $4,620.00 |
| Heaters | 29 | Damaged Heaters | R & R Heaters | 3j | 4 | ea | 385.00 | $1,540.00 |
| Thermostats | 30 | Damaged Thermostats | R & R Thermostats | 3k | 4 | ea | 75.00 | $300.00 |
| Bathroom Heaters | 29 | Damaged Heaters | R & R Heaters | 3l | 4 | ea | 385.00 | $1,540.00 |
| Bathroom Exhaust Fans | 29 | Damaged Exhaust Fans | R & R Exhuast Fans | 3l | 4 | ea | 65.00 | $260.00 |
| Stove Splashguards | 22 | Damaged Splashguards | R & R Splashguards | 3m | 4 | ea | 80.00 | $320.00 |
| VCT Flooring | 18 | VAT Flooring | Install New VCT Flrg | 3n | 2,464 | sf | 1.00 | $2,464.00 |
| Toilet Accessories | 20 | Missing or Damaged Access | Install New Accessories | 3o | 4 | Bathrooms | 150.00 | $600.00 |
| Kitchen GFI Outlets | 31 | Code Violation | Install GFI Outlets | 3p | 4 | ea | 75.00 | $300.00 |
| Bathroom GFI Outlets | 31 | Code Violation | Install GFI Outlets | 3p | 4 | ea | 75.00 | $300.00 |
| Kitchen Faucets | 28 | Leaky Faucets | Repair Faucets | 3q | 4 | ea | 65.00 | $260.00 |
| Bathroom Faucets | 28 | Leaky Faucets | Repair Faucets | 3q | 4 | ea | 65.00 | $260.00 |
| Lights | 31 | Damaged or Missing Fixtures | Replace Light Fixtures | 3r | 4 | ea | 70.00 | $280.00 |
| Base | 18 | Damaged Base | R & R Base | 3s | 1,056 | lf | 1.00 | $1,056.00 |
| Water Heaters | 28 | Old Water Heaters | R & R Water Heaters | 3t | 4 | ea | 550.00 | $2,200.00 |
| Window Blinds | 24 | Damaged or Missing Blinds | R & R Blinds | 3u | 16 | ea | 55.00 | $880.00 |
| Ceramic Tile | 15 | Poor Tile Repair Work | R & R Ceramic Tile | 3v | 60 | sf | 7.00 | $420.00 |
| Drywall | 14 | Removing Tile | Install New Green Bd | 3v | 60 | sf | 2.00 | $120.00 |
| Closet Door Knob | 10 | Missing Door Knob | Install New Dr Knob | 3w | 4 | ea | 20.00 | $80.00 |

4ea - One Bedroom One Bath Handicap Apartments    $31,694.08

**29ea - Two Bedroom One Bathroom Apartment**

| Item | Category No. | Deficiencies Description | Recommendation | Work Write Up Ref. #'s | Qty | Unit | Unit Cost | Cost |
|------|------|------|------|------|------|------|------|------|
| Drywall | 14 | Damaged Drywall | Patch Drywall | 3a | 116 | sf | 2.00 | $232.00 |
| Walls | 19 | Walls Need Painting | Re-paint Walls | 3b | 74,936 | sf | 0.30 | $22,480.80 |
| Ceilings | 19 | Ceilings Need Painting | Re-paint Ceilings | 3b | 22,272 | sf | 0.32 | $7,127.04 |
| Doors | 19 | Drs & Frms Need Painting | Pa.Single Int.Drs & Frms | 3b | 232 | ea | 40.00 | $9,280.00 |
| Doors | 19 | Drs & Frms Need Painting | Pa.Dbl Int.Drs & Frms | 3b | 29 | ea | 60.00 | $1,740.00 |
| VAT Flooring | 40 | VAT Flooring | Remove VAT Flrg | 3c | 22,272 | sf | 0.30 | $6,681.60 |
| Vent-a Hoods | 23 | Damaged Vent-a-hoods | R & R Vent-a Hoods | 3d | 18 | ea | 115.00 | $2,070.00 |
| Cook Stove | 23 | Damaged or Missing Stoves | R & R Stoves | 3e | 22 | ea | 600.00 | $13,200.00 |
| Medicine Cabinets | 20 | Damaged Medicine Cabinets | R & R Med.Cabinets | 3f | 29 | ea | 85.00 | $2,465.00 |
| Refrigerators | 23 | Old Refrigerators | R & R Refrigerators | 3g | 26 | ea | 700.00 | $18,200.00 |
| Lavatory Sinks | 28 | Damaged Sinks | R & R Sinks | 3h | 29 | ea | 150.00 | $4,350.00 |
| Lavatory Sink Bases | 22 | Damaged Cabinets | R & R Cabinets | 3h | 29 | ea | 110.00 | $3,190.00 |
| Linen Closets | 22 | Damaged Linen Closets | R & R Linen Closets | 3h | 29 | ea | 165.00 | $4,785.00 |
| Kitchen Sink | 28 | Damaged Sinks | R & R Sinks | 3i | 29 | ea | 185.00 | $5,365.00 |
| Kitchen Cabinets & Tops | 22 | Damaged Cabinets & Tops | R & R Cabinets & Tops | 3i | 363 | lf | 165.00 | $59,812.50 |
| Heaters | 29 | Damaged Heaters | R & R Heaters | 3j | 29 | ea | 385.00 | $11,165.00 |
| Thermostats | 30 | Damaged Thermostats | R & R Thermostats | 3k | 29 | ea | 75.00 | $2,175.00 |
| Bathroom Heaters | 29 | Damaged Heaters | R & R Heaters | 3l | 29 | ea | 385.00 | $11,165.00 |
| Bathroom Exhaust Fans | 29 | Damaged Exhaust Fans | R & R Exhuast Fans | 3l | 29 | ea | 65.00 | $1,885.00 |
| Stove Splashguards | 22 | Damaged Splashguards | R & R Splashguards | 3m | 29 | ea | 80.00 | $2,320.00 |
| VCT Flooring | 18 | VAT Flooring | Install New VCT Flrg | 3n | 22,272 | sf | 1.00 | $22,272.00 |
| Toilet Accessories | 20 | Missing or Damaged Access | Install New Accessories | 3o | 29 | Bathrooms | 150.00 | $4,350.00 |
| Kitchen GFI Outlets | 31 | Code Violation | Install GFI Outlets | 3p | 29 | ea | 75.00 | $2,175.00 |
| Bathroom GFI Outlets | 31 | Code Violation | Install GFI Outlets | 3p | 29 | ea | 75.00 | $2,175.00 |
| Kitchen Faucets | 28 | Leaky Faucets | Repair Faucets | 3q | 29 | ea | 65.00 | $1,885.00 |
| Bathroom Faucets | 28 | Leaky Faucets | Repair Faucets | 3q | 29 | ea | 65.00 | $1,885.00 |
| Lights | 31 | Damaged or Missing Fixtures | Replace Light Fixtures | 3r | 29 | ea | 70.00 | $2,030.00 |
| Base | 18 | Damaged Base | R & R Base | 3s | 9,367 | lf | 1.00 | $9,367.00 |
| Water Heaters | 28 | Old Water Heaters | R & R Water Heaters | 3t | 22 | ea | 550.00 | $12,100.00 |
| Window Blinds | 24 | Damaged or Missing Blinds | R & R Blinds | 3u | 174 | ea | 55.00 | $9,570.00 |
| Ceramic Tile | 15 | Poor Tile Repair Work | R & R Ceramic Tile | 3v | 435 | sf | 7.00 | $3,045.00 |
| Drywall | 14 | Removing Tile | Install New Green Bd | 3v | 435 | sf | 2.00 | $870.00 |
| Closet Door Knob | 10 | Missing Door Knob | Install New Dr Knob | 3w | 29 | ea | 20.00 | $580.00 |

29ea - Two Bedroom One Bathroom Apartment $261,992.94

**20ea - Three Bedrooms Two Baths**

| Item | Category | Deficiencies | Recommendation | Work Write Up | Qty | Unit | Unit Cost | Cost |
|---|---|---|---|---|---|---|---|---|
| | No. | Description | | Ref. #'s | | | | |
| Drywall | 14 | Damaged Drywall | Patch Drywall | 3a | 80 | sf | 2.00 | $160.00 |
| Walls | 19 | Walls Need Painting | Re-paint Walls | 3b | 64,480 | sf | 0.30 | $19,344.00 |
| Walls | 4 | Exterior Wall Moves | Fasten to Foudation | 4a | 20 | ea | 400.00 | $8,000.00 |
| Ceilings | 19 | Ceilings Need Painting | Re-paint Ceilings | 3b | 18,300 | sf | 0.32 | $5,856.00 |
| Doors | 19 | Drs & Frms Need Painting | Pa.Single Int.Drs & Frms | 3b | 319 | ea | 40.00 | $12,760.00 |
| VAT Flooring | 40 | VAT Flooring | Remove VAT Flrg | 3c | 18,300 | sf | 0.30 | $5,490.00 |
| Vent-a Hoods | 23 | Damaged Vent-a-hoods | R & R Vent-a Hoods | 3d | 12 | ea | 115.00 | $1,380.00 |
| Cook Stove | 23 | Damaged or Missing Stoves | R & R Stoves | 3e | 16 | ea | 600.00 | $9,600.00 |
| Medicine Cabinets | 20 | Damaged Medicine Cabinets | R & R Med.Cabinets | 3f | 40 | ea | 85.00 | $3,400.00 |
| Refrigerators | 23 | Old Refrigerators | R & R Refrigerators | 3g | 19 | ea | 700.00 | $13,300.00 |
| Lavatory Sinks | 28 | Damaged Sinks | R & R Sinks | 3h | 40 | ea | 150.00 | $6,000.00 |
| Lavatory Sink Bases | 22 | Damaged Cabinets | R & R Cabinets | 3h | 40 | ea | 110.00 | $4,400.00 |
| Linen Closets | 22 | Damaged Linen Closets | R & R Linen Closets | 3h | 40 | ea | 165.00 | $6,600.00 |
| Kitchen Sink | 28 | Damaged Sinks | R & R Sinks | 3i | 20 | ea | 185.00 | $3,700.00 |
| Kitchen Cabinets & Tops | 22 | Damaged Cabinets & Tops | R & R Cabinets & Tops | 3i | 270 | lf | 165.00 | $44,550.00 |
| Heaters | 29 | Damaged Heaters | R & R Heaters | 3j | 20 | ea | 385.00 | $7,700.00 |
| Thermostats | 30 | Damaged Thermostats | R & R Thermostats | 3k | 20 | ea | 75.00 | $1,500.00 |
| Bathroom Heaters | 29 | Damaged Heaters | R & R Heaters | 3l | 20 | ea | 385.00 | $7,700.00 |
| Bathroom Exhaust Fans | 29 | Damaged Exhaust Fans | R & R Exhuast Fans | 3l | 40 | ea | 65.00 | $2,600.00 |
| Stove Splashguards | 22 | Damaged Splashguards | R & R Splashguards | 3m | 20 | ea | 80.00 | $1,600.00 |
| VCT Flooring | 18 | VAT Flooring | Install New VCT Flrg | 3n | 18,300 | sf | 1.00 | $18,300.00 |
| Toilet Accessories | 20 | Missing or Damaged Access | Install New Accessories | 3o | 40 | Bathrooms | 150.00 | $6,000.00 |
| Kitchen GFI Outlets | 31 | Code Violation | Install GFI Outlets | 3p | 20 | ea | 75.00 | $1,500.00 |
| Bathroom GFI Outlets | 31 | Code Violation | Install GFI Outlets | 3p | 40 | ea | 75.00 | $3,000.00 |
| Kitchen Faucets | 28 | Leaky Faucets | Repair Faucets | 3q | 20 | ea | 65.00 | $1,300.00 |
| Bathroom Faucets | 28 | Leaky Faucets | Repair Faucets | 3q | 40 | ea | 65.00 | $2,600.00 |
| Lights | 31 | Damaged or Missing Fixtures | Replace Light Fixtures | 3r | 20 | ea | 70.00 | $1,400.00 |
| Base | 18 | Damaged Base | R & R Base | 3s | 8,060 | lf | 1.00 | $8,060.00 |
| Water Heaters | 28 | Old Water Heaters | R & R Water Heaters | 3t | 16 | ea | 550.00 | $8,800.00 |
| Window Blinds | 24 | Damaged or Missing Blinds | R & R Blinds | 3u | 160 | ea | 55.00 | $8,800.00 |
| Ceramic Tile | 15 | Poor Tile Repair Work | R & R Ceramic Tile | 3v | 600 | sf | 7.00 | $4,200.00 |
| Drywall | 14 | Removing Tile | Install New Green Bd | 3v | 600 | sf | 2.00 | $1,200.00 |
| Closet Door Knob | 10 | Missing Door Knob | Install New Dr Knob | 3w | 20 | ea | 20.00 | $400.00 |
| | | | | | | 20ea - Three Bedrooms Two Baths | | $231,200.00 |

**4ea Four Bedrooms Two Baths**

| Item | Category | Deficiencies | Recommendation | Work Write Up | Qty | Unit | Unit Cost | Cost |
|------|----------|--------------|----------------|---------------|-----|------|-----------|------|
| | No. | Description | | Ref. #'s | | | | |
| Drywall | 14 | Damaged Drywall | Patch Drywall | 3a | 16 | sf | 2.00 | $32.00 |
| Walls | 19 | Walls Need Painting | Re-paint Walls | 3b | 12,704 | sf | 0.30 | $3,811.20 |
| Ceilings | 19 | Ceilings Need Painting | Re-paint Ceilings | 3b | 4,180 | sf | 0.32 | $1,337.60 |
| Doors | 19 | Drs & Frms Need Painting | Pa.Single Int.Drs & Frms | 3b | 14 | ea | 40.00 | $560.00 |
| VAT Flooring | 40 | VAT Flooring | Remove VAT Flrg | 3c | 4,180 | sf | 0.30 | $1,254.00 |
| Vent-a Hoods | 23 | Damaged Vent-a-hoods | R & R Vent-a Hoods | 3d | 1 | ea | 115.00 | $115.00 |
| Cook Stove | 23 | Damaged or Missing Stoves | R & R Stoves | 3e | 2 | ea | 600.00 | $1,200.00 |
| Medicine Cabinets | 20 | Damaged Medicine Cabinets | R & R Med.Cabinets | 3f | 4 | ea | 85.00 | $340.00 |
| Refrigerators | 23 | Old Refrigerators | R & R Refrigerators | 3g | 3 | ea | 700.00 | $2,100.00 |
| Lavatory Sinks | 28 | Damaged Sinks | R & R Sinks | 3h | 8 | ea | 150.00 | $1,200.00 |
| Lavatory Sink Bases | 22 | Damaged Cabinets | R & R Cabinets | 3h | 8 | ea | 110.00 | $880.00 |
| Linen Closets | 22 | Damaged Linen Closets | R & R Linen Closets | 3h | 8 | ea | 165.00 | $1,320.00 |
| Kitchen Sink | 28 | Damaged Sinks | R & R Sinks | 3i | 4 | ea | 185.00 | $740.00 |
| Kitchen Cabinets & Tops | 22 | Damaged Cabinets & Tops | R & R Cabinets & Tops | 3i | 15 | lf | 165.00 | $2,475.00 |
| Heaters | 29 | Damaged Heaters | R & R Heaters | 3j | 8 | ea | 385.00 | $3,080.00 |
| Thermostats | 30 | Damaged Thermostats | R & R Thermostats | 3k | 4 | ea | 75.00 | $300.00 |
| Bathroom Heaters | 29 | Damaged Heaters | R & R Heaters | 3l | 4 | ea | 385.00 | $1,540.00 |
| Stove Splashguards | 22 | Damaged Splashguards | R & R Splashguards | 3m | 4 | ea | 80.00 | $320.00 |
| VCT Flooring | 18 | VAT Flooring | Install New VCT Flrg | 3n | 4,180 | sf | 1.00 | $4,180.00 |
| Toilet Accessories | 20 | Missing or Damaged Access | Install New Accessories | 3o | 8 | Bathrooms | 150.00 | $1,200.00 |
| Kitchen GFI Outlets | 31 | Code Violation | Install GFI Outlets | 3p | 4 | ea | 75.00 | $300.00 |
| Bathroom GFI Outlets | 31 | Code Violation | Install GFI Outlets | 3p | 8 | ea | 75.00 | $600.00 |
| Kitchen Faucets | 28 | Leaky Faucets | Repair Faucets | 3q | 4 | ea | 65.00 | $260.00 |
| Bathroom Faucets | 28 | Leaky Faucets | Repair Faucets | 3q | 8 | ea | 65.00 | $520.00 |
| Lights | 31 | Damaged or Missing Fixtures | Replace Light Fixtures | 3r | 4 | ea | 70.00 | $280.00 |
| Base | 18 | Damaged Base | R & R Base | 3s | 1,588 | lf | 1.00 | $1,588.00 |
| Water Heaters | 28 | Old Water Heaters | R & R Water Heaters | 3t | 2 | ea | 550.00 | $1,100.00 |
| Window Blinds | 24 | Damaged or Missing Blinds | R & R Blinds | 3u | 32 | ea | 55.00 | $1,760.00 |
| Ceramic Tile | 15 | Poor Tile Repair Work | R & R Ceramic Tile | 3v | 120 | sf | 7.00 | $840.00 |
| Drywall | 14 | Removing Tile | Install New Green Bd | 3v | 120 | sf | 2.00 | $240.00 |
| Closet Door Knob | 10 | Missing Door Knob | Install New Dr Knob | 3w | 4 | ea | 20.00 | $80.00 |
| | | | | | | | 4ea Four Bedrooms Two Baths | $35,552.80 |

**1ea Community Building**

| Item | Category | Deficiencies | Recommendation | Work Write Up | Qty | Unit | Unit Cost | Cost |
|---|---|---|---|---|---|---|---|---|
| | No. | Description | | Ref. #'s | | | | |
| Drywall | 14 | Damaged Drywall | Patch Drywall | 3a | 12 | sf | 2.00 | $24.00 |
| Walls | 19 | Walls Need Painting | Re-paint Walls | 3b | 4,784 | sf | 0.30 | $1,435.20 |
| Ceilings | 19 | Ceilings Need Painting | Re-paint Ceilings | 3b | 2,016 | sf | 0.32 | $645.12 |
| Doors | 19 | Drs & Frms Need Painting | Pa.Single Int.Drs & Frms | 3b | 7 | ea | 40.00 | $280.00 |
| Doors | 19 | Drs & Frms Need Painting | Pa.Bi-folding Drs & Frms | 3b | 3 | ea | 60.00 | $180.00 |
| VAT Flooring | 40 | VAT Flooring | Remove VAT Flrg | 3c | 2,016 | sf | 0.30 | $604.80 |
| Vent-a Hoods | 23 | Damaged Vent-a-hoods | R & R Vent-a Hoods | 3d | 1 | ea | 115.00 | $115.00 |
| Cook Stove | 23 | Damaged or Missing Stoves | R & R Stoves | 3e | 1 | ea | 600.00 | $600.00 |
| Lavatory Sinks | 28 | Damaged Sinks | R & R Sinks | 3h | 2 | ea | 150.00 | $300.00 |
| Lavatory Sink Bases | 22 | Damaged Cabinets | R & R Cabinets | 3h | 2 | ea | 110.00 | $220.00 |
| Kitchen Sink | 28 | Damaged Sinks | R & R Sinks | 3i | 1 | ea | 185.00 | $185.00 |
| Kitchen Cabinets & Tops | 22 | Damaged Cabinets & Tops | R & R Cabinets & Tops | 3i | 12 | lf | 165.00 | $1,980.00 |
| Heaters | 29 | Damaged Heaters | R & R Heaters | 3j | 1 | ea | 385.00 | $385.00 |
| Thermostats | 30 | Damaged Thermostats | R & R Thermostats | 3k | 1 | ea | 75.00 | $75.00 |
| Bathroon Heaters | 29 | Damaged Heaters | R & R Heaters | 3l | 1 | ea | 385.00 | $385.00 |
| Bathroom Exhaust Fans | 29 | Damaged Exhaust Fans | R & R Exhaust Fans | 3l | 2 | ea | 65.00 | $130.00 |
| Stove Splashguards | 22 | Damaged Splashguards | R & R Splashguards | 3m | 1 | ea | 80.00 | $80.00 |
| VCT Flooring | 18 | VAT Flooring | Install New VCT Flrg | 3n | 2,016 | sf | 1.00 | $2,016.00 |
| Toilet Accessories | 20 | Missing or Damaged Access | Install New Accessories | 3o | 2 | Bathrooms | 150.00 | $300.00 |
| Kitchen GFI Outlets | 31 | Code Violation | Install GFI Outlets | 3p | 1 | ea | 75.00 | $75.00 |
| Bathroom GFI Outlets | 31 | Code Violation | Install GFI Outlets | 3p | 2 | ea | 75.00 | $150.00 |
| Kitchen Faucets | 28 | Leaky Faucets | Repair Faucets | 3q | 1 | ea | 65.00 | $65.00 |
| Bathroom Faucets | 28 | Leaky Faucets | Repair Faucets | 3q | 2 | ea | 65.00 | $130.00 |
| Lights | 31 | Damaged or Missing Fixtures | Replace Light Fixtures | 3r | 1 | ea | 70.00 | $70.00 |
| Base | 18 | Damaged Base | R & R Base | 3s | 598 | lf | 1.00 | $598.00 |
| Water Heaters | 28 | Old Water Heaters | R & R Water Heaters | 3t | 1 | ea | 550.00 | $550.00 |
| Window Blinds | 24 | Damaged or Missing Blinds | R & R Blinds | 3u | 28 | ea | 55.00 | $1,540.00 |
| Closet Door Knob | 10 | Missing Door Knob | Install New Dr Knob | 3w | 2 | ea | 20.00 | $40.00 |
| | | | | | | | 1ea Community Building | $13,158.12 |

# PHASE I
# ENVIRONMENTAL SITE ASSESSMENT
**Lasby Park Terrace Apartments**
**120 Terrace Drive**
**San Benito, Texas 78586**

## 1.0 EXECUTIVE SUMMARY

PASS Associates, Inc. performed this Phase I ESA of the above-referenced property (hereinafter, the site) to assess the environmental condition of the site in accordance with our Proposal No. 02-0211-ESA dated February 11, 2002, and in general accordance with ASTM E1527-00 Standard Practice for Phase I Environmental Site Assessments. The scope of work included review of historical use information, review of physical setting information, review of federal and state regulatory databases, review of local government records, historical and onsite interviews, and a visual reconnaissance of the site and adjoining properties. Further details regarding the scope, objectives, extent and limitations of our services are detailed in the text of this report. Please note that this Executive Summary is only a brief summary of these Phase I ESA services, and the entire report should be read for a comprehensive and accurate understanding of Findings and Recommendations.

### 1.1 Findings

#### 1.1.1 Site Description

The site is located at 120 Terrace Drive, San Benito, Texas 78586. The size of the site is approximately six acres. Adjoining streets include North Stookey Road to the north. Four streets compromise the Lasby Park Terrace Apartments. These streets are Locust Court, Terrace Drive, Cypress Loop and Terrace Court. The site is currently occupied by Lasby Park Terrace Apartments and include 33 buildings (32 residential buildings and one laundry, maintenance storage and office building). The site consists of 65 residential units; on the day of the site visit four units were vacant. Each building is a single story red/tan brick exterior that has pitch style roof with composite shingles. Two trash dumpsters were observed at the entrance of The Lasby Park Terrace Apartments. Gas meters were observed along the east, south and west boundaries of the property. Box transformers, and sewer clean out drains were observed throughout the site.

#### 1.1.2 Recognized Environmental Conditions

*No Recognized Environmental Conditions (RECs) as defined under the ASTM E1527-00 Standard Practice for Phase I Environmental Site Assessments were identified for the site as of the site reconnaissance date.*

#### 1.1.3 Other Services

**Limited Radon Screening**

At the client's request, a limited radon screening was performed at the site to check radon gas levels. A total of eight samples were collected in four unoccupied apartments. The samples were collected on activated charcoal and were submitted to Alpha Energy in Carrollton, Texas for analysis. Laboratory results are contained in Appendices of this report. Radon levels ranged from 0.3 pCi/L to 0.4 pCi/L. This range is well below the EPA action levels of 4.0 pCi/L.

**Limited Asbestos Inspection Program**

At the clients request, a limited asbestos inspection program was performed at the site to identify suspect ACM and document the general condition of suspect ACM. A total of 104 samples were taken during the limited asbestos inspection program in 28 apartment units and the office. Of the 104 samples taken, 29 tested positive for asbestos. Copies of the laboratory results and inspectors training certificates are contained in the Appendices of this report. During the limited asbestos sampling program, laboratory results indicated that the 1'x1' beige floor tile and mastic and the 1'x1' brown floor tile mastic were considered to be asbestos containing materials (ACM).

**1.2 Recommendations**

The following Recommendations apply to the Findings listed above:

*Limited Asbestos Sampling Program*

During the limited asbestos sampling program, laboratory results indicate that the 1'x1' beige floor tile and mastic and the 1'x1' brown floor tile mastic were considered asbestos containing material (ACM). PASS Associates, Inc. recommends that the identified ACM be placed in an Operations & Maintenance (O&M) Program and be maintained in place. However, the identified ACM would need to be removed by a qualified licensed asbestos abatement contractor in accordance with all applicable federal, state and local regulations prior to building renovations or demolitions that would impact such ACM. A comprehensive asbestos sampling inspection by a licensed asbestos inspector would be required for areas that were not sampled, prior to undertaking any future renovation or demolition activities at the site.

# Previous Participation Certification

**U.S. Department of Housing and Urban Development**
Office of Housing/Federal Housing Commissioner

**U.S. Department of Agriculture**
Farmers Home Administration

OMB Approval No. 2502-0118
(exp. 2/29/2004)

Part I To be completed by Principals of Multifamily Projects. See Instructions
Reason for Submitting Certification

| For HUD HO/FmHA use only | |
|---|---|

1. Agency Name and City where the application is filed

2. Project Name, Project Number, City and Zip Code contained in the application

| 3. Loan or Contract Amount | 4. Number of Units or Beds | 5. Section of Act | 6. Type of Project (check one) ☐ Existing ☐ Rehabilitation ☐ Proposed (New) | | |
|---|---|---|---|---|---|
| | | | 8. Role of Each Principal in Project | 9. Expected % Owner ship Interest in Project | 10. Social Security or IRS Employer Number |

**List of All Proposed Principal Participants**
7. Names and Addresses of All Known Principals and Affiliates (people, businesses & organizations) proposing to participate in the project described above. (list names alphabetically; last, first, middle initial)

**Certifications:** I (meaning the individual who signs as well as the corporations, partnerships or other parties listed above who certify) hereby apply to HUD or USDA-FmHA, as the case may be, for approval to participate as a principal in the role and project listed above based upon my following previous participation record and this Certification.

I certify that all the statements made by me are true, complete and correct, to the best of my knowledge and belief and are made in good faith, including the data contained in Schedule A and Exhibits signed by me and attached to this form. Warning: HUD will prosecute false claims and statements. Conviction may result in criminal and/or civil penalties. (18 U.S.C. 1001, 1010, 1012; 31 U.S.C. 3729, 3802)

I further certify that:
1. Schedule A contains a listing of every assisted or insured project of HUD, USDA-FmHA and State and local government housing finance agencies in which I have been or am now a principal.
2. For the period beginning 10 years prior to the date of this certification, and except as shown

by me on the certification.
a. No mortgage on a project listed by me has ever been in default, assigned to the Government or foreclosed, nor has mortgage relief by the mortgagee been given;
b. I have not experienced defaults or non-compliances under any Conventional Contract or Turnkey Contract of Sale in connection with a public housing project;
c. To the best of my knowledge, there are no unresolved findings raised as a result of HUD audits, management reviews or other Governmental investigations concerning me or my projects;
d. There has not been a suspension or termination of payments under any HUD assistance contract in which I have had a legal or beneficial interest;
e. I have not been convicted of a felony and am not presently, to my knowledge, the subject of a complaint or indictment charging a felony. (A felony is defined as any offense punishable by imprisonment for a term exceeding

one year, but does not include any offense classified as a misdemeanor under the laws of a State and punishable by imprisonment of two years or less);
f. I have not been suspended, debarred or otherwise restricted by any Department or Agency of the Federal Government or of a State Government from doing business with such Department or Agency.
g. I have not defaulted on an obligation covered by a surety or performance bond and have not been the subject of a claim under an employee fidelity bond.
3. All the names of the parties, known to me to be principals in this project(s) in which I propose to participate, are listed above.
4. I am not a HUD/FmHA employee or a member of a HUD/FmHA employee's immediate household as defined in Standards of Ethical Conduct for Employees of the Executive Branch in 5 C.F.R. Part 2635 (57 FR 35006) and HUD's Standard of Conduct in 24 C.F.R. Part 0 and USDA's Standard of Conduct in 7 C.F.R. Part 0 Subpart B.

5. I am not a principal participant in an assisted or insured project as of this date on which construction has stopped for a period in excess of 20 days or which has been substantially completed for more than 90 days and documents for closing, including final cost certification have not been filed with HUD or FmHA.
6. To my knowledge I have not been found by HUD or FmHA to be in noncompliance with any applicable civil rights laws.
7. I am not a Member of Congress or a Resident Commissioner nor otherwise prohibited or limited by law from contracting with the Government of the United States America.
8. Statements above (if any) to which I cannot certify have been deleted by striking through the words with a pen. I have initialled each deletion (if any) and have attached a true and accurate signed statement (if applicable) to explain the facts and circumstances which I think helps to qualify me as a responsible principal for participation in this project.

| Signature of Principal | | Certification Date (mm/dd/yyyy) | Area Code and Telephone No. |
|---|---|---|---|

| Typed or Printed Name of Principal | | | Area Code and Telephone No. |
|---|---|---|---|

This form was prepared by (Please print name)

Page 1 of 2

Previous editions are obsolete

ref Handbook 4065.1 form HUD-2530 (5/2001)

**Schedule A: List of Previous Projects and Section 8 Contracts.** By my name below is the complete list of my previous projects and my participation history as a principal; in Multifamily Housing programs of HUD/FmHA, State, and Local Housing Finance Agencies. Note: Read and follow the Instruction sheet carefully. Abbreviate where possible. Make full disclosure. Add extra sheets if you need more space. Double check for accuracy. If you have no previous projects write, by your name, **"No previous participation, First Experience."**

| 1. List each Principal's Name (list in alphabetical order, last name first) | 2. List Previous Projects (give the ID number, project name, city location, & government agency involved if other than HUD) | 3. List Principals' Role(s) (indicate dates participated, and If fee or identity of interest participant) | 4. Status of Loan (current, defaulted, assigned, or foreclosed) | 5. Was Project ever in Default, during your participation? Yes / No    If "Yes," explain | | 6. Last Mgmt. and/or Physical Inspctn Rating |
|---|---|---|---|---|---|---|

**Part II - For HUD Internal Processing Only**

Received and checked by me for accuracy and completeness; recommend approval or transferral to Headquarters as checked below:

| | Telephone Number and Area Code | ☐ A. No adverse information; form HUD-2530 approval is recommended. | ☐ C. Disclosure or Certification problem |
|---|---|---|---|
| Date (mm/dd/yyyy) | | | |
| Staff | Processing and Control | ☐ B. Name match in system | ☐ D. Other, our memorandum is attached. |
| Supervisor | | Director of Housing / Director, Multifamily Division | Approved  ☐ Yes  ☐ No    Date (mm/dd/yyyy) |

Previous editions are obsolete                    Page 2 of 2                    ref Handbook 4065.1form HUD-2530 (5/2001)

**Instructions for Completing the Previous Participation Certificate, form HUD-2530:** Carefully read these instructions and the applicable regulations. A copy of those regulations published at 24 C.F.R. 200.210 to 200.245 can be obtained from the Multifamily Housing Representative at any HUD Office. Type or print neatly in ink when filling out this form. Mark answers in all blocks of the form. If the form is not filed completely, it will delay approval of your application.

Attach extra sheets as you need them. Be sure to indicate "Continued on Attachments" wherever appropriate. Sign each additional page that you attach if it refers to you or your record. If you have many projects to list (20 or more) and expect to be applying frequently for participation in HUD projects, you should consider filing a Master List. See Master List instructions below under "Instructions for Completing Schedule A".

Carefully read the certification before you sign it. Any questions regarding the form or how to complete it can be answered by your HUD Office Multifamily Housing Representative.

**Purpose:** This form provides HUD with a certified report of all previous participation in HUD multifamily housing projects by those parties making application. The information requested in this form is used by HUD to determine if any meet the standards established to ensure that all principal participants in HUD projects will honor their legal, financial and contractual obligations and are acceptable risks from the underwriting standpoint of an insurer, lender or governmental agency. HUD requires that you certify your record of previous participation in HUD/USDA-FmHA, State and Local Housing Finance Agency projects by completing and signing this form, before your project application or participation can be approved.

HUD approval of your certification is a necessary precondition for your participation in the project and in the capacity that you propose. If you do not file this certification, do not furnish the information requested accurately, or do not meet established standards, HUD will not approve your certification.

**Note** that approval of your certification does not obligate HUD to approve your project application, and it does not satisfy all other HUD program requirements relative to your qualifications.

**Who Must Sign and File Form HUD-2530:** Form HUD-2530 must be completed and signed by all parties applying to become principal participants in HUD multifamily housing projects, including those who have no previous participation. The form must be signed and filed by all principals and their affiliates who propose participating in the HUD project. Use a separate form for each role in the project unless there is an identity of interest.

Principals include all individuals, joint ventures, partnerships, corporations, trusts, nonprofit organizations, any other public or private entity, that will participate in the proposed project as a sponsor, owner, prime contractor, turnkey developer, managing agent, nursing home administrator or operator, packager, or consultant. Architects and attorneys who have any interest in the project other than an arms length fee arrangement for professional services are also considered principals by HUD.

In the case of partnerships, all general partners regardless of their percentage interest and limited partners having a 25 percent or more interest in the partnership are considered principals. In the case of public or private corporations or governmental entities, principals include the president, vice president, secretary, treasurer and all other executive officers who are directly responsible to the board of directors, or any equivalent governing body, as well as a 10 directors and each stockholder having a 10 percent or more interest in the corporation.

Affiliates are defined as any person or business concern that directly or indirectly controls the policy of a principal or has the power to do so. A holding or parent corporation would be an example of an affiliate if one of its subsidiaries is a principal.

**Exception for Corporations** - All principals and affiliates must personally sign the certificate except in the following situation. When a corporation is a principal, all of its officers, directors, trustees and stockholders with 10 percent or more of the common (voting) stock need not sign personally if they all have the same record to report. The officer who is authorized to sign for the corporation or agency will list the names and title of those who elect not to sign. However, any person who has a record of participation in HUD projects that is separate from that of his or her organization must report that activity on this form and sign his or her name. The objective is full disclosure.

**Exemptions** - The names of the following parties do not need to be listed on form HUD-2530: Public Housing Agencies, tenants, owners of less than five condominium or cooperative units and all others whose interests were acquired by inheritance or court order.

**Where and When Form HUD-2530 Must Be Filed:** The original of this form must be submitted to the HUD Office where your project application will be processed at the same time you file your initial project application. This form must be filed with applications for projects, or when otherwise required in the situations listed below:

- Projects to be financed with mortgages insured under the National Housing Act (FHA).
- Projects to be financed according to Section 202 of the Housing Act of 1959 (Elderly and Handicapped).
- Projects in which 20 percent or more of the units are to receive a subsidy as described in 24 C.F.R. 200.213.
- Purchase of a project subject to a mortgage insured or held by the Secretary of HUD.
- Purchase of a Secretary-owned project.
- Proposed substitution or addition of a principal, or principal participation in a different capacity from that previously approved for the same project.
- Proposed acquisition by an existing limited partner of an additional interest in a project resulting in a total interest of 25 percent or more, or proposed acquisition by a corporate stockholder of an additional interest in a project resulting in a total interest of 10 percent or more.
- Projects with U.S.D.A., Farmers Home Administration, or with state or local government housing finance agencies that include rental assistance under Section 8 of the Housing Act of 1937. For projects of this type, form HUD-2530 should be filed with the appropriate applications directly to those agencies.

**Review of Adverse Determination:** If approval of your participation in a HUD project is denied, withheld, or conditionally granted on the basis of your record of previous participation, you will be notified by the HUD Review Committee. You may request reconsideration and/or a hearing before the HUD Review Committee. Alternatively, you may request a hearing before a Hearing Officer. Either request must be made in writing within 30 days from your receipt of the notice of determination.

If you do request reconsideration by the Review Committee and the reconsideration results in an adverse determination, you may then request a hearing before a Hearing Officer. The Hearing Officer will issue a report to the Review Committee. You will be notified of the final ruling by certified mail.

**Specific Line Instructions:**

**Reason for submitting this Certification:** e.g., refinance, management, change in ownership, transfer of physical assets, etc.

**Block 1:** Fill in the name of the agency to which you are applying. For example: HUD Office, Farmers Home Administration District office, or the name of a State or local housing finance agency. Below that, fill in the name of the city where the office is located.

**Block 2:** Fill in the name of the project, such as "Greenwood Apts." If the name has not yet been selected, write "Name unknown." Below that, enter the HUD contract or project identification number, the Farmers Home Administration project number, or the State or local housing finance agency project or contract number. Include all project or contract identification numbers that are relevant to the project. Also enter the name of the city in which the project is located, and the ZIP Code of the site location.

**Block 3:** Fill in the dollar amount requested in the proposed mortgage, or the annual amount of rental assistance requested.

**Block 4:** Fill in the number of apartment units proposed, such as "40 units." For hospital projects or nursing homes, fill in the number of beds proposed, such as "100 beds."

**Block 5:** Fill in the section of the Housing Act under which the application is filed.

**Block 7:** Definitions of all those who are considered principals and affiliates are given above in the section titled "Who Must Sign and File...."

**Block 8:** Beside the name of each principal, fill in the role that each will perform. The following are possible roles that the principals may perform: Sponsor, Owner, Prime Contractor, Turnkey Developer, Managing Agent, Packager, Consultant, General Partner, Limited Partner (include percentage), Executive Officer, Director, Trustee, Major Stockholder, or Nursing Home Administrator. Beside the name of each affiliate, write the name of the person or firm of affiliation, such as "Affiliate of Smith Construction Co."

Previous editions are obsolete

ref Handbook 4065.1 form HUD-2530 (5/2001)

Block 9: Fill in the percentage of ownership in the proposed project that each principal is expected to have. Also specify if the participant is a general or limited partner. Beside the name of those parties who will not be owners, write "None."

Block 10: Fill in the Social Security Number or IRS employer number of every party listed, including affiliates.

Instructions for Completing Schedule A:
Be sure that Schedule A is filled-in completely, accurately and the certification is properly dated and signed, because it will serve as a legal record of your previous experience. All Multifamily Housing projects involving HUD/FmHA, and State and local Housing Finance Agencies in which you have previously participated must be listed. Applicants are reminded that previous participation pertains to the entity itself. A newly formed company may not have previous participation, but the principals within the company may have had extensive participation and disclosure of that activity is required. To avoid duplication of disclosure, list the project and then the entities or individuals involved in that project. You may use the name or a number code to denote the entity or individual that participated. The number code can then be used in column 3 to denote role.

Column 2   List the project or contract identification of each previous project. All previous projects must be included or your certification cannot be processed. Include the name of all projects, the cities in which they are located and the government agency (HUD, USDA-FmHA or State or local housing finance agency) that was involved. At the end of your list of projects, draw a straight line across the page to separate your record of projects from that of others signing this form who have a different record to report.

Column 3   List the role(s) of your participation, dates participated, and if fee or identity of interest with owners.

Column 4   Indicate the current status of the loan. Except for current loans, the date associated with the status is required. Loans under a workout arrangement are considered assigned. An explanation of the circumstances surrounding the status is required for all non-current loans.

Column 5   Explain any project defaults during your participation.

Column 6   Enter the latest Management and/or Physical Inspection Review rating. If either of the ratings are below average, the report issued by HUD is required to be submitted along with the applicant's explanation of the circumstances surrounding the rating.

No Previous Record: Even if you have never participated in a HUD project before, you must complete form HUD-2530. If you have no record of previous projects to list, fill in column 1 of Schedule A, and write across the form by your name - "No previous participation, first experience."

Master List System: If you expect to file this form frequently and you have a long list of previous projects to report on Schedule A, you should consider filing a Master List. By doing so, you will avoid having to list all your previous projects each time you file a new application.

To make a Master List, use form HUD-2530, on page 1, in block 1, enter (in capital letters) the words "Master List." In blocks 2 through 6 enter in "N.A." meaning Not Applicable. Complete blocks 7 through 10.

In the box below the statement of certification, fill in the names of all parties who wish to file a Master List together (type or print neatly). Beside each name, every party must sign the form. In the box titled "Proposed Role," fill in "N.A." Also, fill in the date you sign the form

and provide a telephone number where you can be reached during the day. No determinations will be made on these certificates.

File one copy of the Master List with each HUD Office where you do business and mail one copy to the following address:
HUD-2530 Master List
Participation and Compliance
Division - Housing
U.S. Department of Housing and
Urban Development
451 Seventh Street, S.W.
Washington, D.C. 20410

Once you have filed a Master List, you do not need to complete Schedule A when you submit form HUD-2530. Instead, write the name of the participant in column I of Schedule A and beside that write "See Master List on file." Also give the date that appears on the Master List that you submitted. Below that, report all changes and additions that have occurred since that date. Be sure to include any mortgage defaults, assignments or foreclosures not listed previously.

If you have withdrawn from a project since the date the Master List was filed, be sure to name the project. Give the project identification number, the month and year your participation began and/or ended.

Certification:
After you have completed all other parts of form HUD-2530, including Schedule A, read the Certification carefully, in the box below the statement of certification, fill in the name of all principals and affiliates (type or print neatly). Beside the name of each principal and affiliate, each party must sign the form, with the exception in some cases of individuals associated with a corporation (see "Exception for Corporations" in the section of the instructions titled "Who Must Sign and File the form

HUD-2530"). Beside each signature, fill in the role of each party (the same as shown in block 8). In addition, each person who signs the form should fill in the date that he or she signs, as well as providing a telephone number where he or she can be reached during business hours. By providing a telephone number where you ran be reached, you will help to prevent any possible delay caused by mailing and processing time in the event HUD has any questions.

If you cannot certify and sign the certification as it is printed because some statements do not correctly describe your record, use a pen and strike through those parts that differ with your record, then sign and certify to that remaining part which does describe you or your record. Attach a signed letter, note or an explanation. If the items you have struck out on the certification and report the facts of your correct record. Item A(2)(e) relates to felony convictions within the past 10 years. If you have been convicted of a felony within 10 years, strike out all of A(2)(e) on the certificate and attach your statement giving your explanation. A felony conviction will not necessarily cause your participation to be disapproved unless there is a criminal record or other evidence that your previous conduct or method of doing business has been such that your participation in the project would make it an unacceptable risk from the underwriting standpoint of an insurer, lender or governmental agency.

The Department of Housing and Urban Development (HUD) is authorized to collect this information by law (42 U.S.C. 3535(d) and 24 C.F.R. 200.217) and by regulation at 24 CFR 200.210. This information is needed so that principals applying to participate in multifamily programs can become HUD-approved participants. The information you provide will enable HUD to evaluate your record with respect to established standards of performance, responsibility and eligibility. Without prior approval, a principal may not participate in a proposed or existing multifamily project. HUD uses this information to evaluate whether or not principals pose an unsatisfactory risk.
Privacy Act Statement. The Housing and Community Development Act of 1987, 42 U.S.C. 3543 requires persons applying for a Federally-insured or guaranteed.
your SSN or identification number. HUD may use your SSN for automated processing of your records and to make requests for information about you and your previous records with other public agencies and private sector sources. HUD may disclose certain information to Federal, State and local agencies when relevant to civil, criminal, or regulatory investigations and prosecutions. It will not be otherwise disclosed or released outside of HUD, except as required and permitted by law. You must provide all of the information requested in the application, including your SSN, to obtain HUD assistance or to furnish his/her Social Security Number (SSN). HUD must have
Public reporting burden for this collection of information is estimated to average 30 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. This agency may not collect this information, and you are not required to complete this form, unless it displays a currently valid OMB control number.
A response is mandatory. Failure to provide any of the information will result in your disapproval for participation in this HUD program.
Previous editions are obsolete

# Personal Financial and Credit Statement

U.S. Department of Housing ` `
Urban Development
Office of Housing
Federal Housing Commissioner

OMB No. 2502-0001 (Exp. 11/30/2002)

**Public reporting burden** for this collection of information is estimated to average 8 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Reports Management Officer, Paperwork Reduction Project (2502-0001), Office of Information Technology, U.S. Department of Housing and Urban Development, Washington, D.C. 20410-3600. This agency may not collect this information, and you are not required to complete this form, unless it displays a currently valid OMB control number.

**Do not send this form to the above address.**

**Privacy Act Statement:** HUD is authorized to collect this information by P. L. 479.48, Stat.1246, 12 USC 1701 et. seq.; and the Housing and Community Development Act of 1987, 42 USC 3543, to collect the Social Security Number (SSN). This report is authorized by law (24 CFR 207.1). It will be used , as a minimum, to make a determination of the financial and credit status of the respondent. HUD may disclose this information to Federal, State and local agencies when relevant to civil, criminal, or regulatory investigations and prosecutions. It will not be otherwise disclosed or released outside of HUD, except as required and permitted by law. Providing the SSN is mandatory. Failure to provide any of the information may result in your disapproval of participation in this HUD program and/or delay action on your proposal.

| Project Name: | Project Number: |
| --- | --- |
| Project Location: | Name & Address of Person(s) making this Statement: |
| | Date Prepared : | Date of Statement: |

| Assets | | | Liabilities and Net Worth | | |
| --- | --- | --- | --- | --- | --- |
| Cash on hand in banks    Name of depository | Balance | Total | Accounts Payable | | $ |
| | | | Notes Payable | | $ |
| Depository and Account No. - Restricted | | $ | Debts payable in less than one year (secured by mortgages on land and buildings) | | $ |
| Depository and Account No. - Unrestricted | | $ | Debts payable in less than one year (secured by chattel mortgages or other liens on assets) | | $ |
| Accounts Receivable | $ | | Other current liabilities: (describe) | | |
| Less: Doubtful Accounts | | $ | | | |
| Notes Receivable | $ | | | | |
| Less: Doubtful Notes | | $ | | | |
| Stocks and Bonds - Market Value (Schedule A - reverse side) | $ | | | | $ |
| Other Current Assets: (Describe) | | | Total Current Liabilities: | | $ |
| | | | Debts payable in more than one year (secured by mortgages on land and buildings) | | $ |
| | | $ | Debts payable in more than one year (secured by chattel mortgages or other liens on assets) | | $ |
| Total Current Assets | | $ | Other liabilities (describe) | | |
| Real Property — at net * (Schedule B — reverse side) | | $ | | | |
| Machinery Equipment and Fixtures — at net | | $ | | | |
| Life Insurance (Cash value less loans) | | $ | | | |
| Other Assets (describe) | | | | | $ |
| | | | Total Liabilities | | $ |
| | | $ | Net Worth | | $ |
| Total Assets | | $ | Total Liabilities and Net Worth | | $ |

* Cost, including improvements, less depreciation.

Page 1 of 4

form **HUD-92417** (9/93)
ref. Handbook 4470.1

| Accounts and Notes Receivable Partn (') Employee (E) Relative (R) or other (O) | | | |
|---|---|---|---|
| Name (Indicate also P,E,R or O)*<br>**ds;lfkj** | Address<br>**sd;lfksd;flksf;lsdkfsd;lfks;dlfk** | Maturity Date | Amount |
| Name (Indicate also P,E,R or O)* | Address | Maturity Date | Amount |
| Name (Indicate also P,E,R or O)* | Address | Maturity Date | Amount |
| Name (Indicate also P,E,R or O)* | Address | Maturity Date | Amount |
| Name (Indicate also P,E,R or O)* | Address | Maturity Date | Amount |

| Life Insurance | Face Value | Beneficiary |
|---|---|---|

**Delinquencies  (starting with Federal Indebtedness)**

| Type Liability | Amount | Circumstances |
|---|---|---|
| Type Liability | Amount | Circumstances |
| Type Liability | Amount | Circumstances |
| Type Liability | Amount | Circumstances |
| Type Liability | Amount | Circumstances |

| **Accounts and Notes Payable** Partner (P) Employee (E) Relative (R) or other (O)* | | | |
|---|---|---|---|
| Name (Indicate also P,E,R or O)* | Address | Amount | Maturity Date |
| Name (Indicate also P,E,R or O)* | Address | Amount | Maturity Date |
| Name (Indicate also P,E,R or O)* | Address | Amount | Maturity Date |
| Name (Indicate also P,E,R or O)* | Address | Amount | Maturity Date |
| Name (Indicate also P,E,R or O)* | Address | Amount | Maturity Date |

**Pledged Assets**

| Type Pledged | Amount | Offsetting Liability |
|---|---|---|
| Type Pledged | Amount | Offsetting Liability |
| Type Pledged | Amount | Offsetting Liability |
| Type Pledged | Amount | Offsetting Liability |
| Type Pledged | Amount | Offsetting Liability |

**Legal Proceedings:** (If any legal proceedings have been instituted by creditors, or any unsatisfied judgments remain on record, give full details starting with any unresolved Federal Indebtedness.)

form HUD-92417 (9/93)
ref. Handbook 4470.1

**Schedule A — Stocks and Bonds** (Note: If m...    .pace is required use a separate sheet of paper.)

| Description | Number of Shares | Current Market Value (At date of this Statement) | If Listed, Name Exchange |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

**Schedule B — Real Property**  (Indicate Private Residence, if any)

| Location and Description of Land and Buildings Owned | Age | Original Cost | Market Value | Assessed Value | Mortgaged For | Insured For |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| **Totals** | | | | | | |

**Title**  (The legal and/or equitable title to all pieces of the above-described real estate is solely in my name, except as follows.)

| Location of Real Property: | Name of Title Holders: |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |

form **HUD-92417**  (9/93)
ref. Handbook 4470.1

**Bank and/or Trade References**

| Name & Address: | Account Numbers: |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

Other Information/Remarks

I/We hereby certify that the foregoing figures and the statements contained here, submitted to obtain mortgage insurance under the National Housing Act, are true and give a correct showing of my/our financial condition as of this date.

**Warning:** HUD will prosecute false claims and statements. Conviction may result in criminal and/or civil penalties. (18 U.S.C. 1001, 1010, 1012; 31 U.S.C. 3729, 3802)

| Name(s) & Signature(s):* | Social Security Number(s) : | Date Signed: |
|---|---|---|
|  |  |  |
|  |  |  |

* For married individuals, the signature and Social Security Number of the spouse is required. This signature also authorizes the acceptance of the Criminal Certification and allows consideration of the funds indicated herein for the HUD insured project.

form **HUD-92417** (9/93)
ref. Handbook 4470.1

# Affirmative Fair Housing Marketing Plan

U.S. Department of Housing
and Urban Development
Office of Fair Housing and Equal Opportunity

OMB Approval No. 2529-0013
(exp. 09/30/2003)

| 1a. Applicant's Name, Address (including city, state & zip code) & Phone Number | 1c. Project/Application Number | 1d. Number of Units | 1e. Price or Rental Range |
|---|---|---|---|
| | | | From $ |
| | | | To $ |

| | 1f. For Multifamily Housing Only | 1g. Approximate Starting Dates (mm/dd/yyyy) |
|---|---|---|
| | ☐ Elderly    ☐ Non-Elderly | Advertising _____  Occupancy _____ |

| 1b. Project's Name, Location (including city, State and zip code) | 1h. Housing Market Area | 1i. Census Tract |
|---|---|---|
| | 1j. Managing/Sales Agent's Name & Address (including city, State and zip code) | |

**2. Type of Affirmative Marketing Plan** (mark only one)

☐ Project Plan
☐ Minority Area
☐ White (non-minority) Area
☐ Mixed Area (with _____ % minority residents)

**3. Direction of Marketing Activity** (Indicate which group(s) in the housing market area are least likely to apply for the housing because of its location and other factors without special outreach efforts)

☐ White (non-Hispanic)    ☐ Hispanic    ☐ American Indian or Alaskan Native
☐ Black (non-Hispanic)    ☐ Asian or Pacific Islander    ☐ Persons with Disabilities

**4a. Marketing Program: Commercial Media** (Check the type of media to be used to advertise the availability of this housing)

☐ Newspapers/Publications    ☐ Radio    ☐ TV    ☐ Billboards    ☐ Other (specify)

| Name of Newspaper, Radio or TV Station | Racial/Ethnic Identification of Readers/Audience | Size/Duration of Advertising |
|---|---|---|
| | | |
| | | |
| | | |

**4b. Marketing Program: Brochures, Signs, and HUD's Fair Housing Poster**

(1) Will brochures, letters, or handouts be used to advertise? ☐ Yes ☐ No  If "Yes", attach a copy or submit when available.
(2) For project site sign, indicate sign size _____ x _____; Logotype size _____ x _____. Attach a photograph of project sign or submit when available.
(3) HUD's Fair Housing Poster must be conspicuously displayed wherever sales/rentals and showings take place. Fair Housing Posters will be displayed in the ☐ Sales/Rental Office ☐ Real Estate Office ☐ Model Unit ☐ Other (specify)

**4c. Community Contacts.** To further inform the group(s) least likely to apply about the availability of the housing, the applicant agrees to establish and maintain contact with the groups/organizations listed below that are located in the housing market area or SMSA. If more space is needed, attach an additional sheet. Notify HUD-FHEO of any changes in this list. Attach a copy of correspondence to be mailed to these groups/organizations. (Provide all requested information.)

| Name of Group/Organization | Racial/Ethnic Identification | Approximate Date (mm/dd/yyyy) | Person Contacted or to be Contacted |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

| Address & Phone Number | Method of Contact | Indicate the specific function the Group/Organization will undertake in implementing the marketing program |
|---|---|---|
| | | |
| | | |
| | | |

**5. Future Marketing Activities** (Rental Units Only) Mark the box(es) that best describe marketing activities to fill vacancies as they occur after the project has been initially occupied.

☐ Newspapers/Publications    ☐ Radio    ☐ TV    ☐ Brochures/Leaflets/Handouts
☐ Site Signs    ☐ Community Contacts    ☐ Other(specify)

**6. Experience and Staff Instructions** (See instructions)

6a. Staff has experience. ☐ Yes ☐ No
6b. On separate sheets, indicate training to be provided to staff on Federal, State and local fair housing laws and regulations, as well as this AFHM Plan. Attach a copy of the instructions to staff regarding fair housing.

**7. Additional Considerations** Attach additional sheets as needed.

| 8. Changes and Revisions By signing this form, the applicant agrees, after appropriate consultation with HUD, to change any part of the plan covering a multifamily project to ensure continued compliance with Section 200.620 of HUD's Affirmative Fair Housing Marketing Regulations. | For HUD-Office of Housing Use Only | |
|---|---|---|
| | Approval By | Disapproval By |
| Signature of person submitting this Plan & Date of Submission (mm/dd/yyyy) | Signature & Date (mm/dd/yyyy) | Signature & Date (mm/dd/yyyy) |
| Name (type or print) | Name (type or print) | Name (type or print) |
| Title & Name of Company | Title | Title |

Public reporting burden for this collection of in    nation is estimated to average 1 hour per respons    cluding the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. This agency may not collec this information, and you are not required to complete this form, unless it displays a currently valid OMB control number.

The Affirmative Fair Housing Marketing Plan (AFHM) is needed to ensure that Federal agencies are taking necessary steps to eliminate discriminatory practices involving Federally insured and assisted housing. No application for any housing project or subdivision insured or subsidized under the Department's housing programs can be funded without an approved AFHM Plan. The responses are required to obtain or retain a benefit under the Fai Housing Act, Section 808(e)(5) & (6) and 24 CFR Part 200, Subpart M. The form contains no questions of a confidential nature.

## Instructions

Send the Completed form to:  Your Local HUD Office,
Attention: Director, Office of Housing

The Affirmative Fair Housing Marketing Regulations require that each applicant subject to these regulations carry out an affirmative program to attract prospective buyers or tenants of all minority and non- minority groups in the housing market area regardless of race, color, religion, sex, national origin, disability, or familial status. These groups include Whites (Non-Hispanic), members of minority groups, i.e., Blacks (Non-Hispanic), American Indians/Alaskan Natives, Hispanics, Asian/Pacific Islanders, persons with disabilities, or families with children in the Standard Metropolitan Statistical Areas (SMSA) or housing market area who may be subject to housing discrimination on the basis of race, color, religion, sex, national origin, disability, or familial status. The applicant shall describe on this form the activities it proposes to carry out during advance marketing, where applicable, and the initial sales rent-up period. The affirmative program also should ensure that any group(s) of persons normally **not** likely to apply for the housing without special outreach efforts (because of existing neighborhood racial or ethnic patterns, location of housing in the SMSA price or other factors), know about the housing, feel welcome to apply and have the opportunity to buy or rent.

**Part 1** - Applicant and Project Identification. The applicant may obtain Census Tract location information, item 1i, from local planning agencies, public libraries and other sources of Census Data. For item 1g, specify approximate starting date of marketing activities to the groups targeted for special outreach and the anticipated date of initial occupancy. Item 1j is to be completed only if the applicant is not to implement the plan on its own.

**Part 2** - Type of Affirmative Marketing Plan. Applicants for multifamily projects are to submit a Project Plan which describes the marketing program for the particular project or subdivision. Scattered site builders are to submit individual annual plans based on the racial composition of each type of census tract. For example, if a builder plans to construct units in both minority and non-minority census tracts, separate plans shall be submitted for all of the housing proposed for both types.

**Part 3** - Direction of Marketing Activity. Considering factors such as price or rental of housing, the racial/ethnic characteristics of the neighborhood in which housing is (or is to be) located, the population within the housing market area, or the disability or familial status of the eligible population, public transportation routes, etc., indicate which group(s) you believe are least likely to apply without special outreach.

**Part 4** - Marketing Program. The applicant shall describe the marketing program to be used to attract all segments of the eligible population, especially those groups designated in the Plan as least likely to apply. The applicant shall state: the type of media to be used, the names of newspapers/call letters of radio or TV stations; the identity of the circulation or audience of the media identified in

the Plan, e.g., White (Non-Hispanic), Black (Non-Hispanic), Hispanic, Asian-American/Pacific Islander, American Indian/ Alaskan Native; and the size or duration of newspaper advertising or length and frequency of broadcast advertising. Community contacts include individuals or organizations that are well known in the project area or the locality and that can influence persons within groups considered least likely to apply. Such contacts may include, but need not be limited to: neighborhood, minority and women's organizations, churches, labor unions, employers, public and private agencies, disability advocates, and individuals who are connected with these organizations and/or are well-known in the community.

**Part 5** - Future Marketing Activities.  Self-Explanatory.

**Part 6** - Experience and Staff Instructions.
a. Indicate whether the applicant has previous experience in marketing housing to group(s) identified as least likely to apply for the housing.
b. Describe the instructions and training given to sales/rental staff. This guidance to staff must include information regarding Federal, State and local fair housing laws and this AFHM Plan. Copies of any written materials should be submitted with the Plan, if such materials are available.

**Part 7** - Additional Considerations.  In this section describe other efforts not mentioned previously which are planned to attract persons in either those groups already identified in the Plan as least likely to apply for the housing or in groups nor previously identified in the Plan.  Such efforts may include outreach activities to female-headed households and persons with disabilities.

**Part 8** - The applicant's authorized agent signs and dates the AFHM Plan.  By signing the Plan, the applicant assumes full responsibility for its implementation. The Department may at any time monitor the implementation of the Plan and request modification in its format or content, where the Department deems necessary.

**Notice of Intent to Begin Marketing.** No later than 90 days prior to the initiation of sales or rental marketing activities, the applicant with an approved Affirmative Fair Housing Marketing Plan shall submit notice of intent to begin marketing. The notification is required by the Affirmative Fair Housing Marketing Plan Compliance Regulations (24 CFR Part 108.15). It is submitted either orally or in writing to the FHEO Division of the appropriate HUD Office serving the locality in which the proposed  housing is located. OMB approval of the Affirmative Fair  Housing Plan includes approval of this notification procedure as part of the Plan. The burden hours for such notification are included in the total designated for this Affirmative Fair Housing Marketing Plan form.

# Management Entity Profile

**U.S. Department of Housing and Urban Development**
Office of Housing
Federal Housing Commissioner

OMB Approval No. 2502-030.
(exp 04/30/2003

See Public Reporting and Privacy Act statements on last page before completing this form

**Instructions:** The management entity may develop its own format for providing the information requested in this form. Independent fee managers and identity-of-interest management agents must provide all the information requested. Owner-managers and administrators of projects for the elderly mus provide responses only to the asterisked items. They must also state whether they have previously managed insured and/or HUD-held projects and, i so, list such projects.

| *1a. Name of Management Entity | *1b. Management Entity Type |
|---|---|
| | ☐ Owner/Manager   ☐ Project Administrator   ☐ Independent Fee Agent   ☐ Identity-of-Interest Agent |

| *1c. Employer Identification Number (EIN) | *1d. Organization Type |
|---|---|
| | ☐ Corporation   ☐ Partnership   ☐ Individual   ☐ Other (specify)_____ |

*2. Give names, titles and Social Security Numbers of firm's principals (e.g., general partner, president, treasurer, etc.)

| Name | Title | Social Security Number |
|---|---|---|
| | | |
| | | |
| | | |

3. Provide mailing addresses for the Company's home office and any branch offices involved in management of HUD-related multifamily projects. Specify the geographic area covered by each office.

| *4. What year (yyyy) did the company begin managing: | | | 5. Estimate what percent of company's activities involve management of: | | | |
|---|---|---|---|---|---|---|
| a. HUD-subsidized projects | b. HUD-related unsubsidized projects | c. Conventional projects | a. Conventional projects        % | b. HUD-related projects        % | c. Commercial space        % | d. Other        % |

6a. How many of the following projects does the company manage?
(Both rentals and cooperatives)

| HUD-unsubsidized projects | units | HUD-subsidized projects | units | HUD-owned projects | units | 6b. How many of the projects included in 6a: | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Have HUD-held mortgages | Are non-insured | Are subsidized co-ops | Are unsubsidized co-ops |

6c. Approximately what percent of the projects in 6a fall into the following categories:

| Elderly        % | Family        % | Owned by a non-profit or coop        % | Core city        % | Troubled neighborhood        % | Suburban        % | Rural area        % |
|---|---|---|---|---|---|---|

7. Indicate where each of the following activities are administered. Use the following codes: C = central office; R = regional office; P = project site

| Bookkeeping | Landscaping | Maintenance | Purchasing | Tenant application | Certifications/ recertifications | Regular monthly subsidy billings | Special claims subsidy billings |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

*8. How many of the company's full-time employees serve in the following supervisory or advisory roles?
(Owner-managers and administrators of projects for the elderly should provide this information on project employees.)

| Engineers | Maintenance supervisors | Occupancy supervisors | Training specialists | Social service coordinators | Regional property managers | How many are minorities | What percentage are minority        % |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

*9. Identify any professional memberships, licenses, certificates or accreditations which are related to property management activities and are held by the company, company executives, or the employees considered in Item 8. (attach additional page(s) if necessary)

form HUD-9832 (8/91)
ref. Handbook 4381.5

\*10.  Describe any purchasing procedures y̶ ̶ ̶ave implemented to control or reduce costs
(e.g., bulk purchasing, paying early to ta̶ᴋ̶e advantage of discounts, cost comparisons or bids, ᴇtc.)

\*11a.  List any companies which regularly supply goods or services to your HUD-related projects and have an identity-of-interest with the management entity
or its principals (e.g., officers, general partners).  Specify the type of goods and services provided.  (See paragraph 2 - 3D of HUD Handbook 4381.5
for a definition of the term "identity-of-interest.")  If these companies do not provide goods/services to all your HUD-related projects, identify the projects
that do not deal with these companies.

\*11b.  Do any of the identity-of-interest companies listed in 11a. function as "pass-throughs" -- i.e., does the identity-of-interest company purchase goods or
services from another party and pass those goods or services through to the project?  For each pass-through arrangement:
  (1)  Name the identity-of-interest company involved.
  (2)  Explain how the identity-of-interest company's compensation is determined.
  (3)  Explain why it is more advantageous for the project to use the pass-through arrangement than to purchase directly from the ultimate supplier.

\*12.  What types of property management procedures or operating manuals are used by on-site or supervisory staff?

\*13.  What types of recurring written reports are prepared on project operations (e.g., maintenance, move-in/outs, payables, comparisons of budgeted and
actual expenses)?  Specify who (by position title) prepares the report, frequency of the report, and who reviews the report.

| \*14a.  How frequently do company executives or supervisory staff visit the projects the company manages? | \*14b.  Specify who (by position title) conducts the on-site visits or reviews. |
|---|---|
| | |

\*15.  If the company manages subsidized projects, identify by job title **who prepares and reviews** the HUD-required documents listed below.  Specify the
frequency of review.

| | Prepares documents | Reviews documents | Frequency of review |
|---|---|---|---|
| a. Form HUD-50059, Initial Certifications | | | |
| b. Form HUD-50059, Recertifications | | | |
| c. Regular Monthly Subsidy Billings | | | |
| d. Special Claims Subsidy Billings | | | |
| e. Proposals to terminate tenant assistance payments | | | |
| f. Proposals to evict | | | |
| g. Monthly Accounting Reports (Forms HUD-93479, 80, 81) | | | |
| h. Form HUD-949, Civil Rights Tenant Characteristics/Occupancy Reports | | | |

Previous editions are obsolete                    Page 2 of 4                    form HUD-9832 (8/91)
                                                                                ref. Handbook 4381.5

| Agent Name | Date (mm/dd/yyyy) |
|---|---|
| | |

16. If applicable, describe how the home office supervises supervisory staff
(e.g., property managers, occupancy specialists, maintenance supervisors), who operate out of branch offices.

*17. Describe how the company trains its employees in the areas listed below. Discuss both on-going training and initial training provided when the employee
is hired. Specify the frequency and duration of the training and who/what organization conducts the training. Discuss training for both supervisory and
front-line staff.

   a. Property management practices.

   b. Financial and recordkeeping requirements.

   c. Civil rights and fair housing laws.

   d. Occupancy requirements in HUD Handbook 4350.3, Occupancy Requirements of Subsidized Multifamily Housing Programs (if the company manages
   subsidized projects).

*18. Has an owner of a HUD-related project, at any time during the past three years, cancelled a property management contract held by the company?

   Yes ☐    No ☐

   During the past three years, how many HUD-related projects have not renewed their management contracts with the company?
   (Number)_____

   Explain the reasons for any cancellations or failure to renew and identify the projects involved.

19a.  List all HUD Field Offices that have jurisdiction over the projects included in 6a. For companies that operate in more than five Field Office jurisdictions, identify the five jurisdictions where the greatest number of your HUD-related projects are located.

19b.  List all State Agencies in whose jurisdiction you have managed or are managing State Agency-financed projects. For companies that operate in more than five States, identify the five where the greatest number of your State Agency projects are located.

19c.  List all FmHA offices in whose jurisdiction you have managed or are managing FmHA projects. For companies that operate in more than five FmHA jurisdictions, identify the five where the greatest number of your FmHA projects are located.

**Certification:**  The undersigned hereby certifies that the statements and information contained in this profile are true and correct.

**Warning:** HUD will prosecute false claims and statements. Conviction may result in criminal and/or civil penalties. (18 U.S.C. 1001, 1010, 1012; 31 U.S.C. 3729, 3802)

Signed by Management Entity Representative

| Signature | | Date (mm/dd/yyyy) |
|---|---|---|
| Print Name | Title | |

Public reporting burden for this collection of information is estimated to average 2 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.  This agency may not conduct or sponsor, and a person is not required to respond to, a collection information unless that collecton displays a valid OMB control number.

*Owners of insured and assisted multifamily housing projects are required by HUD administrative guidelines as found in HUD Handbook 4381.5 REV-2, The Management Agent Handbook, to submit certain data for review by the local HUD office of approval of a new management agent. These requirements apply to insured multifamily projects or HUD-held mortgages and subsidized, non-insured projects that are not financed by State Agencies or the Rural Housing Service Agency.*

**Privacy Act Statement:**  The Department of Housing and Urban Development (HUD) is authorized  to collect this information by the U.S. Housing Act of 1937, as amended, and the Social Security Numbers (SSN) by the Housing and Community Development Act of 1987, 42 U.S.C. 3543. The information concerning management documents for Multifamily Housing projects is being collected by HUD to:  (1) determine the acceptability of proposed management agents, (2) ensure compliance with program requirements, (3) provide leverage for removing poor managers, and (4) recover excessive management fees.  The information is being used as a management tool to avoid the misuse of  HUD subsides and defaults against the FHA insurance fund by management agents.  Specifically, the information will provide for improved project management by ensuring: that subsidy funds are administered in accordance with HUD  rules, project expenses are reasonable, maintenance of documented records, and use of project funds only in accordance with HUD requirements.  The SSN is used as a unique identifier.  HUD may disclose this information to Federal, State and local agencies when relevant to civil, criminal, or regulatory investigations and prosecutions.  It will not be otherwise disclosed or released outside of HUD, except as permitted or required by law.  Failure to provide the information could result in HUD's denial of proposed management or fees or cancellation of management contracts for noncompliance with HUD  procedures.  Providing the SSN is mandatory, and failure to provide it could affect your participation in HUD programs.

# Project Owner's Certification for Owner-Managed Multifamily Housing Projects

**U.S. Department of Housing and Urban Development**
Office of Housing
Federal Housing Commissioner

OMB Approval No. 2502-0305
(exp. 04/30/2003)

Public reporting burden for this collection of information is estimated to average 30 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. This agency may not conduct or sponsor, and a person is not required to respond to, a collection information unless that collecton displays a valid OMB control number.

Owners of insured and assisted multifamily housing projects are required by HUD administrative guidelines as found in HUD Handbook 4381.5 REV-2, The Management Agent Handbook, to submit certain data for review by the local HUD office of approval of a new management agent. These requirements apply to insured multifamily projects or HUD-held mortgages and subsidized, non-insured projects that are not financed by State Agencies or the Rural Housing Service Agency.

| Project name | FHA project number | Date (mm/dd/yyyy) |
|---|---|---|
| City, State | | Section 8 number |

Acting on behalf of _____, the Project Owner, I make the following certifications and agreements to the United States Department of Housing and Urban Development (HUD) regarding management of the above project.

1. I certify that:

   a. I will comply with HUD requirements and contract obligations, execute an acceptable management agreement, and agree that no payments have been made to me (or agent thereof) in return for awarding the management contract; and, such payments will not be made in the future.

   b. No management agent will be hired without HUD's prior written approval. Changes in the fee will be implemented only in accordance with HUD's requirements.

   (1) Fees:

   (a)_____ % of residential income collected;

   (b)_____ % of commercial income collected;

   (c)_____ % of miscellaneous income collected (This percentage must not exceed the percentage in (1)(a) above).

   (d) Special Fees No ☐ Yes ☐ If yes, describe in paragraph 4 of Attachment 1.

   (2) Calculation of Estimated Yield (See Attachment 1.)

   c. I will disburse management fees from project income only after:

   (1) We have submitted this Certification to HUD;

   (2) HUD has approved us to manage this project; **and**

   (3) HUD has approved the management fee (if required).

   d. I understand that no fees may be earned or paid after HUD has terminated my management of the project.

   e. If HUD notifies me of an excessive management fee, I will within 30 days of HUD's notice either:

   (1) Reduce the compensation to an amount HUD determines to be reasonable and

   (2) Require the administrator to refund to the project all excessive fees collected, or

   (3) Appeal HUD's decision and abide by the results of the appeal process, making any required reductions and refunds within 30 days after the date of this decision letter on the appeal.

   f. If HUD holds the residential management fee yield harmless under the transition provisions of Chapter 3, Section 4 of HUD Handbook 4381.5,

   (1) I understand that HUD will adjust the management fee percentage each time HUD approves a rent increase.

   (2) I agree to be bound by that percentage until the next rent increase or until HUD approves a different fee, pursuant to my request.

2. I will, if the project is subsidized by HUD, select and admit tenants, compute tenant rents and assistance payments, recertify tenants and carry out other subsidy contract administration responsibilities in accordance with HUD Handbook 4350.3 and other HUD instructions.

3. I agree to:

   a. Comply with this project's Regulatory Agreement, Mortgage & Mortgage Note, and any subsidy contract or Workout / Modification Agreement.

   b. Comply with HUD handbooks, notices or other policy directives that relate to the management of the project.

4. I agree to:

   a. Ensure that all expenses of the project are reasonable and necessary.

   b. Exert reasonable effort to maximize project income and to take advantage of discounts, rebates and similar money-saving techniques.

   c. Obtain contracts, materials, supplies and services, including the preparation of the annual audit, on terms most advantageous to the project.

   d. Credit the project with **all** discounts, rebates or commissions (including any sales or property tax relief granted by the state or local government) received.

   e. Obtain the necessary verbal or written cost estimates and document the reasons for accepting other than the lowest bid.

   f. Maintain copies of such documentation and make such documentation available for your inspection during normal business hours.

   g. Invest project funds that HUD policies require to be invested and take reasonable effort to invest other project funds .

   h. Comply with HUD requirements regarding payment and reasonableness of management fees and allocation of management costs between the management fee and the project account.

   i. Refrain from purchasing goods or services from entities that have identity-of-interest with us unless the costs are as low as or lower than arms-length, open-market purchases.

5. I certify that the types of insurance policies checked below are in force and will be maintained to the best of my ability at all times. Fidelity bonds and hazard insurance policies will name HUD as an additional payee in the event of a loss. Note: For any box not checked, attach an explanation as to why you cannot obtain that type of insurance. Such situations should be extremely rare.

   a. ☐ Fidelity bond or employee dishonesty coverage for

   (1) all principals of the ownership entity and;

   (2) all persons who participate directly or indirectly in the management and maintenance of the project and its assets, accounts and records. Coverage will be at least equal to the project's gross potential income for two (2) months.

   b. ☐ Hazard insurance coverage in an amount required by the projects Mortgage.

   c. ☐ Public liability coverage.

6. I agree to:

   a. Furnish a response to HUD's management review reports, physical inspection reports and written inquiries regarding the project's annual financial statements or monthly accounting reports within 30 days after receipt of the report or inquiry.

   b. Establish and maintain the project's accounts, books and records in accordance with:

   (1) HUD's administrative requirements;

   (2) generally accepted accounting principles; and

   (3) in a condition that will facilitate audit.

7. I agree that:

a. All records related to the operation of the project, regardless of where they are housed, shall be considered the property of the project.

b. HUD, the General Accounting Office (GAO), and those agencies' representatives may inspect:

(1) any records which relate to the project's purchase of goods or services;

(2) the records of the owner and the agent; and,

(3) the records of companies having an identity-of-interest with me.

c. The following clause will be included in any contract entered into with an identity-of-interest individual or business for the provision of goods or services to the project: "Upon request of HUD or (name of owner), (name of contractor or supplier) will make available to HUD, at a reasonable time and place, its records and records of identity-of-interest companies which relate to goods and services charged to the project. Records and information will be sufficient to permit HUD to determine the services performed, the dates the services were performed, the location at which the services were performed, the time consumed in providing the services, the charges made for materials, and the per-unit and total charges levied for said services." I agree to request such records within seven (7) days of receipt of HUD's request to do so.

8. I Understand that:

a. HUD has the right to terminate this self-management arrangement for failure to comply with the provisions of this Certification, or other good cause, thirty days after HUD has mailed me a written notice of its desire to terminate my authority to manage the project.

b. In the event of a default under the Mortgage, Note or Regulatory Agreement, HUD has the right to terminate my authority to manage the project immediately upon HUD's issuance of a notice of termination.

c. If HUD exercises this right of termination, I agree to promptly select an agent that is acceptable to HUD.

d. If there is a conflict between the Management Agreement & HUD's rights and requirements, HUD's rights & requirements will prevail.

e. If my authority to manage the project is terminated, I agree to immediately turn over to the new agent all of the project's cash, trust accounts investments and records.

9. I agree to submit a new Management Certification to HUD before taking any of the following actions:

a. Charge fees different from the percentage fees and any special fees specified in Paragraph 1 of this Certification;

b. Permit an entity other than me to operate the project .

c. Permit an entity other than me to collect a fee.

10. I agree to:

a. Comply with all Federal, state, or local laws prohibiting discrimination against any persons on grounds of race, color, creed, familial status, handicap, sex or national origin, including Title VI of the Civil Rights Act of 1964, Fair Housing Act, Executive Order 11063 and all regulations implementing those laws.

b. When the head or spouse is otherwise eligible, give families with children equal consideration for admission.

c. Give handicapped persons priority for subsidized units that were built and equipped specifically for the handicapped.

d. If the project receives any form of direct Federal financial assistance, comply with the provisions of Section 504 of the Rehabilitation Act of 1973, as amended, the Age Discrimination Act of 1975 and all regulations and administrative instructions implementing these laws. The owner understands that these laws and regulations prohibit discrimination against applicants or tenants who are handicapped or of a certain age.

e. Furnish HUD's Office of Fair Housing and Equal Opportunity any reports and information required to monitor the project's compliance with HUD's fair housing and affirmative marketing requirements (including HUD Form 949, if applicable).

f. Not discriminate against any employee, applicant for employment or contractor because of race, color, handicap, religion, sex or national origin.

g. Provide min...ities, women and socially and economically disadvantaged firms equal opportunity to participate in the project's procurement and contracting activities.

h. If the project receives any form of direct Federal financial assistance, comply with Section 3 of the Housing and Urban Development Act of 1968 and its implementing regulations. I understand that this law and the regulations require the project to make training, employment and contracting opportunities available, to the greatest extent feasible, to lower-income project area residents and small businesses.

11. I certify that I have read and understand HUD's definition of "identity-of-interest" and that the statement(s) checked and information entered below are true. (Check box a or b.)

a. ☐ No identity-of-interest exists among me and any individuals or companies that regularly do business with the project.

b. ☐ Only those individuals and companies listed in Section 11a of the Management Entity Profile have an identity-of-interest with me.

12. I certify and agree:

a. that the Management Entity Profile, dated(mm/dd/yyyy) _____ , is accurate and current as of the date of this Certification.

b. To submit an updated profile whenever there is a significant change in the organization or operations of the management entity of the project.

13. The items checked below are attached:

☐ New Management Entity Profile

☐ Updated Management Entity Profile

☐ Attachment 1, Calculation of Estimated Yields from Proposed Management Fees

☐ Other (Specify)_____

**Warnings:**

There are fines and imprisonment—$10,000/5years—for anyone who makes false, fictitious, or fraudulent statements or entries in any matter within the jurisdiction of the Federal Government (18 U.S.C 1001).

There are fines and imprisonment—$250,000/5years—for anyone who misuses rents & proceeds in violation of HUD regulations relative to this project. This applies when the mortgage note is in default or when the project is in a nonsurplus cash position (12 U.S.C 1715z-9).

HUD may seek a "double damages" civil remedy for the use of assets or income in violation of any Regulatory Agreement or any applicable HUD regulations (12 U.S.C 1715z-4a).

HUD may seek additional civil money penalties to be paid by the mortgagor through personal funds for :

(1) Violation of an agreement with HUD to use nonproject funds for certain specified purposes as a condition of receiving transfers of physical assets, flexible subsidy loan, capital improvement loan, modification of mortgage terms or workout. The penalties could be as much as the HUD Secretary's loss at foreclosure sale or sale after foreclosure.

(2) Certain specific violations of the Regulatory Agreement, the penalties could be as much as $25,000 per occurrence (12 U.S.C 1735f-15).

**By Project Owner: Name**

title
_____

signature
_____

date (mm/dd/yyyy)
_____

| Project Name | FHA Project Number | Date (mm/dd/yyyy) |
|---|---|---|
|  |  |  |

**HUD Field Office Use Only (Check all boxes that apply)**

An up-front review of the management fee was: ☐ Required ☐ Not required

☐ The management fees quoted in paragraph 1a and explained in Attachment 1 of this Certification are approved.

☐ The management fees quoted in Paragraph 1a and explained in Attachment 1 of this Certification are **not** approved. The attached letter, dated (mm/dd/yyyy) _____, explains the reasons for this disapproval and sets forth the allowable management fees.

☐ The residential management fee **Percentage** is held harmless at _____%.

☐ The residential management fee **Yield** is held capped at $_____PUPM. Each time you approve a rent increase, adjust the management fee **Percentage** to maintain this yield and enter the information required below.

| Effective Date (mm/dd/yyyy) of New Fee %* | Monthly Rent Potential | Collections % Assumed** | Adjusted Management Fee Percentage |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

\* This should be the same date the rent increase is effective.
\*\* 95% unless you approve a different percentage.

| By Loan Servicer | | By Supervisory Load Servicer/Loan Management Branch Chief | |
|---|---|---|---|
| Signature | Date (mm/dd/yyyy) | Signature | Date (mm/dd/yyyy) |
| Name | | Name | |
| Title | | Title | |

**Attachment 1—Calculation of Estimated Yields from Proposed Management Fees**

| Project Name | | FHA Project Number | | Date (mm/dd/yyyy) |
|---|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| **1.** | **Residential Fee** | | **2.** | **Commercial Fee** (Describe commercial space, how it is used and what services management provides.) |
| a. | Monthly residential rent potential (from Part A of the most recent HUD-approved Rent Schedule | $ | | |
| b. | Line 1a times 0.95 * | $ | | |
| c. | Percentage fee | % | | |
| d. | Monthly residential fee yield (Line 1b times 1c) | $ | | |
| e. | Total number of residential units (include rent-free units.) | units | | |
| f. | Residential fee yield per unit per month (Line 1d divided by 1e.) | $      PUPM | | |

| | | | | |
|---|---|---|---|---|
| * | **Note:** Generally collections must be estimated at 95% of gross potential. If you use a lower percentage, attach an explanation for the collections percentage used. Make sure that any assumption of a lower collections base does not compensate the agent for services for which a special fee will be paid. | a. | Monthly commercial rent potential (from Part E of the most recent HUD-approved Rent Schedule) | $ |
| | | b. | Percentage fee | % |
| | | c. | Commercial fee yield (Line 2a times 2b) | $ |

**3. Miscellaneous Fee**
a. Percentage fee (not to exceed the residential income fee percentage in Line 1c)                                                                                                  %

b. List any miscellaneous income on which HUD allows a fee to be taken, but on which you have agreed a fee will **not** be paid.

**4. Special Fees**
Show dollar amount(s), purpose(s) and time period(s) covered. Describe performance standards and target dates for accomplishment of special tasks. (Attach additional sheets, if needed.)

**Project Owner's/Management Agent's Certification
for Multifamily Housing Projects
for Identity-of-Interest
or Independent Management Agents**

U.S. Department of Housing
and Urban Development
Office of Housing
Federal Housing Commissioner

OMB Approval No. 2502-0305
(exp. 04/30/2003)

Public reporting burden for this collection of information is estimated to average 10 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. This agency may not conduct or sponsor, and a person is not required to respond to, a collection information unless that collecton displays a valid OMB control number.

Owners of insured and assisted multifamily housing projects are required by HUD administrative guidelines as found in HUD Handbook 4381.5 REV-2, The Management Agent Handbook, to submit certain data for review by the local HUD office of approval of a new management agent. These requirements apply to insured multifamily projects or HUD-held mortgages and subsidized, non-insured projects that are not financed by State Agencies or the Rural Housing Service Agency.

| Project name | FHA project number | Date (mm/dd/yyyy) |
|---|---|---|
| | | |

| City, State | Section 8 number |
|---|---|
| | |

Acting on behalf of _____,
the Project Owner (Owner), and _____,
the Management Agent (Agent), we make the following certifications and agreements to the United States Department of Housing and Urban Development (HUD) regarding management of the above project.

1. We certify that:

a. We will comply with HUD requirements and contract obligations, and agree that no payments have been made to the owner in return for awarding the management contract to the agent, and that such payments will not be made in the future.

b. We have executed or will execute, within 30 days after receiving the approval(s) required by paragraph b below, a Management Agreement for this project The Agreement provides / will provide that the Management Agent will manage the project for the term and fee described below. Changes in the fee will be implemented only in accordance with HUD's requirements

(1) Term of Agreement:_____
(2) Fees:
(a)_____% of residential income collected;
(b)_____% of commercial income collected;
(c)_____% of miscellaneous income collected
(This percentage must not exceed the percentage in (2)(a) above).
(d) Special Fees No ☐ Yes ☐ If yes, describe in paragraph 4 of Attachment 1.
(3) Calculation of Estimated Yield (See Attachment 1.)

c. We will disburse management fees from project income only after:

(1) We have submitted this Certification to HUD;
(2) HUD has approved the Agent to manage this project; and
(3) HUD has approved the management fee (if required).

d. We understand that no fees may be earned or paid after HUD has terminated the Management Agreement.

e. If HUD notifies me of an excessive management fee, I, the Agent, will within 30 days of HUD's notice either:

(1) Reduce the compensation to an amount HUD determines to be reasonable and

(2) Require the administrator to refund to the project all excessive fees collected, or

(3) Appeal HUD's decision and abide by the results of the appeal process, making any required reductions and refunds within 30 days after the date of this decision letter on the appeal.

f. If HUD holds the residential management fee yield harmless under the transition provisions of Chapter 3, Section 4 of HUD Handbook 4381.5,

(1) We understand that HUD will adjust the management fee percentage each time HUD approves a rent increase.

(2) We agree to be bound by that percentage until the next rent increase or until HUD approves a different fee, pursuant to our request.

2. We will, if the project is subsidized by HUD, select and admit tenants, compute tenant rents and assistance payments, recertify tenants and carry out other subsidy contract administration responsibilities in accordance with HUD Handbook 4350.3 and other HUD instructions.

3. We agree to:

a. Comply with this project's Regulatory Agreement, Mortgage & Mortgage Note, and any Subsidy Contract or Workout / Modification Agreement.

b. Comply with HUD handbooks, notices or other policy directives that relate to the management of the project.

c. Comply with HUD requirements regarding payment and reasonableness of management fees and allocation of management costs between the management fee and the project account.

d. Refrain from purchasing goods or services from entities that have identity-of-interest with us unless the costs are as low as or lower than arms-length, open-market purchases.

4. The Agent agrees to:

a. Ensure that all expenses of the project are reasonable and necessary.

b. Exert reasonable effort to maximize project income and to take advantage of discounts, rebates and similar money-saving techniques.

c. Obtain contracts, materials, supplies and services, including the preparation of the annual audit, on terms most advantageous to the project.

d. Credit the project with all discounts, rebates or commissions (including any sales or property tax relief granted by the State or local government) received.

e. Obtain the necessary verbal or written cost estimates and document the reasons for accepting other than the lowest bid.

f. Maintain copies of such documentation and make such documentation available for your inspection during normal business hours.

g. Invest project funds that HUD policies require to be invested and take reasonable effort to invest other project funds unless the owner specifically directs the Agent not to invest those other funds.

5. We certify that the types of insurance policies checked below are in force and will be maintained to the best of our ability at all times. Fidelity bonds and hazard insurance policies will name HUD as an additional payee in the event of loss. Note: For any box not checked, attach an explanation as to why you cannot obtain that type of insurance. Such situations should be extremely rare.

a. ☐ Fidelity bond or employee dishonesty coverage for
(1) all principals of the Agent and;
(2) all persons who participate directly or indirectly in the management and maintenance of the project and its assets, accounts and records. Coverage will be at least equal to the project's gross potential income for two (2) months.

b. ☐ Hazard insurance coverage in an amount required by the project's Mortgage.

c. ☐ Public liability coverage with the Agent designated as one of the insured.

6. The Agent agrees to:

a. Furnish a response to HUD's management review reports, physical inspection reports and written inquiries regarding the project's annual financial statements or monthly accounting reports within 30 days after receipt of the report or inquiry.

b. Establish and maintain the project's accounts, books and records in accordance with:
(1) HUD's administrative requirements;
(2) generally accepted accounting principles; and
(3) in a condition that will facilitate audit.

7. We agree that:

a. All records related to the operation of the project, regardless of where they are housed, shall be considered the property of the project.

b. HUD, the General Accounting Office (GAO), and those agencies' representatives may inspect :

(1) any records which relate to the project's purchase of goods or services,

(2) the records of the Owner and the Agent, and

(3) the records of companies having an identity-of-interest with the owner and the agent.

c. The following clause will be included in any contract entered into with an identity-of-interest individual or business for the provision of goods or services to the project: "Upon request of HUD or (name of owner or Agent), (name of contractor or supplier) will make available to HUD, at a reasonable time and place, its records and records of identity-of-interest companies which relate to goods and services charged to the project. Records and information will be sufficient to permit HUD to determine the services performed, the dates the services were performed, the location at which the services were performed, the time consumed in providing the services, the charges made for materials, and the per-unit and total charges levied for said services." The owner agrees to request such records within seven (7) days of receipt of HUD's request to do so.

8. We certify that any Management Agreement does not contain the type of "hold harmless" clause prohibited by HUD.

9. We agree to include the following provisions in the Management Agreement and to be bound by them:

a. HUD has the right to terminate the Management Agreement for failure to comply with the provisions of this Certification, or other good cause, thirty days after HUD has mailed the owner a written notice of its desire to terminate the Management Agreement.

b. In the event of a default under the Mortgage, Note or Regulatory Agreement, HUD has the right to terminate the Management Agreement immediately upon HUD's issuance of a notice of termination to the Owner and Agent.

c. If HUD exercises this right of termination, I, the Owner, agree to promptly make arrangements for providing management that is satisfactory to HUD.

d. If there is a conflict between the Management Agreement & HUD's rights and requirements, HUD's rights & requirements will prevail.

e. If the Management Agreement is terminated I, the Agent, will give to the Owner all of the project's cash, trust accounts investments and records within thirty (30) days of the date the Management Agreement is terminated.

10. I, the Owner, agree to submit a new Management Certification to HUD before taking any of the following actions:

a. Authorizing the agent to collect a fee different from the percentages fees and any special fees specified in Paragraph 1 of this Certification:

b. Changing the expiration date of the Management Agreement.

c. Renewing the Management Agreement.

d. Permitting a new Agent to operate the project.

e. Permitting a new Agent to collect a fee.

f. Undertaking self-management of the project.

11. We agree to:

a. Comply with all Federal, State, or local laws prohibiting discrimination against any persons on grounds of race, color, creed, familial status, handicap, sex or national origin, including Title VI of the Civil Rights Act of 1964, Fair Housing Act, , Executive Order 11063 and all regulations implementing these laws.

b. When the head or spouse is otherwise eligible, give families with children equal consideration for admission.

c. Give handicapped persons priority for subsidized units that were built and equipped specifically for the handicapped.

d. If the project receives any form of direct Federal financial assistance, comply with the provisions of Section 504 of the Rehabilitation Act of 1973, as amended, the Age Discrimination Act of 1975 and all regulations and administrative instructions implementing these laws. The Agent understands that these laws and regulations prohibit discrimination against applicants or tenants who are handicapped or of a certain age.

e. Furnish HUD's Office of Fair Housing and Equal Opportunity any reports and information required to monitor the project's compliance with HUD's fair housing and affirmative marketing requirements (including HUD Form 949, if applicable).

f. Not discriminate against any employee, applicant for employment or contractor because of race, color, handicap, religion, sex or national origin.

g. Provide minorities, women and socially and economically disadvantaged firms equal opportunity to participate in the project's procurement and contracting activities.

h. If the project receives any form of direct Federal financial assistance, comply with Section 3 of the Housing and Urban Development Act of 1968 and its implementing regulations. I, the Agent, understand that this law and the regulations require the project to make training, employment and contracting opportunities available, to the greatest extent feasible, to lower-income project area residents and small businesses.

12. We certify that we have read and understand HUD's definition of "identity-of-interest" and that the statement(s) checked and information entered below are true. (Check box a or boxes b and / or c.)

a. ☐ No identity-of-interest exists among the Owner, the Agent and any individuals or companies that regularly do business with the project.

b. ☐ Only individuals and companies listed in Section 11a of the Management Entity Profile have an identity-of-interest with the Agent.

c. ☐ Only the individuals and companies listed below have an identity-of-interest with the Owner. (Show the name of the individual or company; list the services rendered; and describe the nature of the identity-of-interest relationship. Attach additional sheets, if necessary.)

13. I, the Agent, certify & agree:

a. that the Management Entity Profile, dated (mm/dd/yyyy)_____, is accurate and current as of the date of this Certification.

b. To submit an updated profile whenever there is a significant change in the organization or operations of the Management Entity.

14. The items checked below are attached:

☐ Attachment 1–Calculation of Est. Yields from Proposed Mgt Fees
☐ New Management Entity Profile
☐ Updated Management Entity Profile
☐ Other (Specify)_____

**Warnings:**

There are fines and imprisonment—$10,000/5years—for anyone who makes false, fictitious, or fraudulent statements or entries in any matter within the jurisdiction of the Federal Government (18 U.S.C 1001).

There are fines and imprisonment—$250,000/5years—for anyone who misuses rents & proceeds in violation of HUD regulations relative to this project. This applies when the mortgage note is in default or when the project is in a nonsurplus cash position (12 U.S.C 1715z-9).

HUD may seek a "double damages" civil remedy for the use of assets or income in violation of any Regulatory Agreement or any applicable HUD regulations (12 U.S.C 1715z-4a).

HUD may seek additional civil money penalties to be paid by the mortgagor through personal funds for :

(1) Violation of an agreement with HUD to use nonproject funds for certain specified purposes as a condition of receiving transfers of physical assets, flexible subsidy loan, capital improvement loan, modification of mortgage terms or workout. The penalties could be as much as the HUD Secretary's loss at foreclosure sale or sale after foreclosure.

(2) Certain specific violations of the Regulatory Agreement, the penalties could be as much as $25,000 per occurrence (12 U.S.C 1735f-15).

**By Project Owner:** Name
_____

title
_____

signature
_____

date (mm/dd/yyyy)
_____

**By Management Agent:** Name
_____

title
_____

signature
_____

date (mm/dd/yyyy)
_____

| Project Name | FHA Project Number | Date (mm/dd/yyyy) |
|---|---|---|
|  |  |  |

**HUD Field Office Use Only (Check all boxes that apply)**

An up-front review of the management fee was:  ☐ Required    ☐ Not required

☐ The management fees quoted in paragraph 1a and explained in Attachment 1 of this Certification are approved.

☐ The management fees quoted in Paragraph 1a and explained in Attachment 1 of this Certification are **not** approved.
The attached letter, dated (mm/dd/yyyy) _____ , explains the reasons for this disapproval and sets forth the allowable management fees.

☐ The residential management fee **Percentage** is held harmless at _____%.

☐ The residential management fee **Yield** is capped at $_____PUPM. Each time you approve a rent increase, adjust the management fee **Percentage** to maintain this yield and enter the information required below.

| Effective Date (mm/dd/yyyy) of New Fee %* | Monthly Rent Potential | Collections % Assumed** | Adjusted Management Fee Percentage |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

* This should be the same date the rent increase is effective.
** 95% unless you approve a different percentage.

| By Loan Servicer | | By Supervisory Load Servicer/Loan Management Branch Chief | |
|---|---|---|---|
| Signature | Date (mm/dd/yyyy) | Signature | Date (mm/dd/yyyy) |
| Name | | Name | |
| Title | | Title | |

**Attachment 1—Calculation of Estimated Yield from Proposed Management Fees**

| Project Name: | | FHA Project No.: | Date: |
|---|---|---|---|

| | | | 2. | **Commercial Fee** (Describe commercial space, how it is used and what services management provides.) |
|---|---|---|---|---|
| **1.** | **Residential Fee** | | | |
| a. | Monthly residential rent potential (from Part A of the most recent HUD-approved Rent Schedule | $ | | |
| b. | Line 1a times 0.95 * | $ | | |
| c. | Percentage fee | % | | |
| d. | Monthly residential fee yield (Line 1b times 1c) | $ | | |
| e. | Total number of residential units (include rent-free units.) | units | | |
| f. | Residential fee yield per unit per month (Line 1d divided by 1e.) | $    PUPM | | |

| * | Note: Generally collections must be estimated at 95% of gross potential. If you use a lower percentage, attach an explanation for the collections HUD-approved Rent percentage used. Make sure that any assumption of a lower collections base does not compensate the agent for services for which a special fee will be paid. | | a. | Monthly commercial rent potential (from Part E of the most recent Schedule) | $ |
|---|---|---|---|---|---|
| | | | b. | Percentage fee | % |
| | | | c. | Commercial fee yield (Line 2a times 2b) | $ |

**3. Miscellaneous Fee**

a. Percentage fee (not to exceed the residential income fee percentage in Line 1c)    %

b. List any miscellaneous income on which HUD allows a fee to be taken, but on which you have agreed a fee will **not** be paid.

**4. Special Fees**
Show dollar amount(s), purpose(s) and time period(s) covered. Describe performance standards and target dates for accomplishment of special tasks. (Attach additional sheets, if needed.)

Exhibit B

## ATTACHMENT B
TERMS AND REQUIREMENTS OF FORECLOSURE SALE - ACKNOWLEDGMENT BY BIDDER

PART I
BID PRICE - The Undersigned, __Elia and Leonel Lopez__ ,(the "Bidder")
submits a bid of _____dollars ($ ) at the
foreclosure sale of **LASBY PARK TERRACE APARTMENTS** (the "Project", the legal description of which
is included as Exhibit A, to be paid as follows:

1. **$ 50,000** in the form of a money order, cashier's or other bank check, as earnest money, which has been paid at the foreclosure sale to the person that conducts the foreclosure sale, and which shall not earn interest (the "Deposit"), **and**

2. $_____the balance, to be paid by the Bidder at Closing, in the form of a cashier's or other bank check in accordance with this Acknowledgment. The Closing will be held at a place, date and time established in accordance with Section 4 below (the "Closing").

3. In addition to the above, the Bidder will be required to pay at Closing all closing costs, regardless of local custom, and, where applicable, other deposits to reserve and/or letters of credit as described in Riders incorporated herein, the Invitation for Bid (Invitation), and the Foreclosure Sale Use Agreement (Use Agreement).

PART II
If selected as the high Bidder at or after the foreclosure sale, the Bidder, by executing this document (the "Acknowledgment"), acknowledges that the Bidder must comply with the following requirements as a condition to purchasing the Project:

1. ACKNOWLEDGMENT OF TERMS - Bidder affirms to have full knowledge of the all terms, conditions and requirements contained in this Acknowledgment and documents referred to herein, the invitation and Attachments, and the Notice of Default and Foreclosure Sale. Bidder must execute this document.

2. EXECUTION OF USE AGREEMENT - At Closing, Bidder will, in addition to any other documents, execute the Foreclosure Sale Use Agreement and all of the Exhibits to the Use Agreement as contained in the Invitation to Bid. Such documents will control the use of the Project for a specified period and will be recorded with the Deed and run with the land.

3. PREVIOUS PARTICIPATION CERTIFICATION - The high Bidder **must** submit within two (2) business days of the foreclosure sale, a completed and executed Previous Participation Certification (Form HUD-2530)for the proposed owner to the HUD Field Office contact stated in the Property at a Glance, Attachment A to the Invitation to Bid.

4. ESTABLISHMENT OF CLOSING DATE, TIME AND PLACE
   (a) Time is of the essence.
   (b) HUD will notify the Bidder and the person conducting the foreclosure sale (the "Foreclosure Official") after HUD determines that the Bidder has been approved to purchase this project under the Previous Participation Certification procedure. The Foreclosure Official will establish a time and date for the Closing. The Closing shall **be within thirty (30) days of such notification**, unless extended pursuant to Section 8.
   (c) The Closing will take place at the HUD office stated in the Invitation or at such other place as may be agreed upon between HUD and the Foreclosure Official.

5. CLOSING, CLOSING EXPENSES AND TRANSFER OF POSSESSION
   (a) The sale shall be effective upon Closing.
   (b) Bidder (Purchaser) shall pay all closing costs and expenses irrespective of local custom.
   (c) Transfer of title to and possession of the Property shall become effective as of the Closing.

6. PAYMENT OF PURCHASE PRICE AT CLOSING - The Bidder (Purchaser) shall pay the balance at Closing in the form of a cashier's or other bank check made out to:
   **THE SECRETARY, U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
   The Closing will be held at a place, date and time established in accordance with Section 4 above.

7. LIQUIDATED DAMAGES - Should Bidder fail or refuse to perform all obligations under this Acknowledgement for any reason including, but not limited to, failure to establish the legal entity that is to take title in a timely manner that permits Closing within the deadline set forth in Section 4, the earnest money deposit and any extension fees, paid under Section 8, shall be remitted to and retained by HUD as liquidated damages.

8. EXTENSION FEES – Extensions of time to close the sale are within HUD's sole and absolute discretion. Any extensions, if granted, will be on the following conditions:
   (a) A written request for an extension must be received at the HUD office located at: Department of Housing and Urban Development, 801 Cherry Street, Ft. Worth, TX 76102 within **five (5)** days prior to the prescribed closing date, or within any extension period and **must be accompanied by the payment** of the required extension fee. The request must state the reason for Bidder's inability to close the sale within the initial period or any extended period.
   (b) Extensions shall be for thirty (30) days.
   (c) For each thirty (30) day period requested by Bidder and approved by HUD, extension fees shall be equal to **$ 41.00**, per unit, per day, which is **$2,665.00** daily (the holding cost for such period) or one and one- half percent (1.5%) of the purchase price, whichever is greater.
   (d) These fees shall be retained by HUD and shall not be credited to the amount due from Bidder at Closing. However, if Bidder closes prior to the expiration of an extension period, the prorated amount of the extension fee, for the unused portion of the extension period, shall be credited toward the amount due from Bidder at Closing.
   (e) The granting of one or more extensions shall not obligate HUD to grant additional extensions.
   (f) If any form or instrument required by HUD is not submitted within sufficient and reasonable time for HUD's review or processing and such delay necessitates an extension of the Closing deadline, an extension fee must be paid for this period.
   (g) Extension Fees must be submitted by money order, certified, cashier's or other bank check acceptable to HUD.

9. BIDDER RESTRICTIONS
   (a) No Member of/or Delegate to Congress, resident commissioner, or local elected official, shall be admitted to any share or part of this sale, or to any benefit arising from it. However, this provision does not apply to this sale to the extent that this sale is made with a corporation for the corporation's general benefit.
   (b) If Bidder is, or becomes suspended, debarred, or temporarily denied from participating in HUD programs prior to closing, this sale shall be terminated. In addition, if such suspension, debarment or temporary denial of participation occurs either before or after Bidder's execution of this Acknowledgment, any extension fees paid under Section 8 shall be retained by HUD as liquidated damages.
   (c) Pursuant to 24 CFR Part 27 Section 20(f), the defaulting mortgagor, or any principal, successor, affiliate, or assignee thereof, on the multifamily mortgage being foreclosed, shall not be eligible to bid on, or otherwise acquire, the property being foreclosed by the Department under this subpart or any other provision of law. A "principal" and an "affiliate" are defined as provided at 24 CFR 24.105.

10. AS-IS SALE; NO REPRESENTATIONS
    (a) Bidder shall accept the Property "as is." HUD makes no representations or warranties concerning the physical condition of the Property. In addition, HUD does not represent or warrant the number and occupancy of revenue producing units, or any factor bearing upon the value of the Property.
    (b) Bidder acknowledges that the purchase price set forth in this Acknowledgment is based on Bidder's evaluation of the project and not upon any representations by HUD. Bidder's failure to inspect, or to be fully informed as to any factor bearing upon the valuation of the Property, shall not affect the liabilities, obligations or duties of HUD, nor be a basis for termination of this sale or for the return of any extension fees paid pursuant to **Section 8.**

11. RISK OF LOSS AND RIGHTS OF RESCISSION – In the event of any substantial damage to the Project prior to closing by any cause including, but not limited to, fire, flood, earthquake, tornado and significant vandalism other than willful acts or neglect, HUD, in its sole discretion, may negotiate with the Bidder for a reduction in

the sales price corresponding to the estimated amount of damages. Such damages shall be added to the Post-Closing repair requirements, HUD Form - 9552 included in the Invitation. If HUD and the Bidder are unable to agree on the amount by which the purchase price should be reduced or on the amendment to the repair requirements, Bidder may withdraw the bid, in which case HUD will direct the return of the earnest money deposit and any extension fee(s) will be returned.

12. PRORATIONS
   (a) Except as set forth in paragraph (b) below, there will be no prorations at Closing. The Bidder will be responsible only for those expenses incurred at the Project after Closing.
   (b) At Closing, the Bidder will pay the Foreclosure Official a prorata share of any property taxes on the Project which have been paid for a period of time ending after the date of Closing. The Bidder will be responsible for paying in full, all taxes, that come due after Closing. Taxes paid by the Bidder after Closing will not be prorated, even if those taxes are for a period which began prior to Closing.
   (c) No later than fifteen (15) days before Closing, HUD will notify the Bidder of the amount the Bidder is to pay the Foreclosure Official as the prorata share of taxes.

13. SECURITY DEPOSITS - APPLICATION AS CHECKED:
   ☒   Notwithstanding State or local law, the Bidder will receive only those security deposits which are on hand at the Project on the date of Closing. The Bidder will assume all liability under State and local law with respect to security deposits.
   ☐   Any security deposits collected from tenants and paid over to HUD prior to the Closing shall transferred and assigned to Bidder within fifteen (15) days after the closing, with the of security deposits which have been forfeited by the tenant in accordance with the terms of tenant's lease. Notwithstanding State and local law, no other security deposits collected from will be transferred by HUD to Bidder and HUD has no other liability under State and local law respect to security deposits. Bidder agrees to assume all responsibility and liability under local law with respect to the collection, application and return of security deposits.

14. LIMITATION OF LIABILITY - Notwithstanding any other provisions of this sale, HUD's liability shall not exceed the amount of funds paid by Bidder to HUD and/or the Foreclosure Official hereunder.

15. ANTI-COLLUSION CERTIFICATION
   (a) The Bidder certifies:
      (i) The bid price in this offer has been arrived at independently, without (for the purposes of restricting competition) any consultation, communication, or agreement with any other Bidder relating to:
         a. the bid price;
         b. the intention to submit a bid price; or
         c. the methods or factors used in calculating the bid price offered;
      (ii) The bid price in this offer has not been and will not be knowingly disclosed by the Bidder, directly or indirectly, to any other Bidder or competitor before or during the actual time of the bid event, unless otherwise required by law; and
      (iii) No attempt has been made or will be made by the Bidder to induce any other Bidder to submit or not to submit a bid price for the purpose of restricting competition.
   (b) If the bid procedure requires or permits written bids, each signature on the offer is considered to be certification by the signatory that the signatory:
      (i) Is the person in the Bidder's organization responsible for determining the bid price being offered in this bid and that the signatory has not participated and will not participate in any action contrary to paragraph (a) above; or
      (ii) Has been authorized, in writing, to act as agent for the following principals in certifying that those principals have not participated, and will not participate in any action contrary to paragraph (a), above;

   Name_____

   Title_____
   Organization responsible for
   determining bid price_____

      a. As an authorized agent, does certify that the principals named in the above have not participated, and will not participate, in any action contrary to paragraph (a) above; **and**

      b. As agent, has not personally participated, and will not participate, in any action contrary to paragraph (a) above.

16. FAILURE TO COMPLY - Upon the failure or refusal of the Bidder to comply with any of the requirements listed above, HUD may declare the Bidder ineligible to purchase the Project, in which case Bidder shall forfeit the earnest money deposit and any extension fees paid.

17. SEVERABILITY - If for any reason one or more of the provisions contained in the Invitation, including this Acknowledgment, the Use Agreement, or any other attachments or exhibits thereto, shall be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision(s) of the Invitation, but the Invitation shall be construed as if such invalid, illegal or unenforceable provision(s) had never been included therein.

18. FORMS - All forms and instruments referred to in this Acknowledgment are the standard Form HUD and Instruments prepared by HUD and used by HUD in the jurisdiction in which the Property is located and shall contain such additional covenants and conditions required by the Invitation for Bid or Request for Proposals.

19. EXECUTION
    (a) By signature below, Bidder indicates acknowledgment of and agreement to the terms and requirements of this foreclosure sale.
    (b) In the case of a bid submitted by an agent or representative of the Bidder, the signatory attests to be duly authorized to submit the bid on behalf of the Bidder and to execute this Acknowledgment.

WARNING: It is a crime to knowingly make false statements to the United States in this document or any other document related to this sale. Penalties upon conviction can include a fine or imprisonment. For details see: Title 18 U.S. Code, Section 1001 and Section 1010.

Executed by the Bidder on the _19_ day of _September_, 20_03_

Witness: _____    By: _Elia Cornejo Lopez_

Typed Name: _Tim Gonzalez_    Typed Name: _Elia Cornejo Lopez_

_235 Sunset Drive_
Address:

_Brownsville, TX 78520_
City, State, Zip

_(956) 639-2911_
Phone No. with Area Code

## RIDER 1 OF 2
## SUBMISSION OF DOCUMENTS PRIOR TO CLOSING

1. Not later than two (2) Federal Government working days after being verbally notified at the foreclosure sale of being the high Bidder, the Bidder must submit the documents checked below to the contact person identified in the Property at a Glance, Attachment A.

   ☒   Previous Participation Certificate (Form HUD-2530) - For the Proposed Owner

2. To demonstrate ability to meet these requirements, the Bidder must submit to the HUD Office contact identified in the Property at a Glance, Attachment A to the Invitation, the executed documents and information checked below no later than ten (10) days after the Bidder has been verbally notified, with follow-up written confirmation, of the selection as high-Bidder and may be selected to purchase the Project:

   ☒   Affirmative Fair Housing Marketing Plan (HUD-935.2)
   ☒   New Previous Participation Certification (HUD-2530) for purchasing entity if different from bidding entity/individual (i.e., partnership, corporation, etc.).
   ☒   Form HUD-2530 for the Managing Agent, if applicable
   ☒   Personal Financial and Credit Statement (HUD-92417) for each principal and general partner.
   ☒   Management Entity Profile (HUD-9832)
   ☒   Management Certification (HUD-9839 a and b)
   ☐   Project Owner's/Borrower's Certification (HUD-9839 c) - For elderly housing projects managed by Administrator only
   ☒   Bidder's Property Management Statement
      ➢   The Bidder must complete and submit written statements of how the Bidder will:
      ➢   Satisfy the conditions of the disposition;
      ➢   Implement a sound financial and physical management program;
      ➢   Respond to the needs of the tenants and work cooperatively with resident organizations; and
      ➢   Provide adequate organizational staff and resources to the project.
   ☒   Statement of the services, maintenance and utilities that the Bidder proposes to provide.

3. If applicable, within a reasonable time prior to closing, the Bidder must also meet at the HUD office listed in the Invitation with officials designated by HUD to discuss the Bidder's plans for managing the project. If HUD determines that the Bidder is unqualified to self-manage the Project, HUD may require the Bidder to obtain the services of a qualified property management firm. The Bidder must then provide HUD with evidence that it has retained a qualified property management firm prior to Closing. If the Bidder does not meet this obligation, HUD may reject the bid and retain the Bidder's earnest money deposit.

## RIDER 2 OF 2
## POST-CLOSING REPAIR REQUIREMENTS

REPAIR ESCROW

At Closing, Bidder shall provide to HUD an unconditional, irrevocable and non-documentary Letter of Credit (LoC), satisfactory to HUD, in the amount of **$225,000**, with an expiration date at least six (6) months beyond HUD's estimated date for completion of repairs, to assure completion of the repairs required by the Invitation for Bid. In the event an extension for completion of repairs is granted, the LoC will be extended accordingly.

Significant repair/rehabilitation programs may be staged upon HUD approval. If repair/rehabilitation is staged, as agreed upon between the Bidder and HUD prior to Closing, up to five (5) LoCs, which represent the full LoC requirement, may be permitted. The LoCs must have an expiration date that extends beyond HUD's repair completion date by at least six (6) months. LoCs may be returned as the Bidder completes repairs and HUD has inspected and accepted the repairs. The final LoC must represent at least ten percent (10%) of HUD's total estimated repair costs and must have an expiration date that extends six (6) months beyond the completion of repair date. HUD may cash this LoC and apply the funds to correct latent defects in the completed repairs.

Exhibit C



U.S. Department of Housing and Urban Development
Fort Worth Regional Office, Region VI
Fort Worth Multifamily PD Center
801 Cherry Street
Burnett Plaza
Fort Worth, Texas 76102

OCT  0 2 2003

Ms. Elia Cornejo Lopez
235 Sunset Drive
Brownsville, TX  78520

SUBJECT:  Establishment of Closing Date
          Lasby Terrace Apts.
          Project No.: 115-35205

Please be advised you have received Previous Participation Certification approval for the purchase of Lasby Terrace Apts.  Therefore, under the terms of the Acknowledgment by Bidder, you must close the purchase of the property within 30 days of the date of this letter.  We encourage you to set an earlier closing date if possible.  According to the terms of the sale you will need to provide, at closing, LOC's in the amount of $225,000 and a cashiers check for $401,000 the balance of the purchase price.

By copy of this letter, we are advising Mr. Jack Stark, HUD Attorney, that you have been approved as purchaser.  You should contact, Margaret Laakso, Realty Specialist at (817) 978-5821, to establish the time for the closing.  There will be extension fees if the closing does not take place within 30 days from the date of this letter.  These fees are outlined in the Acknowledgment By Bidder.  Any extensions or change of closing date must be requested in writing.

We have enjoyed doing business with you and encourage you to bid on other properties to be sold by the Ft. Worth Multifamily PD Center.  Should you have questions on the closing procedures, please call, Margaret Laakso, at (817) 978-5821.

Sincerely,

*Ruth E Pompa*

Ruth E. Pompa
Chief, Sales Team
Ft. Worth Multifamily PD Center